

Not Reported in F.Supp.2d                                                                                                  Page 1
Not Reported in F.Supp.2d, 2004 WL 1771608 (D.Utah)
**(Cite as: Not Reported in F.Supp.2d)**

S.E.C. v. Autocorp Equities, Inc.D.Utah,2004.Only the Westlaw citation is currently available.
United States District Court,D. Utah, Central Division.
SECURITIES AND EXCHANGE COMMISSION, Plaintiff,
v.
AUTOCORP EQUITIES, INC., Michael Carnicle, Robert Cord Beatty, Hillel Sher, Amotz Frenkel, and Nili Frenkel, Defendants.
andNili FRENKEL, Relief Defendant.
No. 2:98-CV-00562 PGC.

Aug. 4, 2004.

Robert K. Hunt, Utah Federal Defender Office, William B. McKean, Thomas M. Melton, Brent R. Baker, Karen L. Martinez, Salt Lake City, UT, for plaintiff.
Douglas E. Griffith, Kesler & Rust, Jeffrey W. Shields, Jones Waldo Holbrook & McDonough, Mark J. Griffin, Woodbury & Kesler, David W. Scofield, Ronald F. Price, Peters Scofield Price, Salt Lake City, UT, Beth Ann Blackwood, Dan R. Waller, Secore & Waller, Dallas, TX, Russell S. Mitchell, Jones Waldo Holbrook & McDonough, St. George, UT, for defendants.
Michael Carnicle, Salt Lake City, UT, pro se.
Hillel Sher, Brooklyn, NY, pro se.
Amotz Frenkel, Oak Park, CA, pro se.
Nili Frenkel, Oak Park, CA, pro se.

OPINION AND ORDER GRANTING IN PART SUMMARY JUDGMENT AGAINST ROBERT CORD BEATTY
CASSELL, J.
*1 This securities fraud enforcement action is again before the court on a motion by plaintiff Securities and Exchange Commission (SEC) for summary judgment against defendant Robert Cord Beatty (# 121-1). The SEC claims that Beatty committed securities fraud and other securities violations when he did not disclose to investors that Russian certificates of deposit purportedly worth $5 million were fake. The court largely agrees and GRANTS IN PART summary judgment.

FACTS

The facts have already been thoroughly stated in an earlier order,[FN1] so it is not necessary to give a full recital here. It will suffice to recount that Beatty was involved with securing funds for a new company called Chariot Entertainment. Through that endeavor, Beatty met the other defendants in this case, who arranged to secure so-called Russian certificates of deposit or CDs purportedly worth $5 million. The CDs could then be listed as assets to secure loans for Chariot.

> FN1. *See SEC v. Autocorp,* 292 F.Supp.2d 1310 (D.Utah 2003).

The agreement was signed on March 23, 1994. The CDs were about 30% of Chariot's assets and were included on its balance sheets and financial statements. In late March 1994, Beatty hired Judith Jarvis of the law firm of Broad and Cassel to represent Chariot in securities matters. On March 31, 1994, Chariot filed a Form 10-Q with the SEC, listing the CDs as an asset, and on April 5, 1994, Chariot filed registration form S8 with the SEC. Chariot began selling stock on the public market, and Beatty began to raise money by getting loans on the CDs.

Unbeknownst to Beatty, however, the CDs were fake. One of the other defendants, Hillel Sher, had simply printed them in a Kinko's copy center. The other defendants had arranged to transfer the CDs to Chariot in a complicated transaction that would make it difficult for anyone to realize the CDs' true value.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                Page 2

Not Reported in F.Supp.2d, 2004 WL 1771608 (D.Utah)
**(Cite as: Not Reported in F.Supp.2d)**

In addition to lying about the CDs' value, the other defendants tried to increase their own profit by arranging for Chariot to issue unregistered shares in exchange for the CDs. These shares were ostensibly issued to Yoheved Datner, an Israeli national, pursuant to a provision called Regulation S. The court has previously ruled that this transfer was orchestrated by the other defendants to transfer unregistered Chariot stock to the defendants. However, for purposes of summary judgment, the court concluded that Beatty knew nothing about this plan to avoid the registration requirement.

Beatty quickly learned, though, that the CDs were not what the other defendants had represented them to be. During that summer, he tried repeatedly-and unsuccessfully-to get a loan based on the CDs, even though he had been removed as Chariot president in May 1994. In early September 1994 Beatty was reinstated as president. Later that month he learned that another company, Prodigy, had CDs issued by the same Russian bank and with the same serial number. By September 20, Beatty had openly admitted the CDs were worthless based on his inability to get a loan on them.[FN2]

> FN2. Deposition of Robert Cord Beatty of Feb. 21, 2001, at 55-55.

**\*2** In the end, the CDs, purportedly worth up to five million dollars were sold to a company in the West Indies for one dollar. Chariot shares continued to be traded publicly until October 1994, when Chariot was finally delisted for having insufficient funds. Beatty was president up until that time.

Based on these facts, the SEC filed this civil enforcement action against Beatty and the others involved. The SEC claimed that Beatty and the others committed securities fraud by holding out the fake Russian CDs as authentic. In addition to the allegations of fraud, the SEC claimed that Beatty and the others violated securities registration laws by selling unregistered Chariot stock. The SEC also alleged that Beatty was liable for aiding and abetting Chariot in record-keeping violations.

The court previously granted summary judgment as to the other defendants but withheld judgment as to Beatty. Because the parties had not briefed the significance of the fact that Beatty learned the CDs were false after he had been reinstated as president, the court directed the parties to brief that issue, which they have done. Having heard argument on the SEC's motion for summary judgment, the court agrees that summary judgment is proper against Beatty on all claims except for the Section 5 registration claim.

### ANALYSIS

The summary judgment standard is well known. Summary judgment is proper where "there is no genuine issue as to any material fact." [FN3] In deciding such a motion, the court must "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." [FN4] Each claim will be considered under this standard.

> FN3. Fed.R.Civ.P. 56(c).
>
> FN4. *Koch v. Koch Industries, Inc.,* 203 F.3d 1202, 1212 (10th Cir.2000) (citation omitted), *cert. denied,* 531 U.S. 926 (2000).

### I. Securities Fraud

At the center of this motion is the allegation that Beatty committed securities fraud. The court has already disposed of a number of the SEC's fraud theories; the only issue remaining is whether Beatty is liable for securities fraud when he, as Chariot president, did not inform investors that the CDs were worthless. The court concludes that he is.

Although there are some differences between an action rising under Section 17(a) of the Securities Act [FN5] and one rising under Section 10(b) of the Exchange Act [FN6] and its corresponding Rule 10b-5,[FN7] the court has already summarized the various requirements and has concluded that to prevail on the fraud claims in this case, the SEC must establish four elements: (1) a fraudulent act,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d																																																																Page 3
Not Reported in F.Supp.2d, 2004 WL 1771608 (D.Utah)
**(Cite as: Not Reported in F.Supp.2d)**

(2) in the sale of securities, (3) perpetrated by jurisdictional means, (4) that is done with the specified mental state. [FN8]

> FN5. 15 U.S.C. § 77q(a).
>
> FN6. *Id.* § 78j(b)
>
> FN7. 17 C.F.R. § 240.10b-5.
>
> FN8. *Autocorp,* 292 F.Supp.2d 1317-18.

### A. Fraudulent Act

Here, the undisputed evidence plainly establishes that once Beatty had been reinstated as president and knew the CDs were fake, his failure to inform investors of this fact was a material omission. The Tenth Circuit has held that a material omission, " where there is a duty to speak," can be the basis of a securities fraud claim under Rule 10b-5.[FN9] Although Section 17(a) is not expressed in such terms, it imposes liability for "any device, scheme, or artifice to defraud" and for any "course of business which operates or would operate as a fraud or deceit upon the purchaser." [FN10] The court concludes that a material misrepresentation for purposes of 10b-5 will also satisfy the requirements of Section 17(a). Thus, the court must consider two issues: materiality and duty.

> FN9. *Geman,* 334 F.3d at 1192; 17 C.F.R. § 240.10b-5.
>
> FN10. *See* 15 U.S.C. § 77q(a).

### a. Materiality

**\*3** Undoubtedly, Beatty's omission was material. An omission is material "if a reasonable investor would consider it important in determining whether to buy or sell stock" and if it would have " significantly altered the total mix of information available" to current and potential investors.[FN11] Although materiality is often a question of fact, summary judgment is proper where the omission is " so obviously important to an investor, that reasonable minds cannot differ on the question of materiality." [FN12]

> FN11. *S.E.C. v. Cochran,* 214 F.3d 1261, 1267 (10th Cir.2000) (citing *TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976)); *Grossman v. Novell, Inc.,* 120 F.3d 1112, 1119 (10th Cir.1997).
>
> FN12. *TSC Industries, Inc.,* 426 U.S. at 449; *Cochran,* 214 F.3d at 1267.

The court has already concluded that the CDs' true value was material, [FN13] but Beatty argues that by September 1994 it was well known that Chariot was struggling to get a loan, so the omission would not have mattered to investors. The court disagrees. Without the knowledge of the CDs true worth, investors might still have been inclined to take their chances with Chariot, hoping that things would turn around. On the other hand, if investors knew that the CDs-which comprised about 30% of Chariot's assets-were fake, investors would not have put their money on Chariot. Thus, even as late as September 1994, the true value of the CDs was material.

> FN13. *Autocorp,* 292 F.Supp.2d 1320.

### b. Duty

The more complicated issue here is whether the president of a corporation has an inherent duty to notify shareholders of information that has come to light after a required filing that makes the information in the filing false. The court concludes that he does.

A number of cases have specifically held that a corporate officer had a duty to inform investors of developments that happened after a public filing that made information in the filing false.[FN14] In one case, the Second Circuit held that the defendants had committed fraud where developments subsequent to issuing the prospectus made the prospectus misleading. It stated, " Post-effective developments which materially alter

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                           Page 4
Not Reported in F.Supp.2d, 2004 WL 1771608 (D.Utah)
**(Cite as: Not Reported in F.Supp.2d)**

the picture presented in the registration statement must be brought to the attention of public investors." [FN15] The court went on to conclude that an officer who "was actively involved in selling the issue" was "obligated to bring to the attention of offerees any developments which made the prospectus misleading in any material respect." [FN16]

> FN14. *See, e.g., Securities and Exchange Commission v. Manor Nursing Centers, Inc.,* 458 F.2d 1082 (2nd Cir.1972); *SEC v. Coates,* 137 F.Supp.2d 413 (S.D.N.Y.2001).
>
> FN15. 458 F.2d at 1095.
>
> FN16. *Id.* at 1097.

Under these principles, Beatty was clearly obligated to inform investors that the CDs were worthless when he was reinstated as Chariot president in September 1994. Thus, the court concludes that his failure to disclose the CDs' true worth to investors was a material omission for purposes of Rule 10b-5 and Section 17(a).

### B. Offer or Sale of Securities

The second element the SEC must establish is that the fraudulent act was committed in the offer or sale of any securities. The court has already concluded that any difference between Rule 10b-5 and Section 17(a) is not dispositive in this case,[FN17] and Beatty has not argued otherwise. The Tenth Circuit has expressly held that "[t]here is no requirement that the alleged violator directly communicate misrepresentations to [investors]." [FN18] It is enough that a person "knew or should have known that his representation would be communicated to investors." [FN19]

> FN17. *Autocorp,* 292 F.Supp.2d at 1318-19.
>
> FN18. *Anixter v. Home-Stake Production Co.,* 77 F.3d 1215, 1226 (10th Cir.1996).
>
> FN19. *Id.*

**\*4** Here, the CDs were included in basic SEC filings that obviously would be relied upon by investors. It is undisputed that Chariot stock continued to be sold publicly until October 1994, when Chariot was delisted. Thus, up until then, however, without any warning from Beatty, investors would have continued relying on the SEC filings in purchasing or selling stock. This element is satisfied as well.

### C. Jurisdictional Means

The third element is that the fraud be perpetrated by federal "jurisdictional means," such as the mails or telephone lines.[FN20] Although the SEC has not alleged that Beatty was involved in phone calls or wrote letters about the Russian CDs after he had been reinstated as president, this fact seems implicit in the factual record,[FN21] and Beatty has not challenged the SEC's position on this point.

> FN20. 15 U.S.C. § 77q(a) (making it unlawful to commit securities fraud "by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails"); 17 C.F.R. § 240.10b-5 (making it unlawful to commit securities fraud "by the use of any means or instrumentality of interstate commerce, or of the mails").
>
> FN21. Depo. of Robert Cord Beatty (Feb. 21, 2001) 57.

### D. Scienter

Perhaps the most contentious element in this claim is Beatty's scienter. To prevail on its Rule 10b-5 or Section 17(a)(1) causes of action, the SEC must establish "scienter," which has been defined as "the intent to deceive, manipulate, or defraud." [FN22] The Tenth Circuit has held that scienter may be established by a showing of recklessness, that is, "

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 5

Not Reported in F.Supp.2d, 2004 WL 1771608 (D.Utah)
**(Cite as: Not Reported in F.Supp.2d)**

conduct that is an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." [FN23]

> FN22. *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 193, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), *quoted by Anixter,* 77 F.3d at 1232.
>
> FN23. *Anixter,* 77 F.3d at 1232-33; *Hackbart v. Holmes,* 675 F.2d 1114, 1117-18 (10th Cir.1982).

Here, there can be no serious dispute that Beatty knew of or was reckless with regard to the CDs' worthlessness. He could not get a loan on the CDs despite numerous attempts. Moreover, he ultimately told others that the CDs were worthless. Beatty argues that his admission referred to the CDs' value as collateral for a loan, not their value as a corporate asset. However, his inability to get a loan coupled by the subsequent revelation that another company (Prodigy) had *identical* certificates and had also been unable to secure a loan certainly should have alerted him to the substantial problems with the CDs. At a minimum, these various facts created a "danger of misleading buyers that ... [was] so obvious that [Beatty] must have been aware of it." [FN24]

> FN24. *Anixter,* 77 F.3d at 1232-33; *Hackbart,* 675 F.2d at 1117-18.

Accordingly, the court finds that the SEC has established that Beatty committed fraud when he failed to inform investors that the CDs were apparently worthless and grants the SEC's motion for summary judgment against Beatty on this claim.

## II. Section 5 Claims

Although the court already rejected the SEC's claim that Beatty violated Section 5 of the 1933 Securities Act,[FN25] the SEC again argues that Beatty should be liable for selling unregistered shares under this provision. In support of its argument, the SEC cites some new authority. None of these cases significantly alter the court's previous analysis, so the court reaffirms its denial of the SEC's motion for summary judgment on this claim.

> FN25. *Autocorp,* 292 F.Supp.2d at 1329 (discussing 15 U.S.C. § 77e(a), (c)).

The court has already discussed at length the relevant law surrounding this claim,[FN26] but it is worth noting a few guiding propositions. Absent some exemption, Section 5 prohibits selling unregistered securities.[FN27] Once the SEC has established a prima facie case for a Section 5 violation, the burden of proof shifts to the defendant to establish that he has satisfied the requirements of the exemption.[FN28] Nevertheless, a defendant who establishes that the sale was made pursuant to an exemption may still be liable for the sale if the securities were issued as "part of a plan to evade the registration provisions of the Securities Act." [FN29]

> FN26. *Autocorp,* 292 F.Supp.2d at 1327-28.
>
> FN27. *See* 15 U.S.C. § 77e(a), (c).
>
> FN28. *See Securities and Exchange Commission v. Ralston Purina Co.,* 346 U.S. 119, 126, 73 S.Ct. 981, 97 L.Ed. 1494 (1953); *see also SEC v. Softpoint, Inc.,* 958 F.Supp. 846, 859 (S.D.N.Y.1997).
>
> FN29. *See Softpoint, Inc.,* 958 F.Supp. at 861 (S.D.N.Y.1997); 17 C.F.R. § 230.901 n. 2.

**\*5** It is undisputed that Chariot issued unregistered shares of Chariot stock. Beatty argues that this sale satisfies the requirements of "Regulation S." The court previously concluded that this exemption did not protect defendant Michael Carnicle (who had participated in the plan to avoid the registration requirements), but could protect Beatty (who was

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                   Page 6

Not Reported in F.Supp.2d, 2004 WL 1771608 (D.Utah)
**(Cite as: Not Reported in F.Supp.2d)**

apparently unaware of the plan).

The SEC again argues that Beatty's ignorance of the plan does not save him since Section 5 requires no scienter. The SEC cites *SEC v.. Friendly Power Company,*[FN30] which held that "neither a good faith belief that the offers or sales in question were legal, nor reliance on the advice of counsel, provides a complete defense to a charge of violating Section 5 of the Securities Act," [FN31] and also cites *SEC v. Parkersburg Wireless,* [FN32] which held, "[t]here is, however, no scienter under Section 5, and whether [the defendant] was an unwitting participant in this complex scheme would be of no moment." [FN33] Under this authority, the SEC argues, Beatty's awareness of any plan is irrelevant. Because a plan existed, the exemption did not actually apply, and Beatty is thus liable for a Section 5 violation.

>        FN30. 49 F.Supp.2d 1363 (S.D.Fla.1999).
>
>        FN31. *Id.* at 1367-68.
>
>        FN32. 991 F.Supp. 6 (D.D.C.1997).
>
>        FN33. *Id.* at 9.

However, none of the cases cited by the SEC stand for the proposition that a defendant who otherwise complied with Regulation S is not entitled to an exemption because of the existence of a plan or scheme in which he did not participate. Without any precedent in support of such a rule, the court is not inclined to adopt such a draconian view of the law. The court notes that the very issue being litigated, i.e., the "plan or scheme" exception to Regulation S, appears in an advisory note in the Code of Federal Regulations. The precise legal weight to be given to such a note is unclear. The court agrees that defendants, such as Michael Carnicle, who plot their way around federal registration requirements are not entitled to fence themselves in from the consequences of their misdeeds. But other defendants who have honestly complied with the technical requirements of Regulation S should not be penalized simply because others around them conspired together to make an extra buck.

Accordingly, the court holds that the "plan or scheme" exception to Regulation S does not apply to a defendant who did not actually participate in the plan or scheme and otherwise complied with the regulation.

Here, Beatty argues that, after consulting with an attorney, he reasonably believed he had complied with Regulation S. Taking the evidence in the light most favorable to him, the court agrees that he has sufficiently established his compliance to get past summary judgment. For the reasons stated in its prior opinion, the court again finds that Beatty did not participate in the plan to avoid the registration requirements and denies summary judgment on this claim.

### III. Aiding and Abetting in Chariot's Record-Keeping Violation

The court had previously denied summary judgment on the SEC's claim that Beatty aided and abetted Chariot in various record-keeping violations but invited the SEC to renew that argument here. The main addition to the SEC's earlier briefing is a case that specifically sets argument here. The main addition to the SEC's earlier briefing is a case that specifically sets forth the elements of aider and abettor liability under Section 13(b)(2)(A) of the Securities Act, which requires an issuer to "make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the issuer." [FN34] In *Ponce v. S.E.C.,*[FN35] the Ninth Circuit interpreted this stated three elements that must be established to show aider and abettor liability for a violation of this section: (1) that another party violated securities laws, (2) that the defendant "had knowledge of the primary violation and of his or her own role in furthering it," and (3) that the defendant "provided substantial assistance in the primary violation." [FN36]

>        FN34. 15 U.S.C. § 78m(b)(2)(A).
>
>        FN35. 345 F.3d 722 (9th Cir.2003).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 7

Not Reported in F.Supp.2d, 2004 WL 1771608 (D.Utah)
**(Cite as: Not Reported in F.Supp.2d)**

FN36. *Id.* at 737.

**\*6** Here, there can be no serious dispute that Chariot violated Section 13(b)(2)(A) by including the fake CDs on its books. Moreover, as discussed above, Beatty eventually learned of the fraud and, as president, must have known that his failure to disclose the fraud provided substantial assistance to the company's continued record-keeping violation. Accordingly, the court grants summary judgment on this claim.

### IV. Misleading an Accountant

In addition to aider and abettor liability, the SEC renews its argument that Beatty is personally liable for violating Rule 13b2-2,[FN37] which imposes a duty on corporate officers to clarify previous statements that are misleading in the absence of some material fact.[FN38] It is undisputed that Beatty worked with accountants to get the CDs and to issue the various SEC filings. If those conversations were the only evidence in support of this claim, summary judgment would not be proper. However, once Beatty learned the truth of the CDs, Rule 13b2-2 imposed a duty on him to inform the accountants, which he did not do. Accordingly, summary judgment is proper on this claim as well.

FN37. 17 C.F.R. § 240.13b2-2.

FN38. *Id.*

### V. Injunctive Relief

Based on the foregoing, the court concludes that Beatty should be enjoined from future violations of federal securities laws, specifically Section 17(a), Section 10, and Rule 10b-5, but it is unnecessary to enjoin him from serving on corporate boards or from future violations of Section 5.

An injunction is proper where a defendant "is engaged or about to engage in" violations of federal securities laws.[FN39] "An injunction based on the violation of securities laws is appropriate if the SEC demonstrates a reasonable and substantial likelihood that the defendant, if not enjoined, will violate securities laws in the future." [FN40] To determine whether future violations are likely, this court should consider several factors: "the seriousness of the violation, the degree of scienter, whether defendant's occupation will present opportunities for future violations, and whether defendant has recognized his wrongful conduct and gives sincere assurances against future violations." [FN41] Of these factors, the degree of scienter is particularly weighty.[FN42]

FN39. 15 U.S.C. §§ 77t(b), 78u(d)(1).

FN40. *SEC v. Pros Intern., Inc.,* 994 F.2d 767, 769 (10th Cir.1993).

FN41. *Id.*

FN42. *See Id.; Securities and Exchange Commission v. Haswell,* 654 F.2d 698, 699 (10th Cir.1981).

Given the violations established in this case, the court concludes that an injunction against future violations is proper. However, an injunction against Beatty's ever again serving as corporate officer seems excessive. At argument, the parties represented that such an injunction is the "death penalty" of corporate law. Had the SEC established that Beatty was in on the plot from the beginning, perhaps such an injunction would be warranted. However, at this time, the SEC has only established liability based on Beatty's failure to disclose information he learned after the fact. While this failure certainly was actionable, it does not manifest such an offensive mental state that warrants the " death penalty." Accordingly, such relief is denied.

### CONCLUSION

**\*7** Based on this analysis, the court GRANTS IN PART the SEC's Motion for Summary Judgment Against Defendant Robert Cord Beatty (# 121-1).
A. The motion is GRANTED as to the violations of
a) Securities fraud under Section 17(a), Section 10(b), and Rule 10b-5;

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                              Page 8
Not Reported in F.Supp.2d, 2004 WL 1771608 (D.Utah)
**(Cite as: Not Reported in F.Supp.2d)**

b) Aiding and abetting Chariot's violation of Section 13(b)(2)(A); and
c) Misleading an accountant under Rule 13b2-2;
B. The motion is DENIED as to the Section 5 violation; and
C. The motion is GRANTED as to the SEC's motion for an injunction against future securities violations but is DENIED as to an injunction against ever serving as a director or officer in the future.

Given that the SEC has substantially prevailed on its claims, the court invites an appropriate motion from the SEC to dismiss its remaining claims in this case. The court also directs the SEC to file an appropriate injunction order within two weeks from the date of this order.

SO ORDERED.

D.Utah,2004.
S.E.C. v. Autocorp Equities, Inc.
Not Reported in F.Supp.2d, 2004 WL 1771608 (D.Utah)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.