Westlaw.

Not Reported in F.Supp.2d                                                            Page 1

Not Reported in F.Supp.2d, 2006 WL 449175 (M.D.Fla.), Fed. Sec. L. Rep. P 93,731
**(Cite as: Not Reported in F.Supp.2d)**

Briefs and Other Related Documents
S.E.C. v. DauplaiseM.D.Fla.,2006.
United States District Court,M.D. Florida.
SECURITIES AND EXCHANGE COMMISSION,
Plaintiff,
v.
Armand DAUPLAISE & Bernard Shinder,
Defendants.
**No. 6:05CV1391 ORL 31KRS.**

Feb. 22, 2006.

Brent Stephen Mitchell, Cheryl J. Scarboro, Peter H. Bresnan, Russell David Duncan, Securities and Exchange Commission, Washington, DC, for Plaintiff.
Philip J. Snyderburn, Snyderburn, Rishoi & Swann, Maitland, FL, Carl Francis Schoeppl, Schoeppl & Burke, P.A., Boca Raton, FL, for Defendants.

ORDER
PRESNELL, J.
**\*1** The Securities & Exchange Commission ("SEC") alleges that the Defendants, Armand Dauplaise (" Dauplaise") and Bernard Shinder ("Shinder"), in relation to their involvement with Bio One Corporation ("Bio One"), committed and/or aided and abetted fraud in violation of various federal securities laws. This matter is presently before the Court on Shinder's Motion to Dismiss (Doc. 20) and the SEC's Response thereto (Doc. 24).[FN1] The Court held a hearing on this matter on February 10, 2006, at which the parties presented oral argument. For the reasons stated herein, Shinder's Motion to Dismiss is granted in part and denied in part.

> FN1. The SEC's Complaint appears at Doc. 1. At the hearing it was represented to the Court that a settlement has been reached between the SEC and Armand Dauplaise.

I. Background

A. Defendants and Relevant Entities

Dauplaise was the CEO and a director of Bio One until February of 2005. Shinder was a director of Bio One from December of 2003 until November of 2004, and had "held himself out as" Bio One's CFO since 2002. Shinder also acted as a consultant to Bio One and served as a director of Bio One's Interactive Nutrition International subsidiary. Bio One paid Shinder by hiring Bernard Shinder Consultants, Inc., on whose behalf Shinder acted when he worked for Bio One.

Bio One was a Nevada corporation with headquarters near Orlando, Florida. Its common stock was registered pursuant to Section 12(g) of the Exchange Act, and its shares were traded on the Over the Counter Bulletin Board until they were delisted in May of 2005.

B. Facts

In mid-2003, Bio One began acquiring private businesses, and in early 2004, it made several purchases, including the acquisition of one hundred percent of the common stock of Interactive Nutrition International ("INI") at a cost of $23.4 million.[FN2] As part of this purchase, Bio One and INI issued a $15 million (Canadian) note (the "Note ") to INI's former owners, the Nesrallah family (the "Nesrallahs"). Bio One agreed to begin making monthly payments starting July 1, 2004. Under the terms of the Note, the Nesrallahs held a security interest in INI's assets that could be enforced in the event of default.

> FN2. Shinder and Dauplaise have both stated that INI was a major part of Bio One's business strategy.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 2

Not Reported in F.Supp.2d, 2006 WL 449175 (M.D.Fla.), Fed. Sec. L. Rep. P 93,731
**(Cite as: Not Reported in F.Supp.2d)**

Bio One failed to make the July 1, 2004 payment, [FN3] and on July 7, 2004, Pam Nesrallah sent a letter to Dauplaise and Shinder notifying them that Bio One was in default and proposing the negotiation of a forebearance agreement. Dauplaise received and signed a copy of that letter. On August 13, 2004, Pam Nesrallah sent a forbearance agreement (the "August Forbearance Agreement") to Dauplaise and Shinder, along with a letter noting that Bio One remained in default on the Note. The August Forbearance Agreement required Bio One, *inter alia,* to: acknowledge the default; refrain from taking dividends, distributions or other money from INI; and to consent to the Nesrallah Family's enforcement of their security interests in the event of any further default. After receiving the August Forbearance Agreement, Dauplaise and Shinder discussed, via e-mail, whether Bio One needed to disclose the receipt of a notice of default, and then both signed that agreement.[FN4]

> FN3. Indeed, Bio One never made any monthly payments on the $15 million note.

> FN4. The SEC alleges that Dauplaise understood that his signature acknowledged Bio One's default.

**\*2** Bio One filed its Form 10-QSB for the period ending June 30, 2004 (the "Second Quarter 10-Q"), on August 18, 2004. The Second Quarter 10-Q describes the Note and Bio One's obligation to make monthly payments thereon, but did not disclose the July 1, 2004 nonpayment or the August Forbearance Agreement. [FN5] Dauplaise, Shinder and the other Bio One directors reviewed and approved the Second Quarter 10-Q.[FN6]

> FN5. Dauplaise has claimed that the failure to mention the August Forbearance Agreement was the result of an oversight. In any event, it is not clear why the Second Quarter 10-Q, which only covered the period ending June 30, 2004, would have disclosed events that did not occur until July and/or August. *See* additional discussion in n. 16, *infra.*

> FN6. Dauplaise signed as both the Chief Executive Officer and the Chief Financial/Accounting Officer.

Pam Nesrallah sent a second forbearance agreement to Dauplaise on November 1, 2004 (the "November Forbearance Agreement"). The November Forbearance Agreement included the same restrictions as the August Forbearance Agreement, as well as several documents, including: a notice of default; a notice of intention to enforce security; and an acknowledgment and waiver for Dauplaise and Sinder to sign, which acknowledged receipt of the notices, waived further notice, and consented to the Nesrallah Family's immediate enforcement of their security interest. Dauplaise and Shinder signed both the November Forbearance Agreement and the acknowledgment and waiver.[FN7] Neither Dauplaise nor Shinder consulted with an attorney before signing the forbearance agreements.

> FN7. The SEC alleges that when Shinder signed the acknowledgment and waiver form, he was aware that he was waiving any notice period in the event of a default.

Bio One filed a Form 10-QSB covering the period to September 30, 2004 (the "Third Quarter 10-Q") on November 15, 2004. The Third Quarter 10-Q included unaudited financial statements prepared by Bio One's accountants, who relied on a letter signed by Dauplaise, in which he wrote that Bio One had complied with all aspects of contractual arrangements that would have a material effect on the company's financial statements in the event of noncompliance.[FN8] The Third Quarter 10-Q also describes the Note and the monthly payments, but does not mention the nonpayment or the Forbearance Agreements. Dauplaise signed the Third Quarter 10-Q as Bio One's Chief Executive Officer and Chief Financial/Accounting Officer.

> FN8. The SEC alleges that Bio One had not complied with all aspects of the Note, and that such noncompliance would have a material effect on the relevant financial statements.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 3

Not Reported in F.Supp.2d, 2006 WL 449175 (M.D.Fla.), Fed. Sec. L. Rep. P 93,731
**(Cite as: Not Reported in F.Supp.2d)**

Both the Second and Third Quarter 10-Q included certifications entitled "Officer's Certification Pursuant to Section 302," which stated, in part
Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

andBased on my knowledge, the financial statements and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the small business issuer as of, and for, the periods presented in this report.

Dauplaise signed both of these certifications.[FN9]

> FN9. The SEC alleges that these certifications were false when Dauplaise signed them.

On December 13, 2004, the Nesrallah Family appointed a receiver to seize INI's assets. As a result, Bio One lost control of INI's assets. Dauplaise and Shinder learned about the appointment of the receiver that same day,[FN10] but did not notify Bio One's attorneys or its board of directors until after December 23, 2004. On December 23, 2004, Bio One filed a Form 8-K, which failed to disclose the default on the Note, the Forbearance Agreements and the receivership. Statements filed with the Form 8-K, drafted by Bio One's accountants, included a note disclosing Bio One's purchase of INI and noting that in December of 2004 Bio One was delinquent in its obligation to INI's former owners. The SEC alleges that this filing used the term "delinquent" rather than "default" because Dauplaise and Shinder withheld facts from Bio One's lawyers and accountant.

> FN10. The SEC alleges that Shinder has acknowledged that this was a "major issue," and that the appointment of the receiver was a material event that should have been disclosed.

**\*3** Prior to the issuance of this Form 8-K, on December 21, 2004, Bio One's accountant sent Bio One's attorneys a draft financial statement that included a note regarding the fact that Bio One had been declared to be in default of its obligation under the Note. The following day, Bio One's attorney circulated a Form 8-K, which disclosed the default. Dauplaise and Shinder initially approved the disclosure of the default, and Shinder wrote a revision to the second Form 8-K that included the statement: "Bio One entered into a Forbearance Agreement under the terms of which Bio One acknowledged that it was in default of making certain payments under the Note." Shinder emailed this revision to Dauplaise and Bio One's attorney.

After Shinder sent that email, a conference call was held among Shinder, Dauplaise and Bio One's attorneys in order to discuss INI. At that time the attorneys had not seen the Forbearance Agreements, and Shinder and Dauplaise did not mention the receiver to the attorneys. Although the attorneys were aware that Bio One had failed to make the July 1, 2004 payment on the Note, Shinder told them that Bio One had never received a written notice of default, and that any forbearance agreements were oral, not written.[FN11] Based on Dauplaise's and Shinder's statements, the attorneys agreed that the situation regarding INI could be described as "delinquent."

> FN11. The SEC alleges that Shinder's statement was false.

After that conference call, Shinder and Dauplaise spoke via telephone with Bio One's accountant. Dauplaise objected to the term "default," and stated that the situation was "not a technical default," but did not mention either Forbearance Agreement. Dauplaise also downplayed the significance of the receiver. The accountant, relying on Dauplaise's statements and on Shinder's failure to contradict Dauplaise, agreed to replace the term "default" with "delinquent." The Form 8-K thus did not disclose Bio One's default when it was filed on December 23, 2004.

Within a short time after the filing of the Form 8-K,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 4

Not Reported in F.Supp.2d, 2006 WL 449175 (M.D.Fla.), Fed. Sec. L. Rep. P 93,731
**(Cite as: Not Reported in F.Supp.2d)**

Pam Nesrallah notified Dauplaise via e-mail that the Nesrallah Family no longer wished to work with Bio One. Dauplaise forwarded that e-mail to Shinder, who responded that they would have to brief the board of directors regarding the situation.

During the year 2004, Bio One sold more than 100 million shares of stock. The Forbearance Agreements and the appointment of a receiver were not disclosed to the public until the filing of a Form 8-K on February 15, 2005. On February 18, 2005, Bio One terminated Dauplaise's employment and severed all ties with Shinder. Bio One subsequently ceased operations, and virtually its entire board of directors resigned.

### C. Claims and Arguments

The SEC has asserted five claims against Shinder. Count One alleges that through his fraudulent conduct, Shinder violated Section 17(a) of the Securities Act, 15 U.S.C. section 77q(a) ("Section 17(a)"), Section 10(b) of the Securities Exchange Act, 15 U.S.C. section 78j(b) ("Section 10(b)"), and Rule 10b-5, 17 C.F .R. section 240.10b-5 ("Rule 10b-5"), or in the alternative aided and abetted the violation of Section 10(b) and Rule 10b-5. Count Two asserts a violation of Section 13(a) of the Securities Exchange Act, 15 U.S.C. section 78m(a) ( "Section 13(a)"), and Rules 13a-11 and 13a-13 promulgated thereunder, 17 C.F.R. sections 240.12-b-20 and 240.13a-1 ("Rule 13a-11" and " Rule 13a-13"), which require that quarterly reports provide true and accurate financial information and that principal officers must sign certification forms. Count Two also alleges that Shinder aided and abetted violations of Section 13(a) and Rules 13a-11 and 13a-13. In Count Three, the SEC alleges that Shinder directly or indirectly falsified or caused the falsification of Bio One's books, records or accounts, and thereby violated Rule 13b2-1 of the Securities Exchange Act, 17 C.F.R. section 240b2-1 ("Rule 13b2-1").

**\*4** In Count Four, the SEC alleges that Shinder directly or indirectly made or caused to be made materially false or misleading statements to, or omitted to state, or caused to be omitted, material facts necessary to make certain statements not misleading, to an accountant in connection with the audit or examination of Bio One's financial statements, and thereby violated or aided and abetted the violation of Rule 13b2-2 of the Securities Exchange Act, 17 C.F.R. section 240.13b202 ("Rule 13b2-2"). Count Five alleges that Bio One failed to devise or maintain the required system of internal accounting controls, and that Shinder aided and abetted this violation of Section 13(b)(2)(B) of the Securities Exchange Act, 15 U.S.C. section 78m(b)(2)(B) ( "Section 13(b)(2)(B)").

Shinder has moved to dismiss the SEC's complaint, arguing as to Count One that the SEC has failed to attribute any misrepresentations to him, even if he did make misstatements he did not act with the requisite scienter, and the SEC cannot support either the Rule 10b-5 element requiring a connection with a purchase or sale or the Section 17(a) element requiring a connection with an offer and sale. Shinder also seeks the dismissal of the other counts, arguing that he is not the issuer of the securities at issue and did not provide sufficient assistance for a finding of aider and abettor liability (Count Two), he did not participate or cause the " falsification" of any of Bio One's books and records (Count Three), there are insufficient allegations to show that he either violated or aided and abetted the violation of Rule 13b2-2 (Count Four), and there are no allegations demonstrating that Shinder knew he should have disclosed the nonpayments and the Forbearance Agreements, nor are there allegations demonstrating that Shinder had a role in establishing Bio One's internal accounting controls (Count Five).

### II. Standard of Review

In ruling on a motion to dismiss, this Court must view the complaint in the light most favorable to the Plaintiff, *Cannon v. Macon County,* 1 F.3d 1558, 1565 (11th Cir.1993), and must limit its consideration to the pleadings and any exhibits attached thereto. Fed. R. Civ. P. 10(c); *see also GSW, Inc. v. Long County, Ga.,* 999 F.2d 1508, 1510 (11th Cir.1993). The Court will liberally

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2006 WL 449175 (M.D.Fla.), Fed. Sec. L. Rep. P 93,731
**(Cite as: Not Reported in F.Supp.2d)**

construe the complaint's allegations in the Plaintiff's favor, *Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969), and will not dismiss a complaint for failure to state a claim unless it appears beyond a doubt that the Plaintiff cannot prove any set of facts that support a claim for relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In ruling on a motion to dismiss, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.,* 326 F.3d 1183, 1185 (11th Cir.2003).

Normally, in reviewing a complaint on a motion to dismiss under Federal Rule of Civil Procedure (" Rule") 12(b)(6), "courts must be mindful that the Federal Rules require only that the complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief." *U.S. v. Baxter Intern., Inc.,* 345 F.3d 866, 880 (11th Cir.2003) (*citing* Fed. R. Civ. P. 8(a)). This is a liberal pleading requirement, one that does not require a plaintiff to plead with particularity every element of a cause of action. *Roe v. Aware Woman Ctr. for Choice, Inc.,* 253 F.3d 678, 683 (11th Cir.2001). Instead, the complaint need only " contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Id.* (internal citation and quotation omitted). "A complaint need not specify in detail the precise theory giving rise to recovery. All that is required is that the defendant be on notice as to the claim being asserted against him and the grounds on which it rests." *Sams v. United Food and Comm'l Workers Int'l Union,* 866 F.2d 1380, 1384 (11th Cir.1989).

**\*5** However, the SEC has specifically pled this action as a fraud action. Claims of fraud must satisfy the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure ("Rule 9(b)"), which provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other conditions of mind of a person may be averred generally." Fed.R.Civ.P. 9(b) . The pleading requirements of Rule 9(b) may be satisfied where the complaint

sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Ziemba v. Cascade Int'l, Inc.,* 256 F.3d 1194, 1202 (11th Cir.2001) (internal citation and quotation omitted).

### III. Legal Analysis

### A. Count One-Section 10(b), Rule 10b-5 and Section 17(a)

Section 10(b) and Rule 10b-5 prohibit fraud "in connection with the purchase and sale of securities," and Section 17(a) prohibits fraud "in the offer and sale of securities." *S.E.C. v. Gane,* 2005 WL 90154 at \*11 (S.D.Fla. Jan.4, 2005); 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b; 15 U.S.C. § 77q(a). Sections 10(b) and 17(a) prohibit essentially the same type of sales practices. *S.E.C. v. Chem. Trust,* 2000 WL 33231600 at \*9 (S.D.Fla. Dec.19, 2000). The elements of a proof of violation of each section are essentially the same, and include:

(1) a misrepresentation or omission,[FN12] (2) that was material, [FN13] (3) which was made in the offer and sale of a security (Section 17(a)(1)) or in connection with the purchase or sale of securities ( Section 10(b) and Rule 10b-5), (4) scienter,[FN14] and (5) the involvement of interstate commerce, the mails, or a national securities exchange.[FN15]

> FN12. Liability under these sections thus " arises not only from affirmative misrepresentations but also from failures to disclose material information." *Gane,* 2005 WL 90154 at \*11.

> FN13. " 'Material information' is defined

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2006 WL 449175 (M.D.Fla.), Fed. Sec. L. Rep. P 93,731
**(Cite as: Not Reported in F.Supp.2d)**

as information that is substantially likely to be important to a reasonable investor in deciding whether to purchase, sell, or hold securities." *Chem. Trust,* 2000 WL 33231600 at *10.

FN14. *See Aaron v. SEC,* 446 U.S. 680, 701-702, 100 S.Ct. 1945, 64 L.Ed.2d 611 (1980) (SEC is required to establish scienter as element of civil enforcement action to enjoin violations of Section 10(b), Rule 10b-5, and Section 17(a)(1)); *SEC v. First Fin. Group of Tex.,* 645 F.2d 429, 435 (5th Cir.1981). Scienter "has been defined by the Supreme Court as a mental state embracing intent to deceive, manipulate, or defraud. This definition embraces knowing or intentional conduct proscribed by [Section] 17(a)(1), [Section] 10(b), and Rule 10[b]-5." *First Fin. Group,* 645 F.2d at 435 n. 9 (internal citations and quotations omitted); *see also SEC v. Adler,* 137 F.3d 1325, 1340 (11th Cir.1998).

FN15. "Unlike a private litigant, however, the SEC need not prove either reliance or damages." *SEC v. Lucent Tech.,* 363 F.Supp.2d 708, 714 (D.N.J.2005).

*Gane,* 2005 WL 90154 at *11; *Chem. Trust,* 2000 WL 33231600 at *9.

The question of primary liability for a violation of Section 10(b) and Rule 10b-5 is governed by a " bright line test," which means that

in order for the defendant to be primarily liable under § 10(b) and Rule 10b-5, the alleged misstatement or omission upon which a plaintiff relied must have been publicly attributable to the defendant at the time that the plaintiff's investment decision was made.

*Ziemba,* 256 F.3d at 1205; *see also S.E.C. v. Lucent Tech.,* 363 F.Supp.2d 708, 720 (D.N.J.2005) ("a person must actually make the material misstatement or omission and the misrepresentation must be attributed to the specific actor at the time of public dissemination in order to be a primary violator.") "Anything short of such conduct is

merely aiding and abetting, and no matter how substantial that aid may be, it is not enough to trigger liability under Section 10(b)." *Lucent,* 363 F.Supp.2d at 720.

**\*6** Regarding the Form 10-Qs, the SEC has failed to articulate which misrepresentations and/or omissions are attributable to Shinder at the time of their public dissemination. The SEC alleges that Shinder, among others, "reviewed and approved" the Second Quarter 10-Q, but does not allege that Shinder had any involvement in preparing that document, nor does the SEC allege that Shinder signed it.[FN16] Further, the SEC fails to make any allegations connecting Shinder to the Third Quarter 10-Q. Although the SEC alleges that Shinder was aware of the appointment of the receiver, and failed to disclose that information to Bio One's board of directors, by that time Shinder was no longer a director of Bio One, and the SEC has offered no basis to conclude that Shinder had any duty to disclose that information.

FN16. The Second Quarter 10-Q was not, in and of itself, misleading, by the failure to disclose the default and the August Forbearance Agreement, as those events occurred after the time period covered by that 10-Q. The information contained therein, however, may have become misleading by the failure to subsequently update it, as by filing a Form 8-K to give notice of the default and August Forbearance Agreement. While a duty to update may exist, the SEC has not made any allegations to support a claim for a violation of that duty. *See In re Int'l Bus. Mach. Corporate Sec. Litig.,* 163 F.3d 102, 110 (2nd Cir.1998) (duty to update may exist when statement which was reasonable at time made, becomes misleading because of subsequent event); *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1431 (3rd Cir.1997) (updating might be required if prior statement became materially misleading in light of subsequent events); *Rubinstein v. Collins,* 20 F.3d 160, 170 n. 41 (5th

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 7

Not Reported in F.Supp.2d, 2006 WL 449175 (M.D.Fla.), Fed. Sec. L. Rep. P 93,731
**(Cite as: Not Reported in F.Supp.2d)**

Cir.1994); *Rudolph v. Arthur Andersen & Co.,* 800 F.2d 1040, 1043 (11th Cir.1986) ( "Where a defendant's failure to speak would render the defendant's *own* prior speech misleading or deceptive, a duty to disclose arises.") (emphasis in original).

The SEC also makes a number of allegations regarding the Form 8-K filed in December of 2004, including: (1) Bio One's accountant supplied financial statements which noted that Bio One had been declared to be in default; (2) Bio One's attorney circulated a draft Form 8-K, which disclosed the default; (3) Shinder discussed both the default and the Forbearance Agreements with Bio One's attorney, and (a) told the attorney (falsely) that they had never received a written notice of default and that the Forbearance Agreements were oral and not written, and (b) failed to disclose to the attorney the appointment of the receiver; (4) Shinder prevailed on the attorney to use the term " delinquent," which was clearly a misrepresentation and an omission; (5) during the phone call with Bio One's accountant, Dauplaise misrepresented the default by stating that it was "not a technical default, " failed to disclose either Forbearance Agreement, and downplayed the significance of the receiver, and Shinder, by his silence during that phone call, failed to correct those misrepresentations; and (6) ultimately, as a result of these misrepresentations and omissions, Bio One's accountant agreed to replace the term "default" with "delinquent." Although these allegations do not specifically state that Shinder drafted misleading text for the Form 8-K, one can infer from these allegations that Shinder (along with Dauplaise) was responsible for the misrepresentations and omissions that resulted in Bio One's accountants' decision to issue a deceptive Form 8-K.[FN17] Therefore, viewing the allegations in the light most favorable to the SEC, the Court finds that the SEC has stated a claim against Shinder for a primary violation of Section 10(b), Rule 10b-5, and Section 17(a).[FN18]

FN17. Notwithstanding Shinder's argument to the contrary, the SEC has met the "in connection with" requirement of a violation of Section 10(b) and Rule 10b-5.

The SEC has alleged that Bio One's Second and Third Quarter 10-Qs, as well as the Form 8-K filed in December of 2004, each of which was filed with the SEC, contained material misstatements and omissions in that they misrepresented Bio One's financial state by, *inter alia,* failing to disclose the Forbearance Agreements, the default on the Note, and the receivership, and by mischaracterizing the default as a delinquency. Because these are the type of documents on which investors presumably rely for investment decisions, the SEC has, at this stage, satisfied the "in connection" with requirement. *See Cooper v. Pacific Life Ins. Co.,* 229 F.R.D. 245, 252 (S.D.Ga.2005) (requirement satisfied by showing that defendant omitted from prospectus information concerning value of security); *S.E.C. v. Digital Lightwave, Inc.,* 196 F.R.D. 698, 701 (M.D.Fla.2000) (where fraud involves public dissemination in document such as press release, annual report, prospectus, "or other such document on which an investor would presumably rely, the 'in connection with' requirement is generally met by proof of the means of dissemination and the materiality of the misrepresentation or omission;" SEC satisfied requirement by alleging that defendant fraudulently manipulated stock value by misstating earnings in SEC filings); *S.E.C. v. Warner,* 652 F.Supp. 647, 651 (S.D.Fla.1987) (requirement is satisfied when "it may reasonably be expected that a publicly disseminated document will cause reasonable investors to buy or sell securities in reliance thereon").

FN18. In addition to primary liability, the allegations of the Complaint clearly establish aider and abettor liability as well under Section 10(b) and Rule 10b-5 (however the SEC has not alleged that Shinder aided and abetted a violation of Section 17(a)). Although private plaintiffs may not maintain suits for aiding and abetting under Section 10(b), *Central Bank*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                      Page 8

Not Reported in F.Supp.2d, 2006 WL 449175 (M.D.Fla.), Fed. Sec. L. Rep. P 93,731
**(Cite as: Not Reported in F.Supp.2d)**

*of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164, 191, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994), the SEC may bring civil enforcement actions against those who aid and abet violations of federal securities laws, including Section 10(b) and Rule 10b-5. *S.E.C. v. Pimco Advisors Fund Mgmt. LLC,* 341 F.Supp.2d 454, 467 (S.D.N.Y.2004); *see also* 15 U.S.C. § 78t.

**B. Count Two-Violation of Section 13(a)**

Section 13(a) ("Reports by issuer of security; contents") provides, in relevant part, that:
Every issuer of a security registered pursuant to section 78l of this title shall file with the Commission, in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate for the proper protection of investors and to insure fair dealing in the security-
**\*7** (1) such information and documents (and such copies thereof) as the Commission shall require to keep reasonably current the information and documents required to be included in or filed with an application or registration statement filed pursuant to section 78l of this title....
(2) such annual reports ... and such quarterly reports (and such copies thereof), as the Commission may prescribe.

15 U.S.C. § 78m(a). Rules 13a-11 and 13a-13 promulgated pursuant to Section 13(a) respectively require a registrant to file Form 8-Ks and quarterly reports.[FN19] 17 C.F.R. §§ 240.13a-11, 240.13a-13; *see also S.E.C. v. Koenig,* 469 F.2d 198, 200 n. 3 (2nd Cir.1972) (Section 13(a) and Rules 13a-13 and 13a-11 require the filing with the SEC of quarterly reports on Form 10-Q and current reports of material corporate developments on Form 8-K); *S.E.C. v. Chester Holdings, Ltd.,* 41 F.Supp.2d 505, 526 (D.N.J.1999). "These reports must be accurate and not omit information that would otherwise make the information in the reports not misleading." *S.E.C. v. Intelliquis Int'l, Inc.,* 2003 WL 23356426 at *11 (D.Utah Dec.11, 2003); *Chester Holdings,* 41 F.Supp.2d at 526 ("The statements must not be misleading and financial reports are presumed to be misleading if not filed in accordance with GAAP.");

*S.E.C. v. Gallagher,* 1989 WL 95252 at *6 (E.D.Pa. Aug.16, 1989) ("the obligation to file *truthful* statements is implicit in the obligation to file ") (emphasis in original; internal citation and quotation omitted).[FN20]

FN19. A Form 8-K is required to be filed upon the occurrence of any number of events, including, but not limited to: the entry into or termination of material agreements; bankruptcy or receivership; the completion of the acquisition or disposition of assets; results of operations and financial condition; the creation of a direct financial obligation or an obligation under an off-balance sheet arrangement; events that accelerate or increase a direct financial obligation or an obligation under an off-balance sheet arrangement; material impairments; delisting or the failure to satisfy a listing rule; material modifications to the rights of security holders; and changes in corporate governance and management. *See* www.sec.gov/about/forms/secforms.htm; *see also S.E.C. v. Falstaff Brewing Corp.,* 629 F.2d 62, 70 n. 11 (D.C.Cir.1980) (" Rule 13a-11 requires a Form 8-K whenever certain events listed in the form's instructions transpire."). A quarterly report, generally filed on a Form 10-Q, includes information on the registrant's financial state (including financial statements), legal proceedings, the unregistered sale of equity securities, defaults on senior securities, submission of matters to a vote of security holders, and other information, including information required to be disclosed in a Form 8-K for the relevant quarter but not reported therein. *See* www.sec.gov/about/forms/secforms.htm; *see also S.E.C. v. Gallagher,* 1989 WL 95252 at *6 (E.D.Pa. Aug.16, 1989) (" Rule 13a-13 requires [issuers] to file quarterly reports"); *Falstaff Brewing,* 629 F.2d at 70 n. 9 ("all Form 10-Q requires is a statement that the registrant has made all

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                        Page 9

Not Reported in F.Supp.2d, 2006 WL 449175 (M.D.Fla.), Fed. Sec. L. Rep. P 93,731
**(Cite as: Not Reported in F.Supp.2d)**

necessary reports during the past 12 months and has been subject to the reporting requirements for the past 90 days ").

FN20. *See also S.E.C. v. Save The World Air Inc.,* 2005 WL 3077514 (S.D.N.Y. Nov.15, 2005) (violation of Section 13(b)(2)(A) and rules thereunder where company failed to disclose source of payment, and thus did not accurately reflect transaction in its filings, and then failed to correct those misleading filings); *Chester Holdings,* 41 F.Supp.4d at 526 (company's 10-Qs were materially misleading, and therefore violated Sections 12 and 13(a), as well as Rules 13a-1, 13a-11, and 13a-13).

The SEC has alleged that Shinder aided and abetted violations of Section 13(a) and Rules 13a-11 and 13a-13. As discussed previously, there is no indication as to why the Second Quarter 10-Q was misleading given that it does not disclose events that did not occur until after the time period covered in the report, and thus the SEC has failed to show a violation in relation to the Second Quarter 10-Q. The Third Quarter 10-Q contained material misrepresentations and omissions, but there are no allegations connecting Shinder and the Third Quarter 10-Q. Therefore, the SEC's claim as to this document fails.[FN21] However, because the Form 8-K contained material misrepresentations, for the reasons discussed above in relation to the allegations of fraud regarding the Form 8-K, the SEC has made sufficient allegations to show that Shinder aided and abetted a violation of Section 13(a) and Rule 13a-11.[FN22]

FN21. Upon repleading, the SEC should be prepared to clarify those particular reports that violate Section 13(a) and to demonstrate what misrepresentations are contained in those reports and how Shinder is connected to those reports.

FN22. The SEC also argues that Bio One violated Section 13(a) and Rule 13a-11 by

failing to file a Form 8-K upon receiving the notice of default and/or the signing of the Forbearance Agreements. While those facts may establish a primary violation, the SEC has failed to allege that Shinder played a role in that failure, and thus has failed to state a claim against Shinder in this regard.

### C. Count Three-Falsification of Bio One's Books and Records (Rule 13b2-1)

Rule 13b2-1 ("Falsification of accounting records") provides that "[n]o person shall directly or indirectly, falsify or cause to be falsified, any book, record or account subject to section 13(b)(2)(A) of the Securities Exchange Act." 17 C.F.R. § 240.13b2-1; [FN23] *see also U.S. v. Wilson,* 2001 WL 798018 at *6 (S.D.N.Y. Jul.13, 2001) ("These provisions essentially require publicly held corporations to keep accurate records and accounts." ). The books and records provision

FN23. "[S]ection 13(b)(2) and the rules promulgated thereunder are rules of general application which were enacted to (1) assure that an issuer's books and records accurately and fairly reflect its transactions and the disposition of assets, (2) protect the integrity of the independent audit of issuer financial statements that are required under the Exchange Act, and (3) promote the reliability and completeness of financial information that issuers are required to file with the Commission or disseminate to investors pursuant to the Exchange Act." *S.E.C. v. World-Wide Coin Inv., Ltd.,* 567 F.Supp. 724, 746 (N.D.Ga.1983). "The proscription is not limited to corporate officers or employees." *S.E.C. v. Softpoint, Inc.,* 958 F.Supp. 846, 865-66 (S.D.N.Y.1997). There is no scienter requirement; instead, liability is predicated on standards of reasonableness. *Id.* at 866 (internal citation and quotation omitted); *S.E.C. v. Lowy,* 396 F.Supp.2d 225, 250 (E.D.N.Y.2003) (as prerequisite to liability, S.E.C. must establish that

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                              Page 10

Not Reported in F.Supp.2d, 2006 WL 449175 (M.D.Fla.), Fed. Sec. L. Rep. P 93,731
**(Cite as: Not Reported in F.Supp.2d)**

defendant acted unreasonably; scienter is not an element).

**\*8** has three basic objectives: (1) books and records should reflect transactions in conformity with accepted methods of reporting economic events, (2) misrepresentation, concealment, falsification, circumvention, and other deliberate acts resulting in inaccurate financial books and records are unlawful, and (3) transactions should be properly reflected on books and records in such a manner as to permit the preparation of financial statements in conformity with GAAP and other criteria applicable to such statements. *S.E.C. v. World-Wide Coin Inv., Ltd.,* 567 F.Supp. 724, 748 (N.D.Ga.1983). To prevail on such a claim, "the SEC must establish that [the defendant] directly or indirectly, falsified or caused to be falsified, any book, record or account that the company was required to maintain under the Securities Exchange Act." *S.E.C. v. Lowy,* 396 F.Supp.2d 225, 240 (E.D.N.Y.2003). [FN24]

> FN24. "Congress' use of the term 'records' suggests that virtually any tangible embodiment of information made or kept by an issuer is within the scope of section 13(b)(2)(A) of the FCPA, such as tape recordings, computer print-outs, and similar representations." *World-Wide Coin,* 567 F.Supp. 748-49.

The SEC has alleged that Shinder was aware of certain practices and that Shinder made material misrepresentations and omissions, but the SEC has not alleged how Shinder's actions affected any of Bio One's books, records or accounts. Indeed, other than the conclusory allegation in Count Three (which basically restates the language of the Rule), the SEC's Complaint makes no reference to Bio One's books, records or accounts. Therefore the SEC has failed to provide sufficient allegations to state a claim against Shinder for a violation of Rule 13b2-1.[FN25]

> FN25. *Compare S.E.C. v. Lucent Tech. Inc.,* 2005 WL 1683741 at \*2 (D.N.J.

Jul.18, 2005) (plaintiff adequately pled claim by alleging that defendant, *inter alia,* lied to the chief accountant about the existence of the side agreements, knowingly circumvented company's system of internal accounting controls and knowingly caused company's books and records to be falsified); *S.E.C. v. Kahn,* 2002 WL 1163723 at \*13 (N.D.Ill. May 31, 2002) (defendant violated this Rule where he deferred accounts and performed balance adjustments to make delinquent accounts appear current); *S.E.C. v. Pace,* 173 F.Supp.2d 30 (D.D.C.2001) (violation where defendant did not record transfers of funds to his personal bank account in the corporate books and records); *S.E.C. v. Softpoint, Inc.,* 958 F.Supp. 846, 866 (S.D.N.Y.1997) (where defendant retained fictitious entries and payments in accounts receivable ledger, approved and signed annual disclosure that misrepresented company's sales and collections, and as a consultant participated in the preparation of numerous annual and quarterly reports containing fictitious entries and payments he did not act reasonably as required by Rule 13b2-1).

### D. Count Four-Misstatements or Omissions in Statements Made to Bio One's Accountants (Rule 13b2-2)

Rule 13b2-2 generally forbids officers and directors of issuing companies from making material misstatements or omissions in communications with accountants in connection with audits or reviews of the issuer's financial records or with the preparation or filing of documents required to be filed with the SEC, and also prevents officers and directors from manipulating, misleading or fraudulently inducing any independent accountant who is performing an audit or review of the issuer's financial statements. *See* 17 C.F.R. § 240 .13b2-2; *see also S.E.C. v. Autocorp Equities, Inc.,* 292 F.Supp.2d 1310, 1332 (D.Utah 2003) ("Rule 13b-2 makes it illegal for an officer to mislead auditors and accountants."); *S.E.C. v. Autocorp Equities, Inc.,* 2004 WL 1771608 at \*6 (D.Utah Aug.4, 2004) ("Rule 13b2-2

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 11

Not Reported in F.Supp.2d, 2006 WL 449175 (M.D.Fla.), Fed. Sec. L. Rep. P 93,731
**(Cite as: Not Reported in F.Supp.2d)**

... imposes a duty on corporate officers to clarify previous statements that are misleading in the absence of some material fact.").

The SEC has specifically alleged that: (1) Shinder withheld facts from Bio One's accountants; [FN26] (2) Shinder remained silent during a conference call with Bio One's accountant during which call Dauplaise made material misrepresentations to the accountant; [FN27] and, (3) as a result, the Form 8-K contained the misleading statement that Bio One was delinquent in its obligation to the Nesrallahs, rather than stating that Bio One had defaulted. Therefore the SEC has provided sufficient allegations to state a claim against Shinder for violating Rule 13b2-2.[FN28]

> FN26. Although Shinder only served as a director of Bio One until November of 2004, the SEC alleges that he remained as the de facto CFO of Bio One throughout the time period relevant to this matter, including the time period when the Form 8-K was prepared and filed.

> FN27. Dauplaise's actions in this regard are sufficient to establish a primary violation of Rule 13b2-2. *See S.E.C. v. Autocorp Equities, Inc.,* 2004 WL 1771608 at *6 (D.Utah Aug.4, 2004) (once defendant learned that certificates of deposit were fake but failed to inform accountants, he violated Rule 13b2-2); *S.E.C. v. Benson,* 657 F.Supp. 1122, 1132 (S.D.N.Y.1987) (defendant violated Rule 13b2-2 when he made numerous false and misleading statements and omissions of fact to company's auditor in connection with audit of company's financial statements filed as part of company's annual reports on Form 10-K).

> FN28. In the alternative, the SEC has, at a minimum, stated a claim against Shinder for aiding and abetting a violation of Rule 13b2-2.

E. Count Five-Aiding and Abetting the Failure to

Maintain Internal Controls (Section 13(b)(2)(B))

**\*9** Section 13(b)(2) addresses, in part, the internal accounting controls element of a company's control system, which is a system
specifically designed to provide reasonable, cost-effective safeguards against the unauthorized use or disposition of company assets and reasonable assurances that financial records and accounts are sufficiently reliable for purposes of external reporting.

*World-Wide Coin,* 567 F.Supp. at 750; *see also* 15 U.S.C. § 78m(b)(2). [FN29] This section is designed to "give statutory content to an aspect of management stewardship responsibility, that of providing shareholders with reasonable assurances that the business is adequately controlled." *Id.*

> FN29. These internal accounting controls may be distinguished from a company's actual accounting system as follows:
> Accounting systems process transactions and recognize, calculate, classify, post, summarize, and report transactions. Internal controls safeguard assets and assure the reliability of financial records, one of their main jobs being to prevent and detect errors and irregularities that arise in the accounting systems of the company. Internal accounting controls are basic indicators of the reliability of the financial statements and the accounting system and records from which financial statements are prepared.
> *World-Wide Coin,* 567 F.Supp. at 750.

The SEC alleges that Bio One failed to devise or maintain the required system of internal accounting controls, and that Shinder aided and abetted that violation. There are no allegations linking Shinder to this violation. Indeed, Shinder is not even mentioned in the background section of the Complaint specifically addressing this violation. Therefore the SEC has failed to state a claim against Shinder for a violation of Section 13(b)(2)(B).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                      Page 12

Not Reported in F.Supp.2d, 2006 WL 449175 (M.D.Fla.), Fed. Sec. L. Rep. P 93,731
**(Cite as: Not Reported in F.Supp.2d)**

### IV. Conclusion

For the reasons stated herein, the SEC has made sufficient allegations to state a claim against Shinder for (1) a primary violation of Section 10(b), Rule 10b-5, and Section 17(a) (Count One); (2) aiding and abetting violations of Section 13(a) and Rule 13a-11 in relation to the Form 8-K (Count Two); and (3) violating Rule 13b2-2 (Count Four). Therefore Shinder's Motion to Dismiss will be denied as to those Counts. However the SEC has not made sufficient allegations to support its remaining claims, and thus the following claims will be dismissed: Count Two, to the extent it alleges a violation of Section 13(a) and Rule 13a-13 in relation to the Form 10-Qs; and Counts Three and Five. Accordingly, it is

ORDERED THAT Shinder's Motion to Dismiss (Doc. 20) is GRANTED IN PART and DENIED IN PART. The SEC may file an amended complaint consistent with this Order within twenty (20) days.

DONE and ORDERED.

M.D.Fla.,2006.
S.E.C. v. Dauplaise
Not Reported in F.Supp.2d, 2006 WL 449175 (M.D.Fla.), Fed. Sec. L. Rep. P 93,731

Briefs and Other Related Documents (Back to top)

• 2006 WL 1434916 (Trial Pleading) Defendant Bernard Shinder's Answer and Affirmative Defenses /avoidances to Amended Complaint and Demand for Jury Trial (Apr. 10, 2006) Original Image of this Document (PDF)
• 2006 WL 422308 (Trial Motion, Memorandum and Affidavit) Plaintiff Sec's Opposition to Defendant Bernard Shinder's Motion to Dismiss Complaint for Failure to State A Claim (Jan. 19, 2006) Original Image of this Document (PDF)
• 6:05cv01391 (Docket) (Sep. 22, 2005)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.