| | |
|---|---|
| 1 | DAVID J. SCHINDLER (CA Bar No. 130490) |
| | david.schindler@lw.com |
| 2 | ROBERT W. PERRIN (CA Bar No. 194485) |
| | robert.perrin@lw.com |
| 3 | TERRI L. LILLEY (CA Bar No. 222764) |
| | terri.lilley@lw.com |
| 4 | Attorneys for Defendant Andrew Feldman |
| | LATHAM & WATKINS LLP |
| 5 | 633 W. Fifth Street, Suite 4000 |
| | Los Angeles, CA 90071-2007 |
| 6 | Telephone: (213) 485-1234 |
| | Fax: (213) 891-8763 |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. 3:06-CV-06384-CRB |
| Plaintiff, | **ANDREW FELDMAN'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| v. | |
| ROMULUS S. PEREIRA, et al. | |
| Defendants. | |
| | Date: February 16, 2007 |
| | Time: 10:00 a.m. |
| | Courtroom: 8 |
| | Judge: Honorable Charles R. Breyer |

NOTICE OF MOTION AND MOTION TO DISMISS

TO ALL PARTIES AND THEIR COUNSEL OF RECORD: PLEASE TAKE NOTICE that on February 16, 2007, at 10:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable Charles R. Breyer, United States District Judge, in Courtroom 8, 19th Floor, 450 Golden Gate Avenue, San Francisco, California, Defendant Andrew Feldman will move and hereby does move for an Order dismissing all claims for relief made against Mr. Feldman in Plaintiff Securities and Exchange Commission's Complaint for failure to state a claim upon which relief can be granted.

Mr. Feldman's Motion is made on the ground that the SEC's Complaint does not state a claim against him under Federal Rule of Civil Procedure 12(b)(6), and does not meet the heightened pleading standards established by Federal Rule of Civil Procedure 9(b).

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities filed herewith, the pleadings and records on file in this action, and any other arguments and evidence presented to this Court at or before the hearing on this Motion. By this Motion, Mr. Feldman respectfully requests that this Court dismiss all Claims for Relief against him with prejudice.

Dated: November 19, 2006
      Los Angeles, California

Respectfully submitted,

LATHAM & WATKINS LLP

    s/David J. Schindler
David J. Schindler, Esq.
Robert W. Perrin, Esq.
Terri L. Lilley Esq.
LATHAM & WATKINS
633 West Fifth, Suite 4000
Los Angeles, CA 90071-2007
Telephone: (213) 485-1234
Fax: (213) 891-8763

Attorneys for Andrew Feldman

TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................... 1

II. STATEMENT OF FACTS ........................................................................................ 2

III. ARGUMENT ............................................................................................................. 4

    A. Standard of Review ......................................................................................... 4

    B. Mr. Feldman Is Not Liable For Riverstone's SEC Filings: Not As a Primary Maker of Any False Statement (First Claim) and Not As an Aider and Abettor of Any False Statement (First and Second Claim) ............................................................................................................ 5

        1. Mr. Feldman Is Not Liable As a Primary Maker of Any False Statement in Riverstone's SEC Filings (First Claim) ...................... 6

        2. Mr. Feldman Is Not Liable As an Aider and Abettor for Alleged Misstatements in Riverstone's SEC Filings (First and Second Claims) ....................................................................................... 7

    C. Mr. Feldman Did Not Create, or Assist in the Creation of, Any False "Books and Records" at Riverstone. ............................................................ 9

    D. Mr. Feldman Never Communicated Directly or Indirectly with Riverstone's Auditors and Cannot Be Liable for "Deceit of Auditor" UNDER Rule 13b2-2 .............................................................................. 11

IV. CONCLUSION ....................................................................................................... 12

# TABLE OF AUTHORITIES

**CASES**

Anixter v. Home-Stake Prod. Co.,
 77 F.3d 1215 (10th Cir. 1996) ................................................................................................ 6

Camp v. Dema,
 948 F.2d 455 (8th Cir. 1991) .................................................................................................. 8

Catholic League for Religious & Civil Rights v. City & County of San Francisco,
 — F. Supp. 2d —, 2006 WL 3462879 (N.D. Cal. Nov. 30, 2006) ......................................... 4

Clegg v. Cult Awareness Network,
 18 F.3d 752 (9th Cir. 1994) .................................................................................................... 4

Conley v. Gibson,
 355 U.S. 41 (1957) .................................................................................................................. 4

Howard v. Everex Systems, Inc.,
 228 F.3d 1057 (9th Cir. 2001) ................................................................................................ 6

Howard v. SEC,
 376 F.3d 1136 (D.C. Cir. 2004) .............................................................................................. 8

In re GlenFed, Inc. Sec. Litig.,
 42 F.3d 1541 (9th Cir. 1994) .................................................................................................. 5

Morgan v. Prudential Group, Inc.,
 81 F.R.D. 418 (S.D.N.Y 1978) ............................................................................................... 8

Ove v. Gwinn,
 264 F.3d 817 (9th Cir. 2001) .................................................................................................. 4

Ponce v. S.E.C.,
 345 F.3d 722 (9th Cir. 2003) .................................................................................................. 8

SEC v. Adoni,
 60 F. Supp. 2d 401 (D.N.J. 1999) ........................................................................................... 6

SEC v. Fehn,
 97 F.3d 1276 (9th Cir. 1996) ............................................................................................. 8, 9

SEC v. Lucent Techs., Inc.,
 363 F. Supp. 2d 708 (D.N.J. 2005) ......................................................................................... 7

SEC v. Rana Research, Inc.,
 8 F.3d 1358 (9th Cir. 1993) .................................................................................................... 6

SEC v. Sandifur,
    No. C05-1631C, 2006 WL 538210 (W.D. Wash. Mar. 2, 2006).................................. passim

SEC v. Steadman,
    967 F.2d 636 (D.C. Cir. 1992) ............................................................................................ 9

SEC v. Yuen,
    221 F.R.D. 631 (C.D. Cal. 2004) ........................................................................................ 7

Semegen v. Weidner,
    780 F.2d 727 (9th Cir. 1985) ............................................................................................... 5

Sprewell v. Golden State Warriors,
    266 F.3d 979 (9th Cir. 2001) ............................................................................................... 4

United States v. Tarallo,
    380 F.3d 1174 (9th Cir. 2004) ............................................................................................. 9

Vess v. Ciba-Geigy Corp.,
    317 F.3d 1097 (9th Cir. 2003) ....................................................................................... 5, 10

Woodward v. Metro Bank of Dallas,
    522 F.2d 84 (5th Cir. 1975) ................................................................................................. 8

Wright v. Ernst & Young LLP,
    152 F.3d 169 (2d Cir. 1998)................................................................................................ 6

**STATUTES**

15 U.S.C. § 78j(b)............................................................................................................. passim

15 U.S.C. § 78m............................................................................................................ 5, 7, 9, 10

REGULATIONS

17 C.F.R. § 240.10b-5............................................................................................................ 6, 7, 9

17 C.F.R. § 240.12b-20............................................................................................................... 9

17 C.F.R. § 240.13a-1.................................................................................................................. 9

17 C.F.R. § 240.13a-13................................................................................................................ 9

17 C.F.R. § 240.13b2-1............................................................................................................. 12

17 C.F.R. § 240.13b2-2............................................................................................................. 13

# SUMMARY OF ARGUMENT AND IMPORTANT CASES
CRB Standing Order No. 5

The SEC's Complaint contains six claims for relief, five of which are pled against Andrew Feldman. Those claims against Mr. Feldman should be dismissed pursuant to Rule 12(b)(6) and Rule 9(b) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted, and for failure to plead fraud with the necessary particularity:

1. The SEC's first claim, which alleges that Mr. Feldman violated and/or aided and abetted violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), should be dismissed because the SEC fails to plead any false statement by Mr. Feldman, and additionally fails to plead any facts suggesting that Mr. Feldman provided "substantial assistance" to Riverstone in preparing the false SEC filings alleged in the Complaint.

2. The SEC's second claim, which alleges that Mr. Feldman aided and abetted Riverstone in violating Exchange Act Sections 13(a) and 13(b), and Rules 12b-20, 13a-1, and 13a-13 thereunder, should be dismissed because the Complaint fails to plead any facts suggesting that Mr. Feldman provided "substantial assistance" in preparing the allegedly false SEC filings, and additionally fails to plead any facts suggesting that Mr. Feldman had knowledge of the alleged falsity.

3. The SEC's third claim that Mr. Feldman falsified, or caused to be falsified, Riverstone's books and records in contravention of Exchange Act Section 13(b)(5) and Rule 13b2-1 should be dismissed because the SEC fails to identify any false books or records prepared by Mr. Feldman.

4. The SEC's fourth claim that Mr. Feldman aided and abetted Riverstone's alleged failure to maintain accurate books and records, as required by Exchange Act Section 13(b)(2)(A), should be dismissed because the Complaint fails to plead any facts suggesting that Mr. Feldman provided "substantial assistance" in the creation of any false books or records, or supporting an inference that Mr. Feldman had knowledge that any such records were false.

5. The SEC's sixth claim alleging that Mr. Feldman violated Exchange Act Rule 13b2-2, which prohibits making a material misstatement or omission to a company's

auditors, should be dismissed because the SEC fails to allege Mr. Feldman ever made any statement, directly or indirectly, to Riverstone's auditors, much less that Mr. Feldman made any "false statement" or misleading omission.

Important Cases:

SEC v. Sandifur, No. C05-1631C, 2006 WL 538210 (W.D. Wash. Mar. 2, 2006).

SEC v. Lucent Techs., Inc., No. Civ. 04-2315(WHW), 2005 WL 1206841 (D.N.J. May 20, 2005).

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Securities and Exchange Commission's ("SEC's") Complaint against Andrew Feldman for violation of the federal securities laws fails for the simple reason that the Complaint does not and cannot identify any false statement or misrepresentation made by Mr. Feldman to anyone at any point in time.

The sum and substance of the SEC's Complaint against Mr. Feldman is that while he was employed at Riverstone Networks, Inc. ("Riverstone" or the "Company"), Mr. Feldman participated in the negotiation of two sales transactions at the direction of Riverstone senior management. The SEC alleges that Riverstone's senior management later improperly recorded the revenue from those two transactions in Riverstone's financial statements for the second and third quarters of the Company's fiscal year 2002. Purely on the basis of Mr. Feldman's role in negotiating the two sales transactions, the SEC asserts that he may be charged under Section 10(b) of the Securities Exchange Act of 1934 (and related regulations) with responsibility for alleged misrepresentations contained in Riverstone's SEC filings and the Company "books and records," as well as for allegedly "deceiving" Riverstone's outside auditors.

The SEC's claims against Mr. Feldman fail as a matter of law because the SEC cannot and does not allege that Mr. Feldman had any role in creating or disseminating any of the allegedly false statements that are the subject of the Complaint. The Complaint does not and cannot plead that Mr. Feldman signed, drafted, reviewed, or otherwise participated in any way in the preparation of Riverstone's SEC filings, including in particular the Forms 10-Q for the second and third quarters of 2002 which the SEC claims included revenue from the transactions Mr. Feldman had negotiated. Similarly, the Complaint does not and cannot plead with the requisite particularity any facts suggesting that Mr. Feldman – as Riverstone's Vice President of Marketing – had any responsibility for or knowledge of Riverstone's accounting, the Company's financial statements, or the Company's internal financial controls. Nor does the Complaint identify any "false books and records" created by Mr. Feldman, or allege facts suggesting that he provided "substantial assistance" to anyone else at Riverstone in creating such records. To the

contrary, the SEC admits that Mr. Feldman <u>truthfully disclosed</u> the terms of both transactions he had negotiated to Riverstone's Chief Executive Officer, Chief Financial Officer, and Vice President of Finance, (<u>i.e.</u>, the three officers at Riverstone in charge of the Company's accounting and internal controls). Finally, the Complaint does not and cannot allege that Mr. Feldman ever communicated directly or indirectly with Riverstone's outside auditors, much less plead any particularized facts that suggest that he somehow deceived them.

Because the SEC does not and cannot plead any facts linking Mr. Feldman to the allegedly false statements at issue in each of the claims for relief pled in the Complaint, the SEC's Complaint against Mr. Feldman should be dismissed in its entirety under Rule 12(b)(6) and Rule 9(b) of the Federal Rules of Civil Procedure.

## II. STATEMENT OF FACTS[1]

Riverstone was a manufacturer of internet routers. It completed its initial public offering on February 22, 2001, and on August 6, 2001, Riverstone's former parent-company, Cabletron Systems, Inc. ("Cabletron"), distributed all of its shares of Riverstone common stock to Cabletron stockholders. (Compl. ¶¶ 9–10.) Riverstone was headed by Defendant Romulus Pereira, who was the Company's President and Chief Executive Officer. (<u>Id.</u> ¶ 1.) Riverstone's accounting was overseen by Defendant Robert Stanton, who was the Company's Chief Financial Officer, and Defendant William McFarland, the Company's Vice President of Finance. (<u>Id.</u>) Defendant John Kern, Executive Vice President of Worldwide Sales, and Defendant Lori Cornmesser, Director of Sales Operations, led Riverstone's sales department. (<u>Id.</u> ¶¶ 1, 23.) Riverstone's fiscal year 2002 – its first year as a public company – closed on March 2, 2002. (<u>Id.</u> ¶ 36.)

While the SEC Complaint alleges broadly that Mr. Feldman, along with the other defendants, was complicit in causing the company to recognize in excess of $29 million in false revenue, it alleges that Mr. Feldman was involved in only two transactions, specifically including

---

[1] The Statement of Facts is derived from the allegations in the Complaint, which Mr. Feldman treats as true only for purposes of this Motion to Dismiss.

sales to World Wide Technology, Inc. and Vnetek Communications, Inc., which sales added together amounted to only $4.8 million in sales. (Compare id. ¶ 29, with id. ¶¶ 38, 59.) There are no allegations linking Mr. Feldman to any of the other transactions mentioned in the Complaint, including the Technica transaction, the TM Telecom transaction, and the list of 13 transactions enumerated in paragraph 91. (Id. ¶¶ 65–91.)

### A. World Wide Technology, Inc.

The SEC alleges that in August 2001, Mr. Feldman negotiated a transaction by which World Wide Technology, Inc. ("WWT") placed an order to purchase $2.8 million of Riverstone products. (Id. ¶ 38.) In negotiating that transaction, WWT requested – and Mr. Feldman agreed – that WWT be permitted to defer payment until it sold the Riverstone equipment to end-user customers, and that it have full exchange rights. (Id. ¶ 39.) The Complaint alleges that when WWT sent Riverstone a purchase order listing these non-standard terms, Mr. Feldman requested that the non-standard terms be put in a supplemental agreement, rather than on the form purchase order. (Id. ¶ 41.) The SEC acknowledges that Mr. Feldman did not lie to the customer (id. ¶ 38, 39, 41); that he negotiated and agreed to the terms of the deal based on instructions of Riverstone's senior management (id. ¶ 40); that he fully disclosed the agreed-upon terms to Riverstone's senior management (id. ¶¶ 40, 46); and that he subsequently confirmed the terms of the transaction to Riverstone's Director of Credit and Collections. (Id. ¶¶ 45–46)

The SEC's Complaint alleges that, in spite of the details regarding the terms of the transaction that Mr. Feldman had provided, Defendants Pereira and Stanton nonetheless later approved and issued Riverstone's quarterly financial statements in its 10-Q including "all the revenues recorded from the WWT transaction." (Id. ¶¶ 48–49.) The SEC further alleges that Defendants Pereira, McFarland, and Stanton took no action to correct Riverstone's allegedly improper accounting for the transaction, and also subsequently signed off on representation letters to Riverstone's auditors asserting "all of Riverstone's sales transactions were final, there existed no side agreements involving return rights, and that revenues were reserved to the extent

3

significant future obligations exist." (Id. ¶ 52.)

### B.     Vnetek Communications, Inc.

The second transaction which the SEC alleges Mr. Feldman negotiated was with Vnetek Communications, Inc. ("Vnetek") in November 2001. (Id. ¶ 60.) The SEC alleges that Vnetek issued a purchase order for $2.0 million of Riverstone products, and that Mr. Feldman concurrently entered into a separate agreement affording return rights and sell-through payment terms to Vnetek. (Id. ¶¶ 59–60.) The SEC states that $1.5 million in revenues from the sale was later improperly recorded in Riverstone's 10-Q for the third quarter of 2002. (Id. ¶ 63.) Once again, the Complaint acknowledges that the terms of the transaction were fully and expressly disclosed by Mr. Feldman to, and approved by, Riverstone senior management, including Pereira, Stanton, and McFarland. (Id. ¶ 62.)

## III.     ARGUMENT

### A.     Standard of Review

A court should dismiss a claim under Rule 12(b)(6) where from the face of the complaint, "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45–46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). Although the court should accept all material allegations in the complaint as true, conclusory allegations or unwarranted inferences of fact proposed by the plaintiff may not defeat a motion to dismiss. Ove v. Gwinn, 264 F.3d 817, 821 (9th Cir. 2001). A court need not construe allegations in favor of the plaintiff if that construction would be unreasonable. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Clegg v. Cult Awareness Network, 18 F.3d 752, 754–55 (9th Cir. 1994); League for Religious & Civil Rights v. City & County of San Francisco, — F. Supp. 2d —, —, 2006 WL 3462879, at *3 (N.D. Cal. Nov. 30, 2006).

Under Federal Rule of Civil Procedure 9(b), the circumstances constituting an alleged fraud must be pled with particularity. Allegations of fraud must be "specific enough to

4

give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985). The requirements of Rule 9(b) are satisfied only when the complaint specifically alleges the who, what, where, when, and how of the purported fraud. In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994).

Moreover, Rule 9(b) applies both to claims in which fraud is an essential element and to claims that are grounded in allegations of fraudulent conduct. Vess v. Ciba-Geigy Corp., 317 F.3d 1097, 1103–04 (9th Cir. 2003). As all of the claims alleged against Mr. Feldman expressly sound in fraud (e.g., "Mr. Feldman . . . engaged in a scheme that defrauded investors by making materially false and misleading statements regarding the net revenues of Riverstone"),[2] all of the claims must meet the pleading requirements contained in Rule 9(b). Vess, 317 F.3d at 1103–04; SEC v. Sandifur, No. C05-1631C, 2006 WL 538210, at *3 (W.D. Wash. Mar. 2, 2006).

### B. Mr. Feldman Cannot Be Liable For Alleged False Statements Contained in Riverstone's SEC Filings.

The SEC seeks to hold Mr. Feldman liable for Riverstone's SEC filings on two separate theories: (1) as a primary violator for "making" false statements in the SEC filings under Exchange Act Section 10(b); and (2) as an aider and abettor of Riverstone's false SEC filings under Section 10(b) (First Claim) and Exchange Act Section 13 (Second Claim). The SEC fails to plead any facts to support either theory, let alone the particularized facts required by Rule 9(b).

---

[2] Compl. ¶ 1.

1. **Mr. Feldman Cannot Be Liable As a Primary Violator of Section 10(b) For Alleged False Statements in Riverstone's SEC Filings (First Claim).**

In order to state a claim under Section 10(b), 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, the SEC must allege that Mr. Feldman actually made one or more of the alleged material false statements at issue; that he did so with the knowledge that the statements would reach potential investors;[3] that he acted with scienter; and that he utilized interstate commerce. SEC v. Rana Research, Inc., 8 F.3d 1358, 1364 (9th Cir. 1993); Wright v. Ernst & Young LLP, 152 F.3d 169, 174–75 (2d Cir. 1998); Anixter v. Home-Stake Prod. Co., 77 F.3d 1215, 1226 (10th Cir. 1996). At a minimum, in order to allege his primary liability, the SEC must allege facts showing how Mr. Feldman "substantially participate[d]" or was "intricate[ly] involve[d]" in the preparation of the false statements at issue. Howard v. Everex Systems, Inc., 228 F.3d 1057, 1061 n.5 (9th Cir. 2001). The SEC's Complaint fails to identify any misstatement by Mr. Feldman.

The only alleged misstatements identified in the Complaint that are potentially actionable under Section 10(b) are Riverstone's SEC filings containing the Company's financial statements – specifically its Forms 10-Q for the second and third quarters of 2002 and the first quarter of 2003, and its 2002 Form 10-K. Of these four filings, the SEC fails to allege that revenues from the two transactions negotiated by Mr. Feldman were included in either the 2002 10-K or the first quarter 2003 10-Q. Thus, as a preliminary matter, the only two SEC filings that could theoretically be tied to Mr. Feldman are the Company's Forms 10-Q for the second and third quarters of 2002.

---

[3] The SEC failed to allege that any statement by Mr. Feldman was publicly disseminated. The Complaint, thereby, fails to allege that communications involving Mr. Feldman were "in connection with" the purchase or sale of any security as required by the statute. See SEC v. Adoni, 60 F. Supp. 2d 401 (D.N.J. 1999) (dismissing Section 10(b) claim where SEC could not plead facts showing dissemination of financial documents containing fraudulent information). As the Complaint acknowledges, Mr. Feldman was never involved in preparing Riverstone's SEC filings and had no communication with Riverstone's auditors. The only communications identified in the Complaint that involved Mr. Feldman were both truthful and non-public, occurring strictly between Mr. Feldman and Riverstone customers and between Mr. Feldman and Riverstone's senior management.

1    In any event, however, the SEC fails to allege that Mr. Feldman prepared, drafted
2    signed, or otherwise had any role in the preparation, drafting, or signing of any portion of these
3    two 10-Qs, or any other Riverstone SEC filing. As a matter of black-letter law, the SEC thus
4    fails to allege that Mr. Feldman "substantially participated" in making the allegedly false
5    statements at issue in the Complaint.[4] See Howard, id.; Sandifur, 2006 WL 538210, at *11–13;
6    SEC v. Lucent Techs., Inc., 363 F. Supp. 2d 708 (D.N.J. 2005) (rejecting Section 10(b) claim
7    against CFO of a business unit, where she was alleged to have drafted letters to the company's
8    chief accountant falsely stating that there were no side agreements because she did not "make" a
9    misrepresentation in the Company's financial statements). Accordingly, Mr. Feldman cannot be
10   directly liable for the Company's alleged misstatements under Section 10(b), and to the extent
11   the SEC's First Claim for Relief alleges that Mr. Feldman was a primary violator of Section
12   10(b), it should be dismissed.

    2.   Mr. Feldman Cannot Be Liable As an Aider and Abettor for Alleged
         Misstatements in Riverstone's SEC Filings (First and Second Claims).

15   In both its First and Second Claims for Relief, the SEC further contends that Mr.
16   Feldman, along with the other defendants, aided and abetted Riverstone in making false SEC
17   filings in violation of Exchange Act Sections 10(b) and 13(a)[5] and Exchange Act Rules 10b-5,
18   12b-20, 13a-1 and 13a-13.[6]

---

[4]   Nor can Mr. Feldman be linked to any allegedly false statement by "group pleading." SEC v. Yuen, 221 F.R.D. 631, 635–37 (C.D. Cal. 2004). Mr. Feldman's name does appear sometimes randomly in the Complaint "wherever the SEC can place [him] without appearing too obviously haphazard." Id. at 634; see, e.g., Compl. ¶¶ 35, 66, 95. It is not entirely clear that the SEC is attempting to rely on that rejected doctrine because it has made no allegations that Mr. Feldman was involved in the day-to-day control of the company or in the preparation of Riverstone's financial statements. Yuen, 221 F.R.D. at 635. To the extent the SEC does intend to suggest that its recitation of Mr. Feldman's name along with the other defendants as having "made or caused" violations of Section 10(b) or Rule 10b-5, those allegations cannot support a claim for securities fraud without the allegation of specific facts required by Rule 9(b). Id.

[5]   15 U.S.C. §§ 78j(b), 78m(a).

[6]   17 C.F.R. §§ 240.10b-5, 240.12b-20, 240.13a-1, 240.13a-13.

To state an aiding and abetting claim, the SEC must plead: (1) a securities law violation by the primary actor; (2) "knowledge" of the violation by the aider and abettor; and (3) "substantial assistance" by the aider and abettor in the primary violator's actions. Ponce v. S.E.C., 345 F.3d 722, 737 (9th Cir. 2003) (defining requirements of aiding and abetting in Section 13 actions); SEC v. Fehn, 97 F.3d 1276, 1288 (9th Cir. 1996) (defining requirements of aiding and abetting in Section 10(b) actions); Camp v. Dema, 948 F.2d 455 (8th Cir. 1991). "Substantial assistance" is defined as conduct that "was a substantial factor in causing the resulting violation" of securities laws. Camp, 948 F.2d at 460. Typically, substantial assistance requires actual participation in the preparation of the false financial statements filed with the SEC. Fehn, 97 F.3d at 1293. Mere participation in a transaction which is later improperly accounted for is insufficient to support a claim, even if the transaction is "unusual," and even if the transaction was restructured for accounting reasons. Sandifur, 2006 WL 538210, at *12.

Similar to the defendants dismissed in Sandifur, Mr. Feldman is alleged only to have had a role in negotiating two transactions that are alleged ultimately to have been improperly accounted for by Riverstone management. As discussed above, the SEC does not – and cannot – plead facts suggesting that Mr. Feldman had any role in accounting for these transactions, in preparing the Company's financial statements and SEC filings, or in assisting those who did. There are thus no allegations in the Complaint establishing the "substantial assistance" required by law to state an aiding and abetting claim. See Morgan v. Prudential Group, Inc., 81 F.R.D. 418, 425 (S.D.N.Y 1978).

Moreover, the requirement of "knowledge" in an aiding and abetting claim requires the aider and abettor to have actual "knowledge of wrongdoing." Howard v. SEC, 376 F.3d 1136, 1142 (D.C. Cir. 2004) ("Awareness of wrongdoing requires knowledge of wrongdoing"); Sandifur, 2006 WL 538210, at *12–13. Although some Circuits have determined that extreme, or severe, recklessness may also support an aiding and abetting claim, Howard, 376 F.3d. at 1143; Woodward v. Metro Bank of Dallas, 522 F.2d 84, 97 (5th Cir. 1975), the Ninth Circuit appears to require that an aider and abettor have actual knowledge of or actual intent to aid in another's commission of a fraud. United States v. Tarallo, 380 F.3d 1174, 1184 (9th Cir.

2004); Fehn, 97 F.3d at 1288; Sandifur, 2006 WL 538210, at *11. At the very least, in order to be an aider and abettor, the accused individual must be "generally aware" that wrongdoing is afoot. SEC v. Steadman, 967 F.2d 636, 647 (D.C. Cir. 1992) (holding that corporate chairman, president, and CEO "may not be held liable for aiding and abetting" securities law violations absent a showing that he was aware of the occurrence of such wrongdoing). As discussed above, aside from the SEC's conclusory assertion that Mr. Feldman allegedly "knew" how Riverstone accounted for the WWT or Vnetek transactions, there is nothing in the Complaint to suggest that Mr. Feldman knew that the financial statements contained in Riverstone's SEC filings (which he had no role in preparing) were false.

As the SEC Complaint fails for multiple reasons to plead facts sufficient to state a claim for "aiding and abetting" against Mr. Feldman in connection with Riverstone's SEC filings, both its First and Second Claims for Relief should be dismissed.

### C. Mr. Feldman Did Not Create, or Assist in the Creation of, Any False "Books and Records" at Riverstone.

The SEC's Third and Fourth Claims for Relief respectively allege that Mr. Feldman created "false books and records," and aided and abetted Riverstone's creation of such allegedly false records. For reasons similar to those discussed above, both claims should be dismissed, as the SEC fails to identify any "false books and records" that Mr. Feldman either created or "substantially assisted" others in creating.

The Third Claim alleges that Mr. Feldman violated Section 13(b)(5) of the Exchange Act, which states that "[n]o person shall knowingly circumvent or knowingly fail to implement a system of internal accounting controls or knowingly falsify any book, record, or account" subject to Exchange Act Section 13(b)(2).[7] The Fourth Claim alleges that Mr. Feldman aided and abetted Riverstone's violation of Exchange Act Section 13(b)(2)(A), which requires

---

[7] 15 U.S.C. § 78m(b)(2). Similarly, SEC Rule 13b2-1 provides "[n]o person shall directly or indirectly, falsify or cause to be falsified, any book, record or account subject to section 13(b)(2)(A) of the Securities Exchange Act." 17 C.F.R. § 240.13b2-1.

9

A FELDMAN'S NOTICE AND MOTION TO DISMISS

issuers of registered securities to "make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the issuer."[8] Because both the Third and Fourth Claims are "based on the same course of allegedly fraudulent conduct" as the SEC's other claims, both claims sound in fraud and are subject to the pleading strictures of Rule 9(b). <u>Sandifur</u>, 2006 WL 538210, at *3; <u>see also</u> <u>Vess</u>, 317 F.3d 1097, 1103–04.

The SEC's claims that Mr. Feldman falsified (or assisted in falsifying) Riverstone's books and records appear to be premised on Mr. Feldman's alleged involvement in the WWT and Vnetek transactions.[9] In each transaction, the SEC contends that Mr. Feldman negotiated two documents: a standard form purchase order, and a supplemental or "side" agreement containing non-standard terms. While the SEC suggests that Mr. Feldman and other defendants "encouraged others to remove or misstate nonstandard terms on purchase orders, resulting in inaccurate and incomplete sales records" (Compl. ¶ 95.), the SEC fails to plead facts suggesting that the documents negotiated by Mr. Feldman were in any way "false." Rather, the Complaint makes clear that the purchase order and supplemental agreement together were the contracts by which each of the sales occurred. These contracts accurately reflected the terms of sale, were negotiated at the direction of, and with the approval of, Riverstone's senior management, and were agreed to by Riverstone's customers. (<u>Id</u>. at ¶¶ 40–41, 60, 62.) The fact that Riverstone's management may have improperly accounted for the transactions by later disregarding the actual terms negotiated and disclosed to them by Mr. Feldman does not render the underlying documents "false."[10]

---

[8] 15 U.S.C. § 78m(b)(2)(A)

[9] To the extent that the SEC is suggesting that Mr. Feldman participated in alleged falsification of Riverstone's financial statements and/or related SEC filings, as discussed in Part III.B. above, the Complaint fails entirely to plead any facts linking Mr. Feldman to the preparation of those financial statements and public filings.

[10] While both claims thus fail because the SEC cannot point to any "false book or record," the SEC's aiding and abetting claim fails for the additional reason that the Complaint does not allege any facts suggesting that Mr. Feldman substantially assisted others in the creation of false books and records. Additionally, both claims fail because the Complaint fails to plead facts

1    The SEC's Third and Fourth Claims against Mr. Feldman accordingly fail at the

2    most basic level to state a claim upon which relief may be granted, and should now be dismissed.

### D. Mr. Feldman Never Communicated Directly or Indirectly with Riverstone's Auditors and Cannot Be Liable for "Deceit of Accountants" Under Rule 13b2-2.

The SEC's final claim pled against Mr. Feldman charges that he engaged in "deceit of accountants" in violation of Rule 13b2-2. Rule 13b2-2 states, in pertinent part:

> (a) No director or officer of an issuer shall, directly or indirectly:
>
> (1) Make or cause to be made a materially false or misleading statement to an accountant in connection with; or
>
> (2) Omit to state, or cause another person to omit to state, any material fact necessary in order to make statements made, in light of the circumstances under which such statements were made, not misleading, to an accountant in connection with:
>
> (i) Any audit, review or examination of the financial statements of the issuer required to be made pursuant to this subpart; or
>
> (ii) The preparation or filing of any document or report required to be filed with the Commission pursuant to this subpart or otherwise.

17 C.F.R. § 240.13b2-2.

Similar to the SEC's other claims, this claim against Mr. Feldman necessarily fails because the SEC cannot and does not identify a single statement of any kind – much less a false or deceptive one – ever made by Mr. Feldman to Riverstone's auditors. Indeed, the only statements made to the auditors that are identified in the Complaint are the "representation letters" signed and supplied by Pereira, Stanton, and McFarland to the auditors on September 20, 2001, May 28 and 30, 2002. (Compl. ¶¶ 52–54, 78–79.) The SEC does not and cannot allege, however, that these representation letters were drafted, reviewed, or signed by Mr. Feldman.

As for the sales contracts reflecting the terms of the WWT and Vnetek transactions, the Complaint contains no allegation that Mr. Feldman ever attempted to keep these

---

creating an inference that Mr. Feldman had the requisite "knowledge." See discussion at Part III.B.2. above.

11

documents from Riverstone's auditors. To the contrary, the Complaint establishes that Mr. Feldman fully disclosed the terms of the sales arrangements to senior management (and others), and in any event, as described above, the documents themselves were not false or misleading. To the extent the Complaint suggests that the terms contained in the supplemental agreements to the WWT or Vnetek transactions (or the agreements themselves) were not provided to Riverstone's auditors, the Complaint itself makes clear that Mr. Feldman had no part in the deception. Instead, the Complaint alleges that Pereira, Stanton and McFarland failed to tell the auditors what Mr. Feldman had told them, and further alleges that Cornmesser "removed side agreements from customer files at the direction of Kern." (Compl. ¶ 96.) The SEC does not and cannot point to a single instance where Mr. Feldman falsely responded (or failed to respond) to a request from Riverstone's auditors, or otherwise directed anyone else to do so.

The SEC, thus, fails to plead any of the elements of its "deceit of accountants" claim against Mr. Feldman, much less with the particularity required under Rule 9(b). Accordingly, the SEC's Sixth Claim for Relief against Mr. Feldman should be dismissed.

## IV. CONCLUSION

For all of the foregoing reasons, the Court should grant this Motion to Dismiss all claims against Mr. Feldman. Further, because the defects in the SEC's Complaint are fundamental and cannot be remedied by amendment, this dismissal should be with prejudice.

Dated: November 19, 2006
      Los Angeles, California

Respectfully submitted,

LATHAM & WATKINS LLP

    s/David J. Schindler
David J. Schindler, Esq.
Robert W. Perrin, Esq.
Terri L. Lilley Esq.
LATHAM & WATKINS
633 West Fifth, Suite 4000
Los Angeles, CA 90071-2007
Telephone: (213) 485-1234
Fax: (213) 891-8763

Attorneys for Andrew Feldman