1  DAVID PRIEBE (State Bar No. 148679)
   david.priebe@dlapiper.com
2  DAVID BANIE (State Bar No. 217924)
   david.banie@dlapiper.com
3  **DLA PIPER US LLP**
   2000 University Avenue
4  East Palo Alto, CA 94303-2215
   Tel: 650.833.2000
5  Fax: 650.833.2001

6  NICOLAS MORGAN (State Bar No. 166441)
   nicolas.morgan@dlapiper.com
7  **DLA PIPER US LLP**
   1999 Avenue of the Stars, Suite 400
8  Los Angeles, CA 90067-6022
   Tel: 310.595.3000
9  Fax: 310.595.3300

10  Attorneys for Defendant WILLIAM F. McFARLAND

11                     UNITED STATES DISTRICT COURT

12                    NORTHERN DISTRICT OF CALIFORNIA

13

14  SECURITIES AND EXCHANGE           CASE NO. C 06-6384 CRB
    COMMISSION,
15                                    **WILLIAM McFARLAND'S PARTIAL
         *Plaintiff*,                 OPPOSITION TO PLAINTIFF'S MOTION
16                                    TO STRIKE AFFIRMATIVE DEFENSES**
         v.
17                                    Date: February 16, 2007
    ROMULUS S. PEREIRA, ROBERT B.     Time: 10:00 a.m.
18  STANTON, L. JOHN KERN, ANDREW     Courtroom: 8
    D. FELDMAN, WILLIAM F.            Judge: Hon. Charles R. Breyer
19  McFARLAND, LORI H. CORNMESSER,

20       *Defendants*.

# **TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................................... 1

II.  SUMMARY OF ARGUMENT ..................................................................................... 2

III. STATEMENT OF FACTS ............................................................................................. 3

IV.  STATEMENT OF THE ISSUES ................................................................................... 4

V.   ARGUMENT ................................................................................................................. 5

    A.  Plaintiff Faces A Heavy Burden In This Motion ............................................... 5

    B.  Plaintiff Does Not Meet Its Burden To Show That Mr. McFarland's Reliance On Others Defense Should Be Stricken ..................................................... 5

    C.  Plaintiff Does Not Meet Its Burden To Show That Mr. McFarland's Conduct Of Others Defense Should Be Stricken ..................................................... 8

VI.  CONCLUSION ............................................................................................................ 10

# TABLE OF AUTHORITIES

## CASES

*Colaprico v. Sun Microsystems, Inc.*,
 758 F. Supp. 1335 (N.D. Cal. 1991) .................................................................................... 5

*Dellastatious v. Williams*,
 242 F.3d 191 (4th Cir. 2001) ......................................................................................... 2, 5, 6

*DirecTV, Inc. v. Wiekel*,
 No. 03-5300, 2005 U.S. Dist. LEXIS 9902 (D. N.J. May 25, 2005) ................................... 5

*In re Caremark Int'l, Inc. Derivative Litig.*,
 698 A.2d 959 (Del. 1996) .............................................................................................. 2, 5, 6

*Lazar v. Trans Union LLC*,
 195 F.R.D. 665 (C.D. Cal. 2000) .......................................................................................... 5

*Securities & Exch. Comm'n v. Autocorp Equities*,
 292 F. Supp. 2d 1310 (D. Utah 2003) ............................................................................... 2, 6

*Securities & Exch. Comm'n v. Blavin*,
 760 F.2d 706 (6th Cir. 1985) ................................................................................................ 8

*Securities & Exch. Comm'n v. Coates,*
 137 F. Supp. 2d 413 (S.D.N.Y. 2001) .................................................................................. 9

*Securities & Exch. Comm'n v. Fehn*,
 97 F.3d 1276 (9th Cir. 1996) ................................................................................................ 8

*Securities & Exch. Comm'n v. Goldfield Deep Mines Co.*,
 758 F.2d 459 (9th Cir. 1985) ................................................................................................ 8

*Securities & Exch. Comm'n v. Keating*,
 No. CV 91-6785 (SVW), 1992 WL 207918 (C.D. Cal. July 23, 1992) .............................. 9

*Securities & Exch. Comm'n v. Murphy*,
 626 F.2d 633 (9th Cir. 1980) ................................................................................................ 8

*Securities & Exch. Comm'n v. Nothern*,
 400 F. Supp. 2d 362 (D. Mass. 2005) .................................................................................. 5

*Securities & Exch. Comm'n v. Rana Research*,
 Civ. No. 89-1865 AAH(TX), 1990 WL 267365, (C.D. Cal. Oct. 2, 1990) ......................... 9

*Securities & Exch. Comm'n v. Sands*,
 902 F. Supp. 1149 (C.D. Cal. 1995) .................................................................................. 2, 5

*Securities & Exch. Comm'n v. Savoy Indus., Inc.*,
    665 F.2d 1310 (D.C. Cir. 1981) .................................................................................. 8

*Securities & Exch. Comm'n v. Thorn*,
    No. 2:01-CV-290, 2002 WL 31412440 (S.D. Ohio Sept. 30, 2002) ................................ 9

*Securities & Exch. Comm'n v. Todd*,
    No. 03 CV 2230 BEN (WMC), 2006 WL 156489 (S.D. Cal. May 30, 2006) ............... 2, 6

*Securities & Exch. Comm'n v. Wozniak*,
    No. 92 C 4691, 1993 WL 34702 (N.D. Ill. Feb. 8, 1993) ................................................. 9

*United States v. Kim*,
    184 F. Supp. 2d 1006 (N.D. Cal. 2002) ........................................................................ 6

**STATUTES**

Securities Exchange Act § 10(b), 15 U.S.C. § 78j(b) ............................................................. 3, 6

Securities Exchange Act § 13(a), 15 U.S.C. § 78m(a) ............................................................... 3

Securities Exchange Act § 13(b)(2)(A), 15 U.S.C. § 78m(b)(2)(A) ............................................ 3

Securities Exchange Act § 13(b)(2)(B)(ii), 15 U.S.C. § 78m(b)(2)(B)(ii) ................................... 3

Securities Exchange Act § 13(b)(5), 15 U.S.C. § 78m(b)(5) ...................................................... 3

Securities Exchange Act § 21(d)(3)(B)(iii), 15 U.S.C. § 78u(d)(3)(B)(iii) .............................. 2, 9

Securities Exchange Act § 21(g), 15 U.S.C. § 78u(g) ................................................................ 9

**RULES**

Fed. R. Civ. P. 8(c) .................................................................................................................... 9

Fed. R. Civ. P. 12(f) ................................................................................................................... 5

Fed. R. Civ. P. 13(g) .................................................................................................................. 9

Fed. R. Civ. P. 15(a) ................................................................................................................... 2

SEC Rule 10b-5 ...................................................................................................................... 3, 6

SEC Rule 12b-20 ........................................................................................................................ 3

SEC Rule 13a-1 .......................................................................................................................... 3

SEC Rule 13a-13 .................................................................................................................. 3

SEC Rule 13b2-1 ................................................................................................................. 3

**MISCELLANEOUS**

*In the Matter of Cady, Roberts & Co.*, 40 SEC 907, 1961 WL 60638 (1961) ................................ 6

Defendant William F. McFarland respectfully submits this partial opposition to Plaintiff Securities and Exchange Commission's ("SEC") Motion to Strike Affirmative Defenses of Defendants Kern, McFarland, and Cornmesser (the "Motion" or "MTS").

## I.   INTRODUCTION

Mr. McFarland respects the SEC's statutory mission to enforce the federal securities laws, in this instance through civil litigation. Part and parcel of civil litigation is that defendants have a right to defend themselves. Where, as here, the SEC makes the serious claim that someone committed securities fraud and sanctioned inadequate internal controls, and seeks an injunction and civil penalties against that person, it cannot exclude valid legal defenses or relevant discovery. The Motion attempts to do both, and hence should be denied—particularly given the heavy burden movants face in striking affirmative defenses at the pleading stage.

Mr. McFarland respectfully, but vigorously, denies the SEC's claims against him. As part of his defense, Mr. McFarland has pleaded affirmative defenses. The Motion challenges two key defenses: Mr. McFarland reasonably relied on others (the Second Affirmative Defense), and the conduct of parties other than Mr. McFarland caused any alleged harm to investors (the Fourth Affirmative Defense).[1] These are not "patently meritless[2] and frivolous" defenses that unless stricken will require "unnecessary discovery". *See* MTS at 3:17-20. Rather, they are legitimate defenses in the law, and the evidence Mr. McFarland expects to discover in support of them will be relevant (and helpful) to his defense. The SEC does not show the contrary, as its cases concern extraneous matters (such as cross-claims or reliance on counsel for legal advice, neither of which Mr. McFarland has asserted) or fail to recognize that the Complaint seeks civil penalties.

Thus, the portions of the Motion addressed to Mr. McFarland's Second and Fourth Affirmative Defenses should be denied. The SEC also challenges the Tenth Affirmative Defense,

---

[1] The Motion gives less than clear notice of the SEC's apparent intention to strike the Reliance on Others defense, as it occasionally instead references Mr. McFarland's Third Affirmative Defense (Good Faith). Its arguments are addressed to Reliance on Others, there are no arguments directed at Good Faith, and the final page corrects the clerical error by referring to the Second (not Third) defense. *See* MTS at 8:20. Mr. McFarland will assume this is what was intended.

[2] How the "merits" of these affirmative defenses could be considered in a pleading motion, and before discovery has commenced, are mysteries the MTS does not explain.

1  which reserves the right to assert additional affirmative defenses upon the development of further
2  evidence. Mr. McFarland made this statement in order to inform the SEC that he was preserving
3  his right to amend his answer under Fed. R. Civ. P. 15(a). The SEC does not contest Mr.
4  McFarland's right to seek amendment on that basis. *See* MTS at 8:15-17 ("If [defendant] truly
5  discovers any additional affirmative defenses during litigation, he should be required to seek
6  leave to amend his Answer at that time."). Mr. McFarland is satisfied, and hence does not oppose
7  the portion of the Motion addressed to the Tenth Affirmative Defense.

**II.    SUMMARY OF ARGUMENT (Standing Order ¶ 5 (June 30, 2004))**

1.    The movant faces a heavy burden in motions to strike, which cannot be granted if there is any basis on which a defense may be relevant, or any ambiguity on the issues presented in the motion. *Securities & Exch. Comm'n v. Sands*, 902 F. Supp. 1149, 1165 (C.D. Cal. 1995). *See* Section V(A), *infra*.

2.    Mr. McFarland reasonably was allowed to look to and rely on the actions and representations of others in the performance of his job. *Dellastatious v. Williams*, 242 F.3d 191 (4th Cir. 2001); *In re Caremark Int'l, Inc. Derivative Litig.*, 698 A.2d 959 (Del. 1996). Such reliance negates scienter. *Securities & Exch. Comm'n v. Todd*, No. 03 CV 2230 BEN (WMC), 2006 WL 156489 (S.D. Cal. May 30, 2006); *Securities & Exch. Comm'n v. Autocorp Equities*, 292 F. Supp. 2d 1310 (D. Utah 2003). The Complaint shows how this defense is relevant (and favorable) to Mr. McFarland, in its allegations concerning a transaction involving WWT and in its allegations that Riverstone lacked adequate internal controls. *See* Section V(B), *infra*.

3.    That the misconduct of parties other than Mr. McFarland caused some or all of any purported harm to investors is relevant to proximate causation, which the SEC must prove in order to impose third-tier civil penalties against Mr. McFarland. 15 U.S.C. § 78u(d)(3)(B)(iii). It is also a factor the SEC itself has brought into this case, by alleging that Riverstone's shareholders were harmed by persons at Enterasys Networks (the predecessor of Riverstone). Mr. McFarland expects that development of these allegations in discovery will show he ***improved*** internal controls at Riverstone once he joined that company after it had spun off from Enterasys, and thus support his defense. *See* Section V(C), *infra*.

### III.  STATEMENT OF FACTS

This case concerns Riverstone Networks, Inc. The defendants are its former CEO, Romulus S. Pereira; its former CFO, Robert B. Stanton; and four other former employees, including Mr. McFarland. The SEC alleges that defendants engaged in securities fraud by causing Riverstone to report false revenues. Complaint ¶¶ 101-106. Every defendant *except Mr. McFarland* allegedly benefited from the fraud by selling Riverstone stock at prices inflated by the fraud. *Id*. ¶¶ 99-100. The Complaint also asserts claims for violation of other provisions of the Exchange Act.[3] It further alleges that Riverstone lacked an adequate system of internal controls, due in part to Mr. McFarland. *Id.* ¶¶ 92-93. The Complaint requests a permanent injunction and civil penalties against Mr. McFarland. *Id*. Prayer for Relief ¶¶ II & IV.

The claims against Mr. McFarland arise from his performance as a Vice President of Finance of Riverstone. Riverstone was spun off from Enterasys Networks on August 6, 2001. *Id.* ¶ 9. Mr. McFarland is not alleged to have had any connection to Enterasys, and he did not join Riverstone until August 2001, after the spin-off. *Id.* ¶ 22. Enterasys figures prominently in the Complaint. The SEC alleges that on February 1, 2002, Enterasys announced it was the subject of an SEC investigation and was reviewing its sales and revenue recognition process. *Id*. ¶ 10. As a result of Enterasys' disclosure, the SEC continues, Riverstone's stock price dropped by over 50%, representing a decline in shareholder value of nearly $1 billion. *Id.* ¶ 11.

In August 2003, Riverstone announced it had overstated revenues for fiscal year 2002 and the nine months ended November 30, 2002. *Id.* ¶ 12. The Complaint alleges seventeen improperly recognized transactions, and prominently features a transaction involving WWT. *Id*. ¶¶ 38-56. Defendant Andrew Feldman allegedly approached WWT to place an $2.8 million order subject to a side agreement allowing sell-through payment terms. *Id*. ¶¶ 38-39. WWT placed an order on August 28, 2001, and per Mr. Feldman's instruction removed any reference to the sell-

---

[3] *See* Complaint ¶¶ 107-110 (false SEC filings, in violation of Exchange Act §13(a) and SEC Rules 12b-20, 13a-1, and 13a-13); Complaint ¶¶ 111-117 (false books and records, in violation of Exchange Act §§ 13(b)(5) and 13(b)(2)(A) and SEC Rule 13b2-1); Complaint ¶¶ 118-121 (false books and records, in violation of Exchange Act § 13(b)(2)(B)(ii)); Complaint ¶¶ 122-126 (deceit of accountants, in violation of SEC Rule 13b2-2).

1  through payment terms on the purchase order. *Id.* ¶¶ 41, 43. On October 11, 2001, a Riverstone
2  employee, non-party Kathy Alvendia, informed Mr. McFarland about the side agreement. *Id.*
3  ¶ 47. The same day, Ms. Alvendia also informed Mr. McFarland's boss, Mr. Stanton, and Mr.
4  Stanton's boss, Mr. Pereira. *Id.* These gentlemen—the two most senior officers of the
5  company—met with Ms. Alvendia soon thereafter and acknowledged the transaction was a
6  "problem." *Id.* ¶ 48. The Complaint does not allege how the matter was resolved. For example,
7  it does not allege that the side agreement (which the SEC admits was not on the face of the
8  purchase order) was enforceable, enforced, or operative; or whether, following the intervention of
9  senior management, it was amended, repudiated, renegotiated, or otherwise rendered non-
10 operative. The Complaint cites this transaction in alleging that Mr. McFarland signed a
11 representation letter to Riverstone's auditors over seven months later (May 28, 2002), which was
12 false because Mr. McFarland knew of the WWT side agreement. *Id.* ¶¶ 53, 55.

13       Mr. McFarland answered on December 11, 2006. He asserts as his Second Affirmative
14 Defense (Reliance on Others): "McFarland is not liable for Plaintiff's claims because he relied in
15 good faith upon information, opinions, reports and/or statements prepared or presented by one or
16 more officers or employees of Riverstone whom McFarland reasonably believed to be reliable
17 and competent in the matters presented." Answer at 15:12-17. He asserts as his Fourth
18 Affirmative Defense (Conduct of Third Parties): "The claims alleged in the Complaint cannot be
19 maintained, in whole or in part, because the conduct of parties other than McFarland proximately
20 caused the alleged harm, if any, complained of in the complaint." Answer at 15:22-26. These are
21 the affirmative defenses at issue in this Motion.

**IV.   STATEMENT OF THE ISSUES (Civil L.R. 7-4(a)(3))**

1. Does the SEC satisfy its heavy burden of showing that Mr. McFarland's affirmative defense based on reliance on others should be stricken?
2. Does the SEC satisfy its heavy burden of showing that Mr. McFarland's affirmative defense based on the conduct of parties other than Mr. McFarland should be stricken?

## V. ARGUMENT

### A. Plaintiff Faces A Heavy Burden In This Motion

A party may move to strike "any redundant, immaterial, impertinent or scandalous matter" in a pleading. Fed. R. Civ. P. 12(f). Moving parties face a heavy burden in such motions. "To strike an affirmative defense, the moving party must convince the court that there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the defense succeed." *SEC v. Sands*, 902 F. Supp. at 1165. The court views the pleading under attack in the light most favorable to the pleader, *Lazar v. Trans Union LLC*, 195 F.R.D. 665, 669 (C.D. Cal. 2000), and a motion must be denied if there is any ambiguity on the issues presented, or if the defense at issue has any relevance to the case. *SEC v. Sands*, 902 F. Supp. at 1165 ("Even when the defense under attack presents a purely legal question, courts are reluctant to determine disputed or substantial questions of law on a motion to strike.").[4]

For the reasons presented below, the SEC fails to meet its heavy burden to strike the two affirmative defenses in dispute, and hence its Motion should be denied.

### B. Plaintiff Does Not Meet Its Burden To Show That Mr. McFarland's Reliance On Others Defense Should Be Stricken

The SEC moves to strike Mr. McFarland's defense of reliance on others. MTS § III(C). The law recognizes the validity of this defense, and it is essential to Mr. McFarland's response to the allegations and claims in the Complaint.

Mr. McFarland was allowed to rely on the actions and representations of others in the performance of his job at Riverstone—the performance that, according to the SEC, exposes him to liability. *Dellastatious v. Williams*, 242 F.3d at 196, *citing In re Caremark Int'l, Inc. Derivative Litig.*, 698 A.2d 959. The SEC may reply that this is a fiduciary duty principle derived

---

[4] *See also DirecTV, Inc. v. Wiekel*, No. 03-5300, 2005 U.S. Dist. LEXIS 9902, *6 (D. N.J. May 25, 2005) (motion cannot be granted "unless the insufficiency of the defense is clearly apparent from the pleadings.") (internal citation and quotations omitted); *Securities & Exch. Comm'n v. Nothern*, 400 F. Supp. 2d 362, 364 (D. Mass. 2005) ("a motion to strike will not be granted if the insufficiency of the defense is not clearly apparent, or if it raises factual issues that should be determined on a hearing on the merits."); *accord*, *Colaprico v. Sun Microsystems, Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991) (motion should not be granted "unless it is clear that the matter stricken could have no possible bearing on the subject matter of the litigation.").

from corporation law that does not provide a basis for decision in the securities laws. The Fourth Circuit held otherwise in *Dellastatious*, as it cited *Caremark* (a seminal Delaware corporate law case) in granting summary judgment for defendants on securities fraud claims. Moreover, corporate fiduciary duty law has long served as an intellectual foundation for the antifraud provisions of the federal securities laws. The corporate law, fiduciary duty principle that corporate officials cannot obtain personal benefit from information learned via their service to the corporation was the original basis for the prohibition on insider trading. *In the Matter of Cady, Roberts & Co*., 40 SEC 907, 1961 WL 60638, *4 (1961) (tippee may be liable under §10(b) and 10b-5 for trading on material nonpublic information received from corporate director whose "relationship to the company clearly prohibited him from selling the securities affected by the information without disclosure"); *United States v. Kim*, 184 F. Supp. 2d 1006, 1009 (N.D. Cal. 2002) ("classic insider trading involves a breach of a duty between a corporate insider and the corporation's shareholders....").

It follows that if a corporate official reasonably and in good faith relies on the actions and representations of others with respect to the circumstances of a securities case, this is at the very least a factor weighing against scienter, and may be a complete defense. This was the case in *Dellastatious*, 242 F.3d at 197, which held that the defendant directors were not reckless where they relied on company's "system for identifying and correcting any errors in the offering documents." It also was the case in *SEC v. Todd*, No. 03 CV 2230 BEN (WMC), which granted summary judgment in favor of a CEO in an accounting fraud claim. The court held that the SEC could not prove recklessness where, *inter alia*, the CEO had responded to concerns about the accounting treatment of a transaction by referring the matter to accounting and ethical officials at the company (and elsewhere). 2006 WL 1564892 at *7. Likewise, *SEC v. Autocorp Equities*, 292 F. Supp. 2d 1310, granted summary judgment to a CEO on the allegation that he falsely represented the validity of a certificate of deposit. As the CEO had engaged a CPA to authenticate the CD and taken other actions to ascertain its validity, it could not be concluded that

1  he was reckless at the time of the representation. *Id*. at 324-25.[5]

2  Thus, case law recognizes the reliance on others defense. The Complaint's allegations
3  illustrate its significance in this case, and the unfairness of the SEC's attempt to foreclose the
4  defense. The Complaint alleges that at the same time Mr. McFarland learned of irregularities in
5  the WWT transaction, so too did the top two officers of the company (Messrs. Stanton and
6  Pereira), who acknowledged there was a "problem." *See* pp. 3:20-4:12, *supra*. In these alleged
7  circumstances, Mr. McFarland reasonably could have concluded that the matter had been raised
8  to the highest levels at the company and would be dealt with appropriately. This is contrary to
9  any notion that he ignored the transaction or knew that it had evaded internal controls. The
10 SEC's challenge to Riverstone's internal controls also shows the importance of the defense.
11 "Internal controls" involves systems and processes. In any sizeable organization, systems and
12 processes entail the participation of multiple persons, and reliance on the input from those persons
13 into the process. As such, it cannot possibly be "patently meritless and frivolous," or outside the
14 scope of discovery, for Mr. McFarland to show that he reasonably relied on the actions and
15 representations of others. The SEC has put these matters squarely at issue.

16 Thus, reliance on others is a valid defense, especially given the SEC's allegations in this
17 case. The SEC's only challenge to the defense is that reliance on others is "only one factor to be
18 considered in determining the propriety of injunctive relief" under a five-factor "totality of the
19 circumstances" analysis, a factor that cannot "rebut" the other factors in the test or by itself bar an
20 injunction. MTS at 6:27-7:15. Even as articulated by the SEC, this argument fails to meet its
21 heavy burden to strike. The SEC does not even purport to argue that Mr. McFarland's reliance on
22 others is irrelevant to the law or to the allegations of this case, or for that matter irrelevant to a
23 totality of the circumstances analysis. That reliance on others may not "rebut" the other factors in
24 the analysis or carry the day by itself matters not, even assuming that totality of the circumstances

---

[5] The *Autocorp Equities* court denied other portions of the CEO's summary judgment motion, based on the factual record developed to date. The SEC may cite this outcome, or contest whether Mr. McFarland reasonably could have relied on any representations of others, in replying to this brief. All these arguments would illustrate is that whether reliance on others is a successful defense depends on the evidence and circumstances. All Mr. McFarland asks by including this as an affirmative defense in his answer is the opportunity to develop such evidence.

is the only relevant legal standard (which it is not). Rather, if reliance on others is relevant *at all* (which the SEC does not deny), it is relevant, and the defense cannot be stricken.

Nor do the cases cited by the SEC justify striking the reliance on others defense. Some of the cases discuss reliance on counsel for legal advice.[6] This is a narrower and more specific defense, and it has not been asserted here. The other cases address a totality of circumstances test in determining "the propriety of injunctive relief…." A totality of the circumstances test makes sense in that narrow context: to obtain an injunction, the SEC must show a reasonable likelihood of future violations of the securities laws, *Securities & Exch. Comm'n v. Murphy*, 626 F.2d 633, 655 (9th Cir. 1980), and the telos of the totality of the circumstances test is "predicting the likelihood of future violations." *Securities & Exch. Comm'n v. Fehn*, 97 F.3d 1276, 1295-96 (9th Cir. 1996). In this case, the SEC must also show liability, and it also seeks civil penalties. None of the SEC's cases concern the effect of reliance on others on liability or the amount of civil penalties. In any event, as explained above, even under a totality of the circumstances analysis, one of the relevant circumstances is a defendant's reliance on others.

### C. Plaintiff Does Not Meet Its Burden To Show That Mr. McFarland's Conduct Of Others Defense Should Be Stricken

The SEC offers two challenges to the conduct of others defense. Neither satisfies its heavy burden to strike the defense, and there is a separate basis on which to deny the motion.

First, the SEC contends that the defense should be stricken because proximate cause is irrelevant. MTS § III(B). This, in turn, is based on the claim that the SEC "need not prove actual loss caused by a defendant's conduct in order to establish that defendant's liability, or the SEC's right to relief against him or her." *Id*. at 5:16-25. The SEC's cases concern other elements of liability or relief not at issue in this defense.[7] Moreover, the SEC has demanded more of Mr.

---

[6] *See, e.g., Securities & Exch. Comm'n v. Goldfield Deep Mines Co.*, 758 F.2d 459, 476 (9th Cir. 1985) ("in order to establish good faith reliance on the advice of counsel, appellants must show that they (1) made a complete disclosure to counsel; (2) requested counsel's advice as to the legality of the contemplated action; (3) received advice that was legal; and (4) relied in good faith on that advice."); *Securities & Exch. Comm'n v. Savoy Indus., Inc.*, 665 F.2d 1310, 1314 n.28 (D.C. Cir. 1981) (same).

[7] The issue in two of the cases cited by the SEC was whether it must show reliance in order to obtain any relief. *Securities & Exch. Comm'n v. Blavin*, 760 F.2d 706, 711 (6th Cir. 1985)

1  McFarland than just the imposition of relief (an injunction): it seeks civil penalties. The demand
2  for civil penalties renders proximate causation relevant, for the penalty provision of the Exchange
3  Act permits imposition of third-tier penalties on Mr. McFarland only if his violation "directly or
4  indirectly resulted in substantial losses or created a significant risk of substantial losses to other
5  persons." 15 U.S.C. § 78u(d)(3)(B)(iii).[8] At a very minimum, it renders relevant discovery on the
6  extent to which any violations by Mr. McFarland, as distinguished from other persons, resulted in
7  investor losses or the risk thereof. *See Securities & Exch. Comm'n v. Coates,* 137 F. Supp. 2d
8  413, 428-29 (S.D.N.Y. 2001) (considering proximate cause factors in assessing imposition and
9  amount of civil penalty).[9] Thus, a motion to strike predicated on the basis that it will "streamline
10 the issues for discovery and ultimately at trial" (MTS at 2:14-17) is misplaced.

11      Second, the SEC argues that the defense constitutes cross-claims against other persons
12 that are forbidden by Exchange Act § 21(g). MTS at 6:1-4, *id*. at 6:17-19 ("asserting cross-claims
13 in the guise of affirmative defenses should be rejected."). There is no basis for this contention.
14 Affirmative defenses and cross-claims are different things. *Compare* Fed. R. Civ. P. 8(c) *and*
15 Fed. R. Civ. P. 13(g). There is no "guise" here. The affirmative defense is labeled as an
16 affirmative defense. It is not labeled as a cross-claim. The answer does not seek relief against
17 any other defendant, as would be the case of a cross-claim. Nor does Mr. McFarland seek to
18 consolidate as a plaintiff with the SEC in an action against defendants, as in *Securities & Exch.*
19 *Comm'n v. Wozniak*, No. 92 C 4691, 1993 WL 34702, *1 (N.D. Ill. Feb. 8, 1993).

20      Thus, the SEC's contentions do not meet its burden to strike the defense of the conduct of
21 others. Apart from this, the SEC already has contradicted the position taken in its Motion. It

---

(rejecting contention that liability and penalties could not be imposed because investors did not detrimentally rely on misstatements); *Securities & Exch. Comm'n v. Rana Research*, Civ. No. 89-1865 AAH(TX), 1990 WL 267365, *20 (C.D. Cal. Oct. 2, 1990) (same). The other case discussed disgorgement. *Securities & Exch. Comm'n v. Thorn*, No. 2:01-CV-290, 2002 WL 31412440, *3 (S.D. Ohio Sept. 30, 2002). There is no claim for disgorgement against Mr. McFarland, as he is not alleged to have profited from the purported fraud. *See* p. 3:5-7, *supra*.

[8] The Complaint does not limit its prayer for civil penalties to only first or second tier penalties. Absent such a limitation, Mr. McFarland cannot assume that he is not at risk of the imposition of third-tier penalties, and hence that proximate causation is at issue.

[9] *Cf. Securities & Exch. Comm'n v. Keating*, No. CV 91-6785 (SVW), 1992 WL 207918, *3 (C.D. Cal. July 23, 1992) (proximate causation not relevant in action in which "the SEC is alleging wrongdoing, but *not* seeking damages….") (emphasis in original).

filed a Complaint alleging that the conduct of persons other than Mr. McFarland harmed Riverstone's investors; namely, those persons responsible for the accounting issues at Enterasys, Riverstone's predecessor. *See* pp. 3:11-18, *supra*. By pleading the affirmative defense at issue, Mr. McFarland is taking the SEC's allegations seriously. Indeed, he is taking them to heart. Mr. McFarland expects that discovery will show that once he joined Riverstone after it spun off from Enterasys, and due to his efforts, internal controls *improved*. It will show that Mr. McFarland was part of the solution at Riverstone, not part of the alleged problem. In any event, having itself alleged that the misconduct of others harmed Riverstone's investors, the SEC hardly is in a position to contend that the defendants must be forestalled from taking discovery on those allegations, or from raising the same type of contention on their own.

## VI.  CONCLUSION

All Mr. McFarland intends to do is defend himself. The affirmative defenses at issue are not exotic or controversial. They have a sound basis in the law and reason. They also are suggested by the allegations of the Complaint itself. The defenses should not be stricken in any event, and especially not at this early stage, before discovery has been conducted. The Motion should be denied.

Respectfully submitted,

Dated: January 26, 2007                    DLA PIPER US LLP

By /s/ David Priebe
   DAVID PRIEBE
Attorneys for Defendant William F. McFarland