LESLIE J. HUGHES (CO Bar No. 15043) (hugheslj@sec.gov )
LEE C. ROBINSON (CO Bar No. 32734) (robinsonlc@sec.gov )
Attorneys for Plaintiff
U.S. Securities and Exchange Commission
1801 California Street, Suite 1500
Denver, Colorado 80202-2656
Telephone:  (303) 844-1000
Fax: (303) 844-1068

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. 06-CV-6384 CRB |
| Plaintiff, | **PLAINTIFF'S OPPOSITION TO FELDMAN'S MOTION TO DISMISS** |
| v. | Date:  February 16, 2007 |
| PEREIRA, et al. | Time:  10:00 am |
| Defendants. | Courtroom 8 |
| | Judge:  Hon. Charles R. Breyer |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES . . . . . . . . iii

SUMMARY OF ARGUMENT . . . . . . . vii

ISSUES TO BE DECIDED. . . . . . . . viii

I.    STATEMENT OF FACTS . . . . . . . 1

II.   STANDARD FOR GRANTING A MOTION TO DISMISS . . . 3

III.  ARGUMENT

  A.  SEC Has Pled Its Fraud Claim with Sufficient Particularity. . . 4

  B.  The SEC Has Pled Aiding and Abetting With Sufficient Particularity. . 10

  C.  The SEC Has Pled Facts That Show Feldman
      Violated the Books and Records Provisions. . . . 11

  D.  The SEC Has Pled Facts Showing Feldman
      Deceived Riverstone's Auditors. . . . . . 13

IV.   CONCLUSION . . . . . . . . 14

SEC's Opposition to Feldman's Motion to Dismiss
Case No. 06-CV-06384 CRB

# **TABLE OF AUTHORITIES**

**Cases**                                                                                          **Page**

*Affiliated Ute v.U.S.,*
    406 U.S. 128, 152-53 (1972)  .    .    .    .    .    .    7

*Anixter v. Home-Stake Prod. Co.,*
    77 F.3d 1215 10th Cir. 1996)  .    .    .    .    .    6

*Balistreri v. Pacific Police Dept.,*
    901 F.2d 696, 699 (9th Cir. 1990)  .    .    .    .    3

*Cashman v. Coopers & Lybrand,*
    877 F. Supp. 425, 432-34 (N.D. Ill. 1995)  .    .    .    7

*Conley v. Gibson,*
    355 U.S. 41 (1957)  .    .    .    .    .    .    3

*Chang v. Chen,*
    80 F.3d 1293, 1296 (9th Cir. 1996)  .    .    .    .    3

*Decker v. GlenFed, Inc. (In re GlenFed, Inc. Sec. Litig.),*
    42 F.3d 1541 (9th Cir. 1994) (en banc)  .    .    .    4

*Dannenberg v. PaineWebber Inc. (In re Software Toolworks Inc. Sec. Litig.)*
    50 F.3d 615, 628-29 N.3 (9th Cir. 1994)  .    .    .    6

*Ernst & Ernst v. Hochfelder,*
    425 U.S. 185, 199 (1975)  .    .    .    .    .    8

*Fecht v. Price Co.,*
    70 F.3d 1078 (1995)  .    .    .    .    .    4

*Fill v. Lernout (In re Lernout & Hauspie Sec. Litig.),*
    236 F. Supp. 2d 161, 173 (D. Mass. 2003)  .    .    .    7

*Hishon v. King  & Spalding,*
    467 U.S. 69 (1984)  .    .    .    .    .    .    3

*Hockey v. Medhekar,*
    30 F. Supp 2d. 1209, 1216 (N.D. Cal. 1998)  .    .    .    5

*Howard v. Everex Systems, Inc.*
    228 F. 3d 1057 (9th Cir. 2004)  .    .    .    .    .    vii, 6, 10

SEC's Opposition to Feldman's Motion to Dismiss
Case No. 06-CV-06384 CRB

**Cases**                                                                                           **Page**

*In re Convergent Technologies Sec. Lit.*,
     948 F.2d 507, 512 (9th Cir. 1991)   .     .     .     .     .     9

*In re Daou Systems, Inc. Sec. Litig.*,
     411 F.3d 1006, 1016 (9th Cir. 2005)   .     .     .     .     .     5

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
     235 F. Supp. 2d 549, 585-87 (S.D. Tex. 2002)   .     .     .     9

*In re Global Crossing, Ltd. Sec. Litig.*,
     322 F. Supp. 2d 319, 335 (S.D.N.Y. 2003)   .     .     .     vii, 7, 8

*In re ZZZZ Best Sec. Litig.*,
     864 F. Supp. 960, 970 (C.D. Cal. 1994)   .     .     .     .     6

*Jackson v. Carey*,
     353 F.3d 750, 758 (9th Cir. 2003)   .     .     .     .     .     3

*Lopez v. Smith*,
     203 F.3d 1122, 1127 (9th Cir. 2000)   .     .     .     .     .     3

*Newman v. Universal Pictures*,
     813 F.2d 1519 (9th Cir. 1987) .     .     .     .     .     3

*Polich v. Burlington Northern, Inc.*,
     942 F.2d 1467, 1472 (9th Cir. 1991)   .     .     .     .     3

*Ponce v. SEC*,
     345 F.3d 722 (9th Cir. 2003)   .     .     .     .     .     10, 12

*Provenz v. Miller*,
     102 F.3d 1478 (9th Cir. 1996) .     .     .     .     .     6

*SEC v. Currency Trading Intl, Inc.*,
     2004 U.S. Dist. LEXIS 24992 *21-22 (C.D. 2004)   .     .     9

*SEC v. First Jersey Sec., Inc.*,
     101 F.3d 1450 (2d Cir. 1996) .     .     .     .     .     6

*SEC v. Fehn*,
     97 F.3d 1276 (9th Cir. 1996)   .     .     .     .     .     10

*SEC v. Holschuh*,
     694 F.2d 130, 142 (7th Cir. 1982)   .     .     .     .     6

SEC's Opposition to Feldman's Motion to Dismiss
Case No. 06-CV-06384 CRB

**Cases**                                                                                  **Page**

*SEC v. ICN Pharms., Inc.,*
     84 F. Supp. 2d 1097 (C.D. Cal. 2000).   .   .   .   .   4

*SEC v. KPMG LLP,*
     412 F. Supp. 2d 349 (S.D.N.Y. 2006) .   .   .   .   6

*SEC v. Levin,*
     232 F. R. D. 619 (C.D. Cal. 2005)   .   .   .   .   .   3

*SEC v. Lucent Techs., Inc.,*
     363 F. Supp. 2d 708 (D. N. J. 2005)   .   .   .   .   10

*SEC v. McNulty,*
     137 F.3d 732 (2d Cir. 1998)   .   .   .   .   12

*SEC v. Monarch Funding Corp.,*
     192 F.3d 295 (2d Cir. 1999)   .   .   .   .   5

*SEC v. Rana Research, Inc.,*
     8 F.3d 1358 (9th Cir. 1996)   .   .   .   .   5, 8

*SEC v. Sandifur*
     2006 U.S. Dist LEXIS 12243 * 34-40, Fed. Sec. L. Rep
     (CCH) P 93,728 (W. D. Wash. 2006) .   .   .   ii, vii, 11

*SEC v. U.S. Environmental, Inc.,*
     155 F.3d 107, 109 (2d Cir. 1998)   .   .   .   7

*SEC v. Yuen,*
     2006 U.S. Dist. LEXIS 33938,
     *115-116 (C.D. Cal. March 16, 2006)   .   .   12

*SEC v. Yuen,*
     221 F.R.D. 631 (C.D. Cal. 2004)   .   .   .   4

*SEC v. Zandford,*
     535 U.S. 813, 820 (2002)   .   .   .   .   7

*Simpson v. AOL Time Warner, Inc.,*
     452 F.3d 1040, 1043 (9th Cir. 2006) .   .   .vii, 5, 7, 8, 9, 10

*Smith v. Jackson,*
     84 F.3d 1213 (9th Cir. 1996)   .   .   .   3

SEC's Opposition to Feldman's Motion to Dismiss
Case No. 06-CV-06384 CRB

**Cases**                                                                          **Page**

*Sullivan & Long Inc. v. Scattered Corp.*,
    47 F.3d 857, 861 (7th Cir. 1995)  .    .    .    .    .    8

*Walling v. Beverly Enterprises*,
    476 F.2d 393 (9th Cir. 1973)  .    .    .    .    .    4

*Wool v. Tandem Computers, Inc.*,
    818 F.2d 1433 (9th Cir. 1987) .    .    .    .    .    3

*Wright v. Ernst & Young LLP*,
    152 F.3d 169 (2d Cir. 1998)  .    .    .    .    .    .    6

**Statutes**

Private Securities Litigation Reform Act of 1995 (PSLRA), 15 U.S.C. § 78u-4    4

Fed. R. Civ. P.
    9(b)  .    .    .    .    .    .    .    vi, vii, 3, 4, 12, 13, 14
    12(b)(6)    .    .    .    .    .    .    .vi, 3, 4

**Securities Exchange Act of 1934**

    10(b) [15 U.S.C. § 78j (b)]  .    .    . vi, vii, viii, 3, 4, 5, 7, 8, 10, 11
    13(a) [15 U.S.C. § 78m (a)].  .    .    .vi, vii, viii, 8, 9, 10, 11, 12
    13(b)(2)(A) [15 U.S.C. § 78m(b)(2)(A)]  .    .    . vii, viii, 8, 12, 13
    13(b)(2)(B)(ii) [15 U.S.C. § 78m(b)(2)(B)(ii)]  .    .    . vii, 8
    13(b)(5) [15 U.S.C. § 78m(b)(5)]  .    .    .vi, vii, viii, 10, 12, 13

    Rules
        10b-5  .    .    .    .    .    vi, vii, viii, 3, 4, 5, 7, 8, 10
        12b-20 .    .    .    .    .    .    vi, 8, 10
        13a-1 .    .    .    .    .    .    vi, 8, 10
        13a-13 .    .    .    .    .    .    vi, 8, 10
        13b2-1 .    .    .    .    .    . vi, vii, 8, 9, 10, 12
        13b2-2 .    .    .    .    .    .vi, vii, viii, 11, 12, 13

SEC's Opposition to Feldman's Motion to Dismiss
Case No. 06-CV-06384 CRB

Defendant Andrew Feldman moves pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6) to dismiss the SEC's five claims alleging that he violated or aided Riverstone Networks, Inc.'s (Riverstone) violations of the fraud provisions of Section 10(b) of the Securities Exchange Act of 1934 (Exchange Act) and Rule 10b-5; the reporting and books and records provisions of Section 13(a), 13(b)(2)(A), and 13(b)(5) and Rules 13a-1, 13a-13, 12b-20, 13b2-1; and the prohibition against deceiving auditors in Rule 13b2-2. Feldman contends that each claim sounds in fraud and the SEC has failed to plead its claims with sufficient particularity. However, the SEC has alleged facts with sufficient particularity to advise Feldman of the time, place and misleading nature of his fraudulent actions in connection with the World Wide Technology and Vnetek transactions, which caused Riverstone to over state its revenues in quarterly and annual reports filed with the SEC, and to meet the pleading requirements of Rule 9(b).

Feldman contends the SEC cannot state a claim for violations of Section 10(b) and Rule 10b-5 because it does not allege he "made" the false revenue statements in the reports filed with the SEC, because he did not prepare, draft, or sign the quarterly and annual reports that contained overstated revenues. The SEC alleges Feldman is liable for overstated revenues reported in Riverstone's quarterly and annual reports, because he structured two transactions to remove from the purchase orders contingent sales terms, which made revenue recognition improper under Generally Accepted Accounting Principles (GAAP). Feldman can be liable as a maker of a statement because he substantially participated in the two transactions and was intricately involved in creating the misleading purchase orders that were recorded in Riverstone's books and records, and caused the reported revenues to be overstated. See *Simpson v. AOL Time Warner, Inc.,* 452 F.3d 1040, 1043 (9th Cir. 2006)

Even if the court finds Feldman did not "make" the false revenue statements in the quarterly and annual reports, he can be liable for participating in a scheme to defraud investors under Section 10(b) of the Exchange Act and Rule 10b-5(a) and (c) by his negotiation of two purchase orders that omitted contingent sales terms, which if disclosed in Riverstone's books and records, would have prevent the company from recognizing revenue on these transactions. See

1  *Howard v. Everex Sys. Inc.*, 228 F.3d 1057, 1061 n. 5 (9th Cir. 2000); *In re Global Crossing, Ltd.*

2  *Sec. Litig.*, 322 F. Supp. 2d 319, 335 (S.D.N.Y. 2003).

3       The SEC has alleged sufficient facts to establish that Feldman provided substantial

4  assistance to Riverstone's violation of Section 10(b) and Rule 10b-5, and the reporting provisions

5  of Section 13(a) of the Exchange Act and rules there under, by obtaining two purchase orders

6  that omitted contingent sales terms, which if disclosed in the purchase orders would have

7  prevented Riverstone from recognizing revenue on these transactions. Unlike the allegations in

8  *SEC v. Sandifur*, 2006 U.S. Dist LEXIS 12243 * 34-40, Fed. Sec. L. Rep (CCH) P 93,728 (W. D.

9  Wash. 2006), the SEC has alleged facts to show that Feldman knew he was removing the

10 contingent sales terms to allow the company to improperly recognize revenue.

11      The SEC has alleged facts with sufficient particularity to identify that Feldman caused

12 Riverstone's books and records to be false by obtaining the two purchase orders that omitted

13 contingent sales terms, and by such acts violated Section 13(b)(5) and aided Riverstone's

14 violation of Section 13(a)(2)(A) of the Exchange Act.

15      Feldman argues the SEC has failed to state a claim that he deceived Riverstone's auditors

16 in violation of Rule 13b2-2 where it did not allege that he had direct communications with the

17 auditors. However, Rule 13b2-2 is broader than the language cited by Feldman and includes

18 liability for directly or indirectly take any action to manipulate or mislead an accountant

19 performing an audit or review of a company's financial statements. Feldman's acts of obtaining

20 misleading purchase orders that concealed the true terms of the transactions from Riverstone's

21 auditors violated this provision.

22

23

24

25

26

27

28

SEC's Opposition to Feldman's Motion to Dismiss
Case No. 06-CV-06384 CRB

## ISSUES TO BE DECIDED

1.     Whether the SEC's complaint states a claim for relief under Section 10(b) of the Exchange Act and Rule 10b-5(b) where Feldman did not sign reports containing overstated revenues, but he substantially participated in the false revenue statements by obtaining misleading purchase orders that that allowed the company to improperly recognize revenue?

2.     Whether the SEC's complaint states a claim for relief under Section 10(b) of the Exchange Act and Rule 10b-5(a) and (c) that Feldman participated in a scheme to defraud by obtaining misleading purchase orders that that allowed the company to improperly recognize revenue?

3.     Whether the SEC's complaint alleges sufficient facts to state a claim that Feldman aided and abetted Riverstone's violations of the anti-fraud provisions of Section 10(b) and the periodic reporting provisions of Section 13(a) of the Exchange Act.?

4.     Whether the SEC's complaint alleges sufficient facts to state a claim that Feldman violated the books and records provisions of Section 13(b)(5) and aided Riverstone's violation of Section 13(b)(2)(A)?

5.     Whether the SEC's complaint alleges sufficient facts to state a claim that Feldman deceived Riverstone's accountants contrary to the provisions of Rule 13b2-2?

## I.     STATEMENT OF FACTS

In order to meet revenue targets, Andrew Feldman, the Vice President of Marketing for Riverstone Networks, Inc (Riverstone), along with other officers and an employee of the company, engaged in a scheme to defraud Riverstone's investors by overstating the company's net revenue in two quarterly reports and one annual report filed with the SEC for the quarters ending September 1, and December 1, 2001, and the year ending March 2, 2002.  (Compl. 1, 31, 34)  The overstated revenues occurred in the first three quarters after Riverstone became an independent public company when it was spun off by its parent company, Cabletron Systems Inc., on August 6, 2001.  Riverstone's shares were registered with the SEC and traded on the NASDAQ national market.  (Compl. 1, 9, 24)  Feldman's part in the scheme involved negotiating two transactions for which he caused Riverstone to improperly recognize revenue in the quarters ending September 1, and December 1, 2001, and the year ending March 2, 2002.  By removing critical contract terms from the purchase orders, he knowingly falsified the company's books and records, and directly or indirectly misled Riverstone's outside auditors who audited or reviewed the company's financial statements required to be filed with the SEC. (Compl. 56, 112, 123-124)

In furtherance of the scheme, in late August 2001, four days before the end of the quarter, Feldman negotiated the World Wide Technology transaction which comprised $2.8 million of the $10,383,000 in overstated revenue reported by Riverstone for the quarter ended September 1, 2001. (Compl. 34, 44)   Feldman induced WWT to enter into a $2.8 million purchase order by agreeing in an email that WWT did not have to pay for the product until WWT resold it to third-parties, that Riverstone would find the third-parties to buy the product, and that WWT had full exchange rights on the order. (Compl 38-39)  As part of the scheme, Feldman obtained approval from Pereira, Stanton, and McFarland of the terms contained in the WWT side agreement. (Compl. 40, 46)  However, when WWT submitted a purchase order stating these terms, Feldman requested WWT remove the terms and submit a new purchase order so that the transaction could be recognized as revenue in the company's financial statements.  (Compl. 41, 42)  By deleting material terms from the purchase order, Feldman caused Riverstone's books and records to be

SEC's Opposition to Feldman's Motion to Dismiss
Case No. 06-CV-06384 CRB

false because the purchase order did not accurately reflect the terms of the agreement with

WWT, and the contingent terms of the transaction were not recorded in the company's revenue

recognition system.  (Compl. 30, 41-43)  Riverstone's director of credit and collections learned

of the sell-through payment terms, not from the company's books and records, but instead from a

collection call to WWT. (Compl 45)  Feldman's email requesting the contingent terms be

removed from the purchase order indicates that he knew the auditors would review the purchase

order as part of their analysis of revenue recognition.  (Compl. 41, 42)  Feldman's procurement

of the revised WWT purchase order concealed the contingent contract terms from Riverstone's

outside accountants, which conducted a review of the quarter. (Compl. 52, 56, 95, 98)

       Continuing his activities in furtherance of the scheme to defraud investors by overstating

the company's revenues, Feldman, in late November 2001, three days before the end of the

quarter, negotiated with Vnetek Communications, LLC (Vnetek) to submit a purchase order for

$2 million.  (Compl. 59)  Feldman agreed in a side letter that Vnetek had full return rights, and

sell-through payment terms, which allowed Vnetek to pay Riverstone for the product only after it

was sold to a third-party. (Compl. 60) Feldman knew the purpose of getting a "clean" purchase

order, which did not contain the sales contingencies, was to get the transaction through the

auditors. (Compl. 58) The sales contingencies Feldman granted to Vnetek were approved by

Pereira, Stanton, and McFarland. (Compl. 62) However, these contract terms were not recorded

in the purchase order submitted by Vnetek to Feldman.  (Compl. 64.)  By entering into these

contract terms in a side letter, Feldman caused Riverstone's books and records to be false,

because the purchase order did not accurately reflect the terms of the agreement with Vnetek,

and the contingent terms of the transaction were not recorded in the company's revenue

recognition system.  (Compl. 64) Riverstone recognized $1.5 million on this transaction, which

is part of the $7,658,000 in overstated revenue reported in Riverstone's quarterly report filed

with the SEC for the quarter ended December 1, 2001. (Compl. 34, 57-64)  Feldman's

procurement of the Vnetek purchase order, which did not contain material terms that he agreed to

in the side letter, concealed these terms from and mislead Riverstone's outside accountants.

(Compl. 64, 95, 98)

1    Revenues from the WWT transactions was included in Riverstone's financial statements

2    for the year ending March 1, 2002, and caused the company to overstated the revenues reported

3    in Riverstone's Form 10-K filed with the SEC. (Compl. 35, 36) However, Vnetek returned its

4    products in January 2002 and Riverstone reversed the transaction in the fourth quarter.  While

5    Feldman participated in the scheme to overstate Riverstone's revenues in the financial statements

6    reported to the SEC and investors, he sold Riverstone stock for gains of at least $998,499.

7    (Compl. 8, 100.d.)

8    **II.     STANDARD FOR GRANTING A MOTION TO DISMISS**

9         Feldman moves to dismiss pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of

10   Civil Procedure.  Under Rule 12(b)(6) a complaint must be dismissed when a plaintiff's

11   allegations fail to state a claim upon which relief can be granted.  The Court must construe the

12   complaint liberally, and dismissal should not be granted unless "it appears beyond doubt that the

13   plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

14   *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); *see also Balistreri v. Pacific Police Dept.*, 901 F.2d

15   696, 699 (9th Cir. 1990) (stating that a complaint should be dismissed only when it lacks a

16   "cognizable legal theory" or sufficient facts to support such a theory). Dismissal is appropriate

17   "only if it is clear that no relief could be granted under any set of facts that could be proved

18   consistent with the allegations."  *SEC v. Levin*, 232 F. R. D. 619, 622 (C.D. Cal. 2005) (citing

19   *Newman v. Universal Pictures*, 813 F.2d 1519, 1521-22 (9th Cir. 1987), quoting *Hishon v. King*

20   *& Spalding*, 467 U.S. 69, 73 (1984)).  The allegations of material fact must be taken as true and

21   construed in the light most favorable to the Commission.  *Hishon v. King  & Spalding*, 467 U.S.

22   69, 73 (1984); *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996).  Dismissal without leave to

23   amend is appropriate only when the Court is satisfied that the deficiencies of the complaint could

24   not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003), *citing*

25   *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir.

26   2000); *Polich v. Burlington Northern, Inc.*, 942 F.2d 1467, 1472 (9th Cir. 1991).

27        Claims of securities fraud violations under Section 10(b) and Rule 10b-5 must meet the

28   particularity requirements of Rule 9(b).  *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1439

(9th Cir. 1987). Rule 9(b) states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other conditions of mind of a person may be averred generally." In securities fraud actions, the plaintiff must aver with particularity the circumstances constituting the fraud. *Decker v. GlenFed, Inc. (In re GlenFed, Inc. Sec. Litig.)*, 42 F.3d 1541, 1547 (9th Cir. 1994) (en banc). But a pleading is sufficient if it identifies the circumstances of the alleged fraud so that the defendant can prepare an adequate answer. *SEC v. Yuen*, 221 F.R.D. 631, 634 (C.D. Cal. 2004); *Fecht v. Price Co.*, 70 F.3d 1078, 1082 (9th Cir. 1995). The more rigorous pleading requirements of the Private Securities Litigation Reform Act of 1995 (PSLRA), 15 U.S.C. § 78u-4, which go beyond the Rule 9(b) requirements only apply to private securities fraud actions; they do not apply to a case such as this, brought by the SEC. *SEC v. ICN Pharms., Inc.*, 84 F. Supp .2d 1097, 1099 (C.D. Cal. 2000).

To meet the notice pleading requirements, the complaint should contain allegations of the time, place, and nature of the alleged fraudulent activities. *Fecht,* 70 F.3d at 1082. In addition, the plaintiff must set out what is false or misleading about a statement, and why it is false. *In re Glen Fed*, 42 F.3d at 1548. The statement or omission must be false or misleading when made. *Id*. at 1548-49. However, Rule 9(b) does not require the pleading of detailed evidence. *Walling v. Beverly Enterprises,* 476 F.2d 393, 397 (9th Cir. 1973) (*quoting* 2A James Wm. Moore et al., *Moore's Federal Practice* ¶ 903, at 1930 (2d ed. 1972)). Under the final sentence of Rule 9(b), the complaint need only state that the required scienter existed. *In re Glen Fed,* 42 F.3d at 1547. Under these standards, the Commission has alleged sufficient facts to withstand Feldman's motion to dismiss the SEC's claims under Rules 12(b)(6) and 9(b).

## III.    ARGUMENT

### A.    SEC Has Pled Its Fraud Claim With Sufficient Particularity.

The SEC asserts as a result of the conduct described above that Feldman either violated the anti-fraud provision of federal securities laws contained in Section 10(b) of the Securities Exchange Act of 1934 (Exchange Act), 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, or aided Riverstone's violations of these provisions. To establish primary liability under

4

Section 10(b) of the Exchange Act and Rule 10b-5, the SEC must prove four elements: (1) a fraudulent device, material misrepresentation or omission, or an act that operated as a fraud or deceit; (2) in connection with the purchase or sale of a security; (3) scienter; and (4) use of the jurisdictional means. *SEC v. Rana Research, Inc.*, 8 F.3d 1358, 1363-64 (9th Cir. 1996) (discussing elements of 10b-5); *SEC v. Monarch Funding Corp.*, 192 F.3d 295, 308 (2d Cir. 1999).

Section 10(b) and Rule 10b-5 can be violated by engaging in a scheme to defraud, making misrepresentations or omissions, or engaging in fraudulent or deceptive acts.[1] Feldman's argument focuses on the second prong of Rule 10b-5 contending that he cannot be primarily liable for violations of these provisions, because the SEC has not alleged that he prepared, drafted, signed or otherwise participated in the preparation of two Forms 10-Q or any other Riverstone SEC filing.[2] Brief at 7. The SEC alleges that Feldman caused Riverstone to file two quarterly reports and one annual report with the SEC that overstated the company's revenues. (Compl. 35-36) If "properly pled overstating of revenues may state a claim for securities fraud, because under GAAP 'revenue must be *earned* before it can be recognized'." *In re Daou Systems, Inc. Sec. Litig.*, 411 F.3d 1006, 1016 (9th Cir. 2005), *citing Hockey v. Medhekar*, 30 F.

---

[1]     Section 10(b) of the Exchange Act, 15 U.S.C. § 78j (b), makes it unlawful "for any person . . . to use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe[.]" Rule 10b-5, promulgated under the authority of Section 10(b), provides: It shall be unlawful for any person . . . (a) to employ any device, scheme, or artifice to defraud, (b) to make any untrue statement of material fact or to omit to state a material fact necessary in order to make statements made, in light of the circumstances under which they were made, not misleading, or (c) to engage in any act, practice, or course of business which operates or would operate as a fraud, or deceit upon any person, in connection with the purchase or sale of any security. 17 C.F.R. § 240.10b-5.

[2]     Feldman also contends that the SEC has failed to allege that any statement made by Feldman was publicly disseminated. Brief at p. 6 n.3. He ignores the SEC's allegations that the overstated revenues caused by the misleading purchase orders were publicly disseminated in the two quarterly and one annual report filed with the SEC. (Compl. 34-36) "That every participant in the scheme did not release the information to the public does not diminish the causal connection between all defendants in the scheme and the securities market." *Simpson v. AOL Time Warner, Inc.*, 452 F.3d 1040, 1051 (9th Cir. 2006). Feldman also argues the SEC has not alleged facts showing his communications were "in connection with} the purchase or sale of securities. A scheme to misrepresent the publicly reported revenue of a company that coincides with the purchase of sale of securities meets the" in connection with" element. *Simpson*, 452 F.3d at 1051. The "in connection with" element is met by the allegations that Feldman caused the quarterly and annual reports to be false by causing the company to overstate its revenues, that he traded while the company reported overstated revenues in its financial statements, and the stock was generally traded on NASDAQ. (Compl. 1, 34-36, 100)

SEC's Opposition to Feldman's Motion to Dismiss
Case No. 06-CV-06384 CRB

Supp 2d. 1209, 1216 (N.D. Cal. 1998) (quoting *Provenz v. Miller*, 102 F.3d 1478, 1484 (9th Cir. 1996) (emphasis in original). There is no requirement that the alleged violator directly communicate misrepresentations for primary liability to attach. *Anixter v. Home-Stake Prod. Co*., 77 F.3d 1215, 1226 (10th Cir. 1996), citing *SEC v. Holschuh*, 694 F.2d 130, 142 (7th Cir. 1982). A defendant's misrepresentation may be actionable as a primary violation, if he knew or should have known that his representation would be communicated to investors. *Anixter,* 77 F.3d at 1226. The SEC alleges Feldman knew that revenues from the WWT and Vnetek transactions were to be included in the company's financial statements filed with the SEC and distributed to investors. (Compl. 26-32, 36)

The Ninth Circuit has held defendants liable for statements made by others[3], where the defendant substantially participated in preparing the statements. See *Howard v. Everex Sys. Inc*., 228 F.3d at 1061 n. 5 (primary liability appropriate where "substantial participation or intricate involvement in the preparation of the fraudulent statement . . . even though that participation might not lead to the actor's actual making the statements."), citing *Dannenberg v. PaineWebber Inc. (In re Software Toolworks Inc. Sec. Litig.)*, 50 F.3d 615, 628-29 N.3 (9th Cir. 1994) (auditor violated section 10(b) by participating in drafting letters sent to SEC); *In re ZZZZ Best Sec. Litig*., 864 F. Supp. 960, 970 (C.D. Cal. 1994) (accounting firm that was "intricately involved" in creating false documents published by client is a primary violator). See also *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450 (2d Cir. 1996), the Second Circuit stated that "primary liability may be imposed not only on person who made fraudulent misrepresentations but also on those who had knowledge of the fraud and assisted in its perpetration." *Id.* (primary liability may attach to

---

[3]   The Ninth Circuit's case law on primary liability for statements not directly attributed to the defendant is contrary to the holding in *Wright v. Ernst & Young LLP*, 152 F.3d 169, 174-75 (2d Cir. 1998) (A secondary actor cannot incur primary liability under the Act for a statement not attributed to that actor at the time of dissemination.) which Feldman cites. Brief at 6. See *SEC v. KPMG LLP*, 412 F. Supp. 2d 349 (S.D.N.Y. 2006) which discusses *Wright* in the context of an SEC enforcement action and holds Section 10(b) primary liability may attach in a discrete set of circumstances in which the defendant is not identified to the public as the speaker. *Id* at 375. The SEC, unlike a private plaintiff, is not required to prove reliance when it brings enforcement actins under the securities laws. Accordingly in an SEC enforcement action, there appears to be no reason to impose a requirement that a misstatement have been publicly attributed to a defendant for liability to attach, at least so long as the SEC is able to show that the defendant was sufficiently responsible for the statement - - in effect, caused the statement to be made - - and knew or had reason to know that the statement would be disseminated to investors. *Id*. at 375.

SEC's Opposition to Feldman's Motion to Dismiss
Case No. 06-CV-06384 CRB

corporate officer for company's false statement where it can be shown that officer was sufficiently responsible for making false statement); *SEC v. U.S. Environmental, Inc*., 155 F.3d 107, 109 (2d Cir. 1998) (broker liable for participation in firm's scheme to manipulate stock price by executing trades although he did not conceive or direct the scheme); *Fill v. Lernout (In re Lernout & Hauspie Sec. Litig.)*, 236 F. Supp. 161, 173 (D. Mass. 2003) (defendants liable for setting up entities that enabled the fraud); *Cashman v. Coopers & Lybrand*, 877 F. Supp. 425, 432-34 (N.D. Ill. 1995) (primary liability attaches where accountant charged with playing a "central role in the drafting and formation of the alleged misstatements" that were incorporated into prospectus).

Feldman's argument that he did not "make" the false statements fails in light of the SEC's allegations that he substantially participated, and was intricately involved, in the creating two misleading purchase orders that became part of the revenues reported in Riverstone's quarterly report for the quarters ending September 1, and December 1, 2001, which were included in part in the financial statements in Riverstone's annual report for the year ending March 2, 2002. The SEC alleges when Feldman entered into the side agreements to the purchase orders, he was aware that Riverstone intended to recognize revenue on the transactions, that the sale contingencies would prevent revenue recognition under GAAP, and that the purchase orders needed to omit any references to the contingencies if revenue was to be recognized and pass audit. (Compl. 42, 58, 61, 63) These allegations are sufficient to state a claim that Feldman violated Section 10(b) and Rule 10b-5 by substantially participating in the making of false statements about Riverstone's revenues in two quarterly reports and one annual report.

Even if the Court should determine that Feldman did not "make" a misrepresentation, he still participated in a scheme to defraud which constitutes a separate violation of Section 10(b) and Rule 10b-5. It is clear from Rule 10b-5's language and the case law interpreting it that a cause of action exists under subsection (a) and (c) for behavior that constitutes participation in a fraudulent scheme, even absent a fraudulent statement by the defendant. *In re Global Crossing, Ltd. Sec. Litig.*, 322 F. Supp. 2d 319, 335 (S.D.N.Y. 2003), citing *Affiliated Ute v. U.S.*, 406 U.S. 128, 152-53 (1972), and *SEC v. Zandford*, 535 U.S. 813, 820 (2002). In *Simpson v. AOL Time*

7

*Warner Inc.*, 452 F.3d at 1043, the Court held Section 10(b) includes deceptive conduct in furtherance of a scheme to defraud. Claims for engaging in a fraudulent scheme and for making a fraudulent statement or omission are distinct claims with distinct elements. All that is required in order to state a claim for a primary violation under Rule 10b-5 (a) or (c) is an allegation that the defendant (1) committed a manipulative or deceptive act (2) in furtherance of the alleged scheme to defraud, and (3) acted with scienter.[4] *Global Crossing*, 322 F. Supp. 2d at 336. The term "manipulative" in section 10(b) "connotes intentional or willful conduct designed to deceive or defraud investors by controlling or artificially affecting the price of securities." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 199 (1975). The SEC has alleged that Feldman engaged in precisely this manipulative conduct with the result of artificially inflating the price of Riverstone's securities. (Compl 8) Schemes used to artificially inflate the price of stock by creating phantom revenues fall squarely within both the language of Section 10(b) and its broad purpose to "prevent practices that impair the function of stock markets in enabling people to buy and sell securities at prices that reflect undistorted estimates of the underlying economic value of the securities traded." *Sullivan & Long Inc. v. Scattered Corp.*, 47 F.3d 857, 861 (7th Cir. 1995).

The SEC has alleged in detail that Feldman (1) committed manipulative or deceptive acts by causing WWT and Vnetek to omit sales contingences terms from their purchase orders (Compl. 38-64); (2) in furtherance of scheme to overstate revenues and artificially inflate Riverstone's stock price (Compl. 1, 8); and (3) acted with scienter. (Compl. 4, 29-32, 41-44, 58) Feldman substantially participated in the scheme to defraud by negotiating two transactions with WWT and Vnetek in which he caused the purchase orders to omit material contract terms related to sell-through payment terms and rights of return, which if disclosed to the outside auditors, would have caused them to remove the revenues from Riverstone's quarterly and year end reports. "Conduct by the defendant that does not have a principal legitimate business purpose . . . may have a principal purpose of creating a false appearance." *Simpson,* 452 F.3d at 1051. Feldman's conduct in removing contract terms from the purchase orders and placing them

---

[4]    Although the Court in *Global Crossing* included reliance as a fourth element of proof, the SEC is not required to prove reliance. See *SEC v. Rana Research, Inc.*, 8 F.3d at 1364.

SEC's Opposition to Feldman's Motion to Dismiss
Case No. 06-CV-06384 CRB

instead in side letters had no legitimate business purpose, and was designed to enable Riverstone to improperly recognize revenue and to hide from the company's outside auditors the true nature of the transactions. "If a defendant's conduct or role in an illegitimate transaction has the principal purpose and effect of creating a false appearance of fact in the furtherance of a scheme to defraud, then the defendant is using or employing a deceptive device within the meaning of §10(b)." *Simpson*, 452 F.3d at 1050.

Feldman argues that he did not engage in any deception because he disclosed the terms of the side agreements to the chief executive officer (Pereira), the chief financial officer (Stanton) and the vice president of finance (McFarland) who were responsible for the company's accounting and internal controls. (Compl. 40, 46, 62) Feldman's disclosure of the side agreements to the other defendants does not absolve him of liability where he knew the very purpose of his transactions was to allow Riverstone to make misrepresentations about its revenues. (Compl. 41, 42, 58, 61). Although the purchase orders and side letters taken together are literally accurate, when the purchase order was recorded in Riverstone's books and records with out the contingent sales terms, they became devices which mislead the auditors and investors. See e.g. *SEC v. Currency Trading Intl, Inc.*, 2004 U.S. Dist. LEXIS 24992 *21-22 (C.D. 2004). The disclosure required by the federal securities laws is measured not by literal truth, but by the ability of material to accurately inform rather than mislead [investors]." *In re Convergent Technologies Sec. Lit.*, 948 F.2d 507, 512 (9th Cir. 1991).

Secondary actors who "create" misrepresentations are primarily liable even when they are not publicly identified with the misrepresentations. *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 235 F. Supp. 2d 549, 585-87 (S.D. Tex. 2002). If one who indirectly contributed to the dissemination of materially misleading information could not be held liable, the purpose of the rule would not be accomplished. "A rule that imposes liability only when a person is identified with a misrepresentation would place a premium on concealment and subterfuge rather than on compliance with the federal securities laws." *In Re Enron Corp.,* 235 F. Supp. 2d at 587. With respect to making false statements or omissions, "substantial participation or intricate involvement in the preparation of fraudulent statements is grounds for primary liability even

though that participation might not lead to the actor's actual making of the statements."

*Simpson*, 452 F.3d at 1048, quoting *Howard v. Everex Sys., Inc.*, 228 F.3d at 1061 n. 5.  Feldman

relies on *SEC v. Lucent Techs., Inc.*, 363 F. Supp 2d. 708 (D. N.J. 2005) is misplaced.  In *Lucent*,

the court dismissed fraud claims against a CFO because her statement to the company's chief

accountant that there were no side agreements was not a misrepresentation in the company's

financial statements.  *Lucent* is distinguishable, because Feldman's misleading purchase orders

are the very transactions which are included in the overstated revenue in the financial statements

filed with the SEC.  Feldman's creation of the misleading purchase orders allowed revenue to be

improperly recorded in Riverstone's books.

Defendant's motion to dismiss the SEC's First Claim should be denied.

**B.       The SEC Has Pled Aiding and Abetting With Sufficient Particularity**

Feldman moves to dismiss the aiding and abetting claims in the First and Second Claim

for Relief.  He asserts he cannot aid and abet Riverstone's fraud of overstating revenues in its

quarterly and annual reports or the company's failure to file accurate quarterly and annual

reports, because the SEC did not allege he had any role in accounting for the transactions or

preparing the reports, and therefore the SEC can not establish he provided substantial assistance.

The SEC alleges in the alternative that Feldman aided Riverstone's violations of Section

10(b) and Rule 10b-5, and that he aided the company in filing inaccurate annual and quarterly

reports with the SEC in violation of Section 13(a) of the Exchange Act, 15 U.S.C. § 78m(a), and

Rules  13a-1, 13a-13, and 12b-20, 17 C.F.R. §§ 240.13a-1, 240.13a-13, 240.12b-20.  Section

13(a) and the rules adopted under this section require public companies, with shares registered

with the SEC, to file periodic reports that contain accurate financial statements that are prepared

in accordance with GAAP.

To prove aiding and abetting liability, the SEC must prove (1) Riverstone violated the

relevant securities laws; (2) Feldman had knowledge of the primary violation and of his role in

furthering it; and (3) Feldman provided substantial assistance in achieving the primary violation.

*Ponce v. SEC*, 345 F.3d 722,737, (9th Cir. 2003); *SEC v. Fehn*, 97 F.3d 1276, 1288 (9th Cir.

1996).  As it relates to the aiding and abetting claims against Feldman, the SEC has alleged that

SEC's Opposition to Feldman's Motion to Dismiss
Case No. 06-CV-06384 CRB

Riverstone violated Sections 10(b) and 13(a) of the Exchange Act and the related rules by filing three periodic reports that overstated revenue by including revenue from transactions with sales contingencies that made recognizing the revenue improper under GAAP. (Compl 34, 35, 36). In two of the transactions that caused Riverstone's revenues to be overstated, Feldman obtained purchase orders that omitted contingent sales terms. (Compl. 38- 64) Feldman knew that these terms prevented the company from recognizing revenue under GAAP and so he recorded the contingent sales terms in side letters which he knew did not become part of Riverstone's accounting records from which the company calculated revenues. (Compl 4, 30, 42, 45, 46, 58, 61) Feldman's actions provided substantial assistance to the company, because he omitted the contingent sales terms from the purchase orders, Riverstone's accounting records and Riverstone's auditors. He knowingly falsified the company's books and records, and directly or indirectly misled Riverstone's outside auditors who audited or reviewed the company's financial statements required to be filed with the SEC. (Compl. 32, 56, 112, 123-124).

In *SEC v. Sandifur*, 2006 U.S. Dist LEXIS 12243 * 34-40, Fed. Sec. L. Rep (CCH) P 93,728 (W. D. Wash. 2006), the court dismissed claims of aiding and abetting where the complaint lacked any alleged connection between the defendants' involvement in structuring the transactions and their knowledge that it was being done for allegedly illegal purposes. In the present case, the complaint alleges that Feldman had actual knowledge that the transactions were structured in such a way as to permit improper reporting of revenue. (Compl 42, 58) The SEC has alleged sufficient facts to state claims that Feldman aided Riverstone's fraud violation by overstatement of revenues in three reports filed with the SEC, and its periodic reporting violations. Feldman's motion to dismiss the First and Second Claims for Relief should be denied.

### C.    The SEC Has Pled Facts That Show Feldman Violated the Books and Records Provisions

The SEC's Third and Fourth Claims for Relief allege that Feldman knowingly falsified Riverstone's books and records, and aided Riverstone's creation of such false records. Feldman violated the books and records provisions of Section 13(b)(5) of the Exchange Act, 15 U.S.C. §

SEC's Opposition to Feldman's Motion to Dismiss
Case No. 06-CV-06384 CRB

78m(b)(5), and Rule 13b2-1, 17 C.F.R. § 240.13b2-1, by obtaining the WWT and Vnetek purchase orders that omitted the contingent sales terms which made revenue recognition for those contracts improper.  He knew that the sole reason for omitting the contingent sales terms was to hide these terms from Riverstone's auditors so that revenue could be improperly recognized.  By omitting the contingent sales terms from the purchase orders, Feldman caused Riverstone's books and records to be inaccurate.   This same conduct aided Riverstone in violating Section 13(b)(2)(A) which requires the company to keep books and records that accurately reflect its transactions.

        The SEC does not agree that the particularized pleading standards of Rule 9(b) apply to its allegations that Feldman violated or aided violations of Section 13(b)(2) or 13(b)(5).  Fraud is not an essential element of claims under either provision.  Scienter is not an element of claims made under Section 13 of the Exchange Act and the regulations there under.  *SEC v. McNulty*, 137 F.3d 732, 740-41 (2d Cir. 1998).  In *McNulty*, the Second Circuit observed that Congress amended Section 13(b) in 1988 to impose *criminal* liability for "knowing[]" falsification, "plainly implying that falsification of the information to be filed in accordance with § 13(b) need not be knowing in order to lead to civil liability."  *Id.  See also Ponce v. SEC*, 345 F.3d 722, 737 n.10 (9th Cir. 2003) ("a plain reading of Section 13(b) reveals that it also does not impose a scienter requirement"); *SEC v. Yuen*, 2006 U.S. Dist. LEXIS 33938, *115-120 (C.D. Cal. March 16, 2006) (SEC not required to show scienter to establish violation of the periodic reporting, record keeping, and internal control requirements).

        The allegations of the complaint establish that Riverstone was required to keep books and records that accurately reflected its transactions, and to file quarterly and annual reports with the SEC that included accurate financial statements.  (Compl. 27)  Feldman caused Riverstone to improperly recognize revenue on the WWT and Vnetek sales transactions involving rights of return, exchange, cancellation, and other contingencies such as extended payment terms, which were not accounted for at the time of the transactions were originally recorded. (Compl. 38-64) Feldman agreed to these sales contingencies in side agreements in the WWT and Vnetek transactions which were not recorded in Riverstone's books. Feldman knowingly participated in

1   Riverstone's misstatements of revenues by negotiating the contingent sales terms and concealing

2   the sales contingencies from Riverstone's outside accountants. (Compl. 29-30, 32)  These

3   allegations state a claim for relief under Sections 13(b)(2) and 13(b)(5) of the Exchange Act.  If

4   the court finds that the pleading standards of Rule 9(b) apply because a "unified course of

5   fraudulent conduct" forms the basis of the claim, then as discussed above the SEC has pled fraud

6   with sufficient particularity and identified how Feldman falsified Riverstone's books by omitting

7   material terms in the WWT and Vnetek purchase orders.  Feldman's motion to dismiss the SEC's

8   Third and Fourth Claims for Relief should be denied.

9           **D.      The SEC Has Pled Facts Showing Feldman Deceived Riverstone's Auditors**

10          The court should deny Feldman's motion to dismiss the Sixth Claim for Relief alleging

11  that he violated Rule 13b2-2, 17 C.F.R. § 240.13b2-2, by deceived Riverstone's auditors. In

12  support of his argument, Feldman cites only half the rule.  Rule 13b2-2 can be violated by (a)

13  making materially false statements or omissions, or (b) "directly or indirectly take any action to

14  coerce, manipulate, mislead or fraudulently influence any independent public or certified public

15  accountant engaged in the performance of an audit or review of the financial statements of that

16  issuer that are required to be filed with the [SEC] . . . if that person knew or should have known

17  that such action, if successful, could result in the rendering the issuer's financial statements

18  materially misleading."  Contrary to Feldman's argument, the SEC has alleged specific facts

19  demonstrating that Feldman directly or indirectly took actions by obtaining purchase orders that

20  omitted sales contingencies in the WWT and Vnetek transactions to mislead Riverstone's

21  auditors in the performance of their audit or review of Riverstone's financial statements.

22  (Compl. 38-64)  Feldman knew or should have known that his actions taken for the purpose of

23  having the transactions pass audit, would lead to misstatements of revenue in Riverstone's

24  financial statements. (Compl. 42, 58)  The SEC's claim is not based on the representation letters

25  signed by Pereira, Stanton and McFarland. (Compl. 52-54, 78-79)  However, it may be inferred

26  from these allegations that Riverstone's auditors were conducting reviews or audits of the

27  financial statements during the quarters in which Feldman created the misleading purchase

28  orders.

SEC's Opposition to Feldman's Motion to Dismiss
Case No. 06-CV-06384 CRB

Feldman argues that he did not attempt to keep the side letters for the WWT and Vnetek transactions from the auditors. However, Feldman's prior acts of creating misleading purchase orders, which omitted the contingent sales terms, are the manipulative or misleading actions that violate Rule 13b2-2. Although the SEC does not believe it is required to allege a violation of Rule 13b2-2 under the particularized pleading requirements of Rule 9(b), the SEC has plead the allegations of deceit of accountants with sufficient particularity to meet those pleading requirements. Feldman's motion to dismiss the SEC's Sixth Claim for Relief should be denied.

## IV. CONCLUSION

The SEC has pled its five claims for relief against Feldman with sufficient particularity to meet the requirements of Rule 9(b). If the Court finds that the pleading requirements of Rule 9(b) are applicable to the Second, Third, Fourth and Sixth Claims, the Plaintiff has pled sufficient facts to advise the defendant of when and how he violated these provisions. If the Court determines that the Plaintiff has not sufficiently pled facts to support one or more of its claims, Plaintiff requests leave to file an amended complaint. Plaintiff respectfully requests that the Court deny Feldman's motion to dismiss in its entirety.

DATED: January 26, 2007

Respectfully submitted,


s/Leslie J. Hughes

Leslie J. Hughes Esq. (Colo. 15043)


s/Lee C. Robinson

Lee C. Robinson (Colo. 32734)


Attorneys for Plaintiff
Securities and Exchange Commission
1801 California Street, Suite 1500
Denver, CO  80202-2656
Telephone                    (303) 844-1000
Fax                              (303) 844-1068

CERTIFICATE OF SERVICE

I hereby certify that on January 26, 2006, I electronically filed the foregoing

PLAINTIFF'S OPPOSITION TO FELDMAN'S MOTION TO DISMISS with the Clerk of the

Court using the CM/ECF system which will send notification of such filing to the following

individuals at their e-mail addresses:

David Banie     david.banie@dlapiper.com, trina.walker@dlapiper.com

Angela Lucille Dunning     adunning@cooley.com,

Kara L. Erdodi     kara.erdodi@berliner.com, jwillson@berliner.com

William S. Freeman     freemanws@cooley.com, galancr@cooley.com

Rachael E. Meny     rem@kvn.com, efiling@kvn.com; pal@kvn.com

Nicolas Morgan     nicolas.morgan@dlapiper.com, jette.brasher@dlapiper.com

Elliot R. Peters     erp@kvn.com, efiling@kvn.com; aap@kvn.com

David Priebe     david.priebe@dlapiper.com, stacy.murray@dlapiper.com

Lee Conan Robinson     robinsonlc@sec.gov

David J. Schindler     david.schindler@lw.com, terri.lilley@lw.com, and

    kathryn.bowman@lw.com

Shana N. Stanton     sns@kvn.com, efiling@kvn.com; lhl@kvn.com; bdl@kvn.com

Neal J. Stephens     nstephens@cooley.com

Quyen Le Ta     qta@kvn.com

Frank R. Ubhaus     fru@berliner.com, cep@berliner.com

DATED:  January 26, 2007

s/Leslie J. Hughes
  Leslie J. Hughes

SEC's Opposition to Feldman's Motion to Dismiss
Case No. 06-CV-06384 CRB