DAVID J. SCHINDLER (CA Bar No. 130490)
david.schindler@lw.com
ROBERT W. PERRIN (CA Bar No. 194485)
robert.perrin@lw.com
TERRI L. LILLEY (CA Bar No. 222764)
terri.lilley@lw.com
Attorneys for Defendant Andrew Feldman
LATHAM & WATKINS LLP
633 W. Fifth Street, Suite 4000
Los Angeles, CA 90071-2007
Telephone: (213) 485-1234
Fax: (213) 891-8763

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>ROMULUS S. PEREIRA, et al.<br><br>Defendants. | Case No. 3:06-CV-06384 CRB<br><br>**ANDREW FELDMAN'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S COMPLAINT**<br><br>Date: February 16, 2007<br>Time: 10:00 a.m.<br>Courtroom: 8<br>Judge: Honorable Charles R. Breyer |

# TABLE OF CONTENTS

Page

I. INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II. ARGUMENT ............................................................................................................................ 2

    A. Andrew Feldman Cannot Be Liable as a "Primary Violator" under Section 10(b). ................................................................................................ 2

        1. Mr. Feldman Did Not "Substantially Participate" in the Preparation of Riverstone's SEC Filings. ................................................. 3

        2. Mr. Feldman Cannot Be Liable as a Primary Violator On the Basis of an Alleged "Scheme." ................................................................. 4

    B. The SEC Fails to Plead Facts Showing that Mr. Feldman "Aided and Abetted" Riverstone's Alleged Fraud. ................................................. 6

    C. The SEC Fails to Identify Any False Books and Records Created By Mr. Feldman. ............................................................................................. 8

    D. The SEC Does Not Plead Any Facts Supporting Its Claim that Mr. Feldman Deceived Riverstone's Accountants. ..................................... 10

III. CONCLUSION .................................................................................................................... 12

# TABLE OF AUTHORITIES

Page

## CASES

Dannenberg v. PaineWebber, Inc. (In re Software Toolworks, Inc. Sec. Litig.),
    50 F.3d 615 (9th Cir. 1994) ................................................................................................ 3

Howard v. Everex Systems, Inc.,
    228 F.3d 1057 (9th Cir. 2001) ......................................................................................... 3, 4

In re Daou Systems, Inc.,
    411 F.3d 1006 (9th Cir. 2006) ......................................................................................... 8, 10

Johnson v. Aljian,
    394 F. Supp. 2d 1184 (C.D. Cal. 2004) .............................................................................. 11

Landgraf v. USI Film Prods.,
    511 U.S. 244 (1994) ........................................................................................................... 11

McConville v. SEC,
    465 F.3d 780 (7th Cir. 2006) .............................................................................................. 11

Ponce v. S.E.C.,
    345 F.3d 722 (9th Cir. 2003) ................................................................................................ 6

SEC v. Dauplaise,
    2006 WL 449175 ................................................................................................................ 10

SEC v. Fehn,
    97 F.3d 1276 (9th Cir. 1996) ............................................................................................ 6, 7

SEC v. Gallagher,
    1989 WL 95252 (E.D. Pa. 1989) ........................................................................................ 11

SEC v. Lucent Technologies, Inc.,
    363 F. Supp. 2d 708 (D.N.J. 2005) .................................................................................. 4, 8

SEC v. Sandifur,
    2006 WL 538210 ............................................................................................................... 7, 8

SEC v. Todd,
    2006 WL 5412986 (E.D. Mich. 2006) ................................................................................ 11

Simpson v. AOL Time Warner, Inc.,
    452 F.3d 1040 (9th Cir 2006) ..................................................................................... passim

Vess v. Ciba-Geigy Corp.,
    317 F.3d 1097 (9th Cir. 2003) ........................................................................................ 8

**STATUTES**

15 U.S.C. §78j(b) et seq. ................................................................................... 2, 3, 4, 6

**OTHER AUTHORITIES**

Improper Influence on Conduct of Audits, SEC Release No. 47890, 80 S.E.C.
    Docket 770, 2003 WL 21148349 (May 20, 2003) ......................................................... 11

**RULES**

Fed. R. Civ. P. 12(b)(6) .............................................................................................. 2

Fed. R. Civ. P. 9(b) ................................................................................................... 2

**REGULATIONS**

17 C.F.R. § 240.10b-5 ................................................................................................ 6

17 C.F.R. § 240.12b-20 .............................................................................................. 6

17 C.F.R. § 240.13a-1 ................................................................................................ 6

17 C.F.R. § 240.13a-13 .............................................................................................. 6

17 C.F.R. § 240.13b2-1 ......................................................................................... 8, 10

17 C.F.R. § 240.13b2-2 .............................................................................. 2, 10, 11, 12

68 Fed. Reg. 31830 ................................................................................................. 11

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

In its Opposition to Defendant Andrew Feldman's Motion to Dismiss, the Securities and Exchange Commission ("SEC") confirms that Mr. Feldman is alleged to have been involved with only two of the 29 transactions at issue in the SEC's Complaint. The SEC further concedes – as it must – that these two transactions were *lawful*: they involved real customers and real product, and the sales documentation associated with both transactions was "literally accurate" and fully conveyed by Mr. Feldman to Riverstone Networks, Inc.'s ("Riverstone's") management and accounting department. Nevertheless, the SEC contends that Mr. Feldman may somehow be liable for securities fraud because of Riverstone's alleged failure to account for these transactions accurately in the company's financial statements, even as the SEC does not and cannot allege that Mr. Feldman had any role in Riverstone's accounting. For multiple reasons, the SEC's Complaint fails to state a claim against Mr. Feldman.

Mr. Feldman cannot be liable for securities fraud under Section 10(b) because the SEC has pled no facts suggesting that he substantially participated in the creation of the alleged false statements at issue in the Complaint. In its Opposition, the SEC indicates that the "misrepresentations" for which it sues Mr. Feldman are Riverstone's SEC filings (which contained its financial statements) – specifically the company's Form 10-Qs for the second and third quarters of fiscal year 2002, and the company's 2002 Form 10-K. (Opp. at 1). The Complaint, however, does not and cannot plead that Mr. Feldman had *any* role in the preparation of these filings, or in any related accounting. As a matter of black-letter Ninth Circuit law, this bars the SEC's claim that Mr. Feldman is liable as a "primary violator" of Section 10(b). See, e.g., Simpson v. AOL Time Warner, Inc., 452 F.3d 1040, 1048 (9th Cir 2006). Implicitly acknowledging as much, the SEC tries to save its claim by arguing alternatively in its Opposition that Mr. Feldman may be held liable under Section 10(b) as a participant in a "scheme." This argument is refuted by the SEC's own allegations. As the Simpson court expressly held, Mr. Feldman cannot be liable as a primary violator under Section 10(b) for engaging in lawful transactions that were later allegedly improperly accounted for by others. Id. at 1050.

The rest of the SEC's claims fail for similar reasons. The SEC pleads no facts to suggest that Mr. Feldman "substantially assisted" or knowingly participated with Riverstone in the allegedly improper accounting, and therefore the aiding and abetting claims against Mr. Feldman cannot survive. The SEC's "books and records" claims fail because the SEC cannot identify any "false" books and records created by Mr. Feldman; to the contrary, the SEC concedes the documents negotiated by Mr. Feldman were accurate, and the terms of the sales were fully disclosed to Riverstone's management and head of accounting. Again, as the Ninth Circuit has made clear, Mr. Feldman cannot be held liable for negotiating lawful transactions that were inappropriately accounted for by others. Finally, the SEC's "deceit of accountants" claim alleging violations of Rule 13b2-2 should be dismissed because the SEC is impermissibly attempting to apply current subsection (b) of the rule – which only came into existence in 2003 – retroactively, and in any event, because the SEC does not and cannot plead any facts suggesting that Mr. Feldman ever communicated with Riverstone's auditors at any time, much less deceived them.

As the deficiencies in the SEC's claims against Mr. Feldman cannot be cured by further amendment, the Complaint against Mr. Feldman should now be dismissed with prejudice under both Fed. R. Civ. P. 12(b)(6) and 9(b).

**II. ARGUMENT**

    **A. Andrew Feldman Cannot Be Liable as a "Primary Violator" under Section 10(b).**

The SEC advances two arguments contending that it has sufficiently pled that Mr. Feldman can be liable as a "primary violator" under Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. §78j(b) et seq.): (1) that Mr. Feldman "substantially participated" in creation of the false statements at issue in the Complaint, and (2) that Mr. Feldman was a participant in a "scheme," such that he has direct liability under Section 10(b). (Opp. at 7). The SEC's Complaint does not come near to pleading facts sufficient to state a claim under either theory.

1. Mr. Feldman Did Not "Substantially Participate" in the Preparation of Riverstone's SEC Filings.

As detailed in Mr. Feldman's Motion (Motion at 6-7), in order for a party that did not "make" a false statement to have direct liability under Section 10(b), the party must have "substantially participated" in the making of the statement. Howard v. Everex Systems, Inc., 228 F.3d 1057, 1061 n.5 (9th Cir. 2001). The Ninth Circuit has repeatedly confirmed that a defendant may only be liable on the basis of his "substantial participation" if the defendant had a significant role in the issuance of the challenged statements, namely by "signing and attesting" to the statement, or by "drafting or editing" the statement. Simpson, id.; Howard, id. (defendant who signed and attested to a statement can be a primary violator); Dannenberg v. PaineWebber, Inc. (In re Software Toolworks, Inc. Sec. Litig.), 50 F.3d 615 (9th Cir. 1994) (defendant who drafted and edited statement can be a primary violator).

Here, the SEC has conceded that the three allegedly false statements that form the basis of its Section 10(b) claim against Mr. Feldman consist of Riverstone's SEC filings for the second and third quarters of fiscal year 2002 (Form 10-Qs), and for the year ended March 2, 2002. (Opp. at 1).[1] Accordingly, in order to charge Mr. Feldman as a "maker" of these statements, the SEC must necessarily plead particularized facts showing that Mr. Feldman "substantially participated" in the preparation of these three SEC filings, *i.e.*, that Mr. Feldman signed them, attested to them, drafted them and/or edited them. The SEC alleges nothing of the kind. The Complaint does not contain a single allegation that Mr. Feldman ever saw Riverstone's SEC filings, much less that he "drafted," "edited," "signed" or "attested to" them. In the absence of such facts, the SEC cannot maintain its 10(b) claim against Mr. Feldman. See, e.g., Dannenberg, 50 F.3d at 628-69.

---

[1] The SEC's Complaint does not specifically plead that the two transactions negotiated by Mr. Feldman resulted in any misstatements in Riverstone's Form 10-K, although the SEC tries to fix this in its Opposition by claiming that revenue from the WorldWide Technology transaction was included in the 10-K, even as the Vnetek transaction was not. (Opp. at 3). Because these allegations are not included in the Complaint as pled, however, the SEC cannot be permitted to rely on them in opposing Mr. Feldman's Motion.

The SEC tries to get around this fundamental pleading defect by sleight of hand, stating that Mr. Feldman was "intricately involved" in the creation of "two misleading purchase orders that became part of the revenues Riverstone reported," and thus may be a primary violator of Section 10(b). (Opp. at 7). There are multiple defects in the SEC's logic. In the first place, the allegedly misleading "purchase orders" are <u>not</u> the false public statements alleged in the Complaint, and are <u>not</u> actionable under the federal securities laws. <u>SEC v. Lucent Technologies, Inc.</u>, 363 F. Supp. 2d 708, 724 (D.N.J. 2005)(dismissing Section 10(b) claim against accounting officer responsible in part for company financial statements, and who lied about the existence of side agreements in internal accounting letter, because she did not "make" the statements in Company's SEC filings). Nor are the purchase orders even "false," as the SEC acknowledges that these purchase orders were, together with the alleged side agreements, "literally accurate." (Opp. at 9).

Accordingly, in order to state a claim against Mr. Feldman as a "primary violator" of Section 10(b), the SEC cannot rely on the purchase orders, but must instead establish that Mr. Feldman "substantially participated" in making the false statements that are the basis of the claim, *i.e.*, Riverstone's SEC filings. <u>Howard</u>, <u>id.</u> Critically, the SEC fails to allege that Mr. Feldman had any role in preparing these SEC filings, or the financial statements contained therein, and its Section 10(b) claim should be dismissed.

> 2. Mr. Feldman Cannot Be Liable as a Primary Violator On the Basis of an Alleged "Scheme."

The SEC's argument that Mr. Feldman may be liable as a primary violator of Section 10(b) for his alleged participation in a "scheme" fares no better. In <u>Simpson</u>, the Ninth Circuit affirmed the dismissal of defendants who had engaged in legitimate transactions with Homestore.com, even as the defendants were alleged to have known that Homestore intended to improperly recognize revenue in connection with the transactions. 452 F.3d at 1048. While the court held that a defendant might conceivably be a primary violator of Section 10(b) if a plaintiff could plead facts sufficient to demonstrate that the defendant "engaged in conduct that had the

principal purpose and effect of creating a false appearance of fact in furtherance of the scheme," the court noted that "it is not enough that a *transaction* in which a defendant was involved had a deceptive purpose and effect; the defendant's *own* conduct contributing to the transaction or overall scheme must have had a deceptive purpose and effect." Id. at 1048-9 (emphasis in original). The court deemed the acts of creating a "sham business entity" or engaging in an "illegitimate transaction" to be "deceptive" conduct, but simultaneously made clear that involvement with a *legitimate* transaction that was mis-accounted for by others did not qualify: "Participation in a legitimate transaction, which does not have a deceptive purpose or effect, would not allow for a primary violation *even if the defendant knew or intended that another party would manipulate the transaction to effectuate a fraud*." Id. at 1050 (emphasis added).

Simpson requires dismissal of the SEC's claim. There are no allegations that the WWT and Vnetek transactions were "sham" or "illegitimate" transactions. Instead, it is undisputed that both the WWT and Vnetek transactions were legitimate transactions, involving real customers and shipments of real product. The SEC has furthermore acknowledged that the contractual documents negotiated by Mr. Feldman – a form purchase order reflecting standard terms, and a supplemental agreement including supplemental terms – were "literally accurate," and were conveyed in full by Mr. Feldman to Riverstone's management and accounting personnel, and thus could not have had a deceptive "effect" absent the misuse of the information by others. (Compl. ¶¶ 40, 45-46 & 62). Indeed, the SEC does not point to a single example of Mr. Feldman attempting to deceive or mislead anyone. As a matter of law, Mr. Feldman cannot be liable because the individuals charged with responsibility for preparing and attesting to Riverstone's financial statements and SEC filings allegedly failed to account for the transactions properly: "[A defendant] may not be held liable for participating in legitimate transactions that became 'deceptive' only when distorted by the willful or intentional fraud of another party." Id. at 1053. Even if the SEC's unsupported allegation that Mr. Feldman knew that Riverstone intended to account improperly for the WWT and Vnetek transactions was true, that is insufficient to state a claim under Simpson because the SEC cannot and does not plead any

5

facts to suggest that the transactions were "illegitimate." Id. at 1050. The SEC accordingly fails to plead facts sufficient to state a claim against Mr. Feldman under Section 10(b).

### B. The SEC Fails to Plead Facts Showing that Mr. Feldman "Aided and Abetted" Riverstone's Alleged Fraud.

As detailed in Mr. Feldman's Motion, the Complaint alleges that Mr. Feldman is liable for aiding and abetting Riverstone's violations of Sections 10(b) and 13(a) of the Exchange Act, and Rules 10b-5, 12b-20, 13a-1 and 13a-13. The SEC concedes in its Opposition that in order to state a claim for aiding and abetting, it must allege detailed facts suggesting that Mr. Feldman provided "substantial assistance" in Riverstone's violations, and acted with scienter. (Opp. at 11). The SEC fails on both counts to plead an aiding and abetting claim.

The Complaint is devoid of allegations suggesting that Mr. Feldman "substantially assisted" Riverstone in creating the false financial statements and SEC filings at issue. While the Opposition states that Mr. Feldman's "substantial assistance" consisted of "omitt[ing] the contingent sales terms from the purchase orders, Riverstone's accounting records and Riverstone's auditors" (Opp. at 11), this assertion finds no support in the SEC's Complaint. The purchase orders that were provided *by Riverstone's customers* (Compl. ¶¶ 43 & 59) did not contain the agreed-upon non-standard terms, but these terms were memorialized in supplemental agreements that the SEC admits Mr. Feldman fully disclosed to Riverstone's accounting personnel and management. (Compl. ¶¶ 40, 46 & 62). There are no allegations that Mr. Feldman had any responsibility for, or role in creating or maintaining, Riverstone's accounting records. Finally, there are no allegations that Mr. Feldman ever met with, or directly or indirectly communicated with, Riverstone's auditors.

Notably, the SEC fails to cite a single case that would support application of "aiding and abetting" liability to Mr. Feldman for his role in negotiating and fully disclosing two lawful transactions. In both of the cases cited by the SEC – Ponce v. S.E.C., 345 F.3d 722 (9th Cir. 2003) and SEC v. Fehn, 97 F.3d 1276 (9th Cir. 1996) (Opp. at 10) – the defendants charged with aiding and abetting had directly prepared the false statements at issue. See Ponce, 345 F.3d

6

at 738 (accountant was directly involved in the preparation of false financial statements); Fehn, 97 F.3d at 1293-94 (attorney who advised, prepared and reviewed alleged Form 10-Qs containing misstatements was liable for "substantially assisting" aiding and abetting). Because the SEC does not and cannot plead facts establishing that Mr. Feldman had any role in or responsibility for Riverstone's accounting or the preparation of its SEC filings, the SEC cannot plead that Mr. Feldman provided "substantial assistance" in Riverstone's alleged accounting fraud.

Moreover, the SEC also fails to plead that Mr. Feldman had the required "actual knowledge" that Riverstone intended to recognize revenue improperly in connection with the WWT and Vnetek transactions. Fehn, 97 F.3d at 1288, n. 11; SEC v. Sandifur, 2006 WL 538210 at *11 (W.D. Wash. Mar. 2, 2006) (pleading aiding and abetting claim requires that defendant have "actual knowledge" that conduct provided substantial assistance to alleged fraud). While the SEC alleges that Mr. Feldman was "aware that Riverstone intended to recognize revenue on the WWT transaction," and that the sale contingencies requested by WWT "would prevent revenue recognition under GAAP" (Comp. ¶ 42), such allegations do not suggest that Mr. Feldman knew that Riverstone intended to engage in fraud in connection with the lawful transactions he had negotiated. The Complaint does not allege, nor did Mr. Feldman have any way of knowing, *how* Riverstone intended to recognize revenue (*e.g*., through deferred recognition, with appropriate reserves, with the consent of Riverstone's auditors, etc.), or whether Riverstone actually did recognize any revenue in connection with the WWT or Vnetek transactions. The SEC's contention that Mr. Feldman was aware that "WWT's purchase order needed to omit any references to the contingencies if revenue was to be recognized" (Compl. ¶ 42) again does not equate to knowledge that putting non-standard terms in a supplemental agreement was to "substantially assist" a fraud. Whether or not sales contingencies were reflected on the purchase order, they were *fully disclosed* by Mr. Feldman to Riverstone, such that Riverstone's management and accounting personnel had all of the information they needed to account for the transactions correctly. The fact that the transactions were structured using two documents instead of one does not create any inference that Mr. Feldman had "actual

7

knowledge" that he was enabling a fraud. <u>Sandifur</u>, at *12 (allegations of defendants' knowledge of oddly structured transaction with "accounting snags" and "unusual transaction" involving shell company did not create inference of "knowledge" sufficient to support aiding and abetting claim).

Because the SEC fails to allege sufficient facts to show that Mr. Feldman provided substantial assistance to Riverstone's alleged securities law violations, or that Mr. Feldman had the requisite knowledge of Riverstone's alleged fraud, the aiding and abetting claims against Mr. Feldman fail at the pleading stage.

**C.    The SEC Fails to Identify Any False Books and Records Created By Mr. Feldman.**

The SEC also maintains that Mr. Feldman can be liable for creating "false books and records" under Section 13(b)(5) of the Exchange Act and Exchange Act Rule 13b2-1, and for aiding and abetting Riverstone's creation of such records. (Compl. ¶¶ 112 & 116). As detailed in Mr. Feldman's Motion, however, the SEC fails to identify any "false books and records" created by Mr. Feldman, and to plead any facts suggesting that Mr. Feldman provided "substantial assistance" to Riverstone.

In its Opposition, the SEC initially contends that it need not meet Rule 9(b)'s pleading standards because its "books and records" claims do not require proof of fraud or scienter. (Opp. at 12). This assertion is wholly without merit. Under settled Ninth Circuit law, where the Complaint "sounds in fraud," each claim must be pled with the particularity required by Rule 9(b). <u>See</u> <u>In re Daou Systems, Inc.</u>, 411 F.3d 1006, 1028 (9th Cir. 2006) (holding that claim that "sounds in fraud" must be pled with particularity under Rule 9(b), even if fraud not an element of the claim); <u>Vess v. Ciba-Geigy Corp.</u>, 317 F.3d 1097, 1103–04 (9th Cir. 2003) (same). <u>See</u> also <u>SEC v. Lucent Techs., Inc.</u>, 363 F. Supp. 2d 708 (D.N.J. 2005) (requiring Section 13 claim to be pled with particularity over SEC's objection that claim did not require proof of fraud).

As detailed in Mr. Feldman's Motion, the SEC's Complaint sounds entirely in fraud. The opening line of the Complaint charges that Mr. Feldman "engaged in a scheme that defrauded investors," (Compl. ¶ 1). The Complaint then alleges variously that Mr. Feldman "caused Riverstone to file . . . false and misleading financial statements" (¶ 35), "circumvented [Riverstone's] accounting controls" (¶ 7), and "concealed sales contingencies" (¶¶ 56 & 64). These allegations are all expressly realleged by the SEC in its Third and Fourth Claims for Relief alleging the creation of (or aiding and abetting the creation of) "false books and records." (Compl. ¶¶ 111 & 114). Moreover, the SEC's Fourth Claim for "aiding and abetting" necessarily includes a scienter component, *i.e.*, that Mr. Feldman possessed "actual knowledge" that Riverstone was creating false books and records. Accordingly, the SEC must meet the pleading standards of Rule 9(b) as to both its Third and Fourth Claims for Relief.

Under the required pleading standard, the SEC's allegations fall well short of pleading either claim. First, the SEC has not and cannot identify any "false" books and records that Mr. Feldman is charged with having created. The SEC has conceded that the transactional documentation that Mr. Feldman negotiated was "taken together, [] literally accurate." (Opp. at 9). That this documentation in no way constituted false or misleading records is further confirmed by the fact that Mr. Feldman relayed the full terms of the WWT and Vnetek transactions to Riverstone's management. (Compl. ¶¶ 40, 46 & 62).

Second, to the extent that the SEC attempts to plead that Mr. Feldman was liable for alleged false statements in Riverstone's SEC filings, its "books and records" claim once again founders on insufficiently pled allegations. The Opposition charges that "Feldman caused Riverstone to improperly recognize revenue on the WWT and Vnetek transactions involving rights of return, exchange, cancellation, and other contingencies such as extended payment terms, which were not accounted for at the time of [sic] the transactions were originally recorded." (Opp. at 12). But as discussed at length above, Mr. Feldman had no role of any kind in Riverstone's accounting or the preparation of its SEC filings. The Complaint contains <u>no</u> allegations suggesting that by disclosing all transaction terms to Riverstone management, Mr. Feldman was somehow causing or assisting Riverstone to "improperly recognize revenue." In

9

the absence of such allegations, the SEC cannot maintain its claims against Mr. Feldman under Section 13b and Rule 13b2-1. <u>SEC v. Dauplaise</u>, 2006 WL 449175 *8 (M.D. Fla. 2006) (dismissing "books and records" claim where SEC alleged defendant was aware of certain practices and made misrepresentations but failed to allege "how [the defendant's] actions affected any of [the company's] books, records and accounts").

**D. The SEC Does Not Plead Any Facts Supporting Its Claim that Mr. Feldman Deceived Riverstone's Accountants.**

The SEC attempts to avoid the pleading defects in its Sixth Claim for Relief, denominated "Deceit of Accountants," by alleging that the claim need not meet the pleading standards of Rule 9(b), and also asserting that Mr. Feldman's Motion ignores the fact that the SEC apparently is suing Mr. Feldman under subsection (b) of Rule 13b2-2, which prohibits "direct or indirect" interference with a financial statement audit or review. Neither argument saves the SEC's claim.

The SEC's contention that it need not plead its "Deceit of Accountants" claim with particularity (Opp. at 14) should be rejected outright. Not only does the SEC's entire Complaint sounds in fraud (as discussed in Section II.C above), but the Sixth Claim itself is expressly labeled "deceit," and once again realleges all of the Complaint's allegations of fraud by Mr. Feldman (Compl. ¶ 122). The Sixth Claim thus falls squarely within the pleading requirements of Rule 9(b). <u>See</u> <u>In re Daou</u>, 411 F.3d at 1028.

The SEC's contention that Mr. Feldman violated subsection (b) of Rule 13b2-2 must also be rejected because this subsection cannot be applied to Mr. Feldman's conduct as a matter of law. In its Opposition, the SEC contends that Mr. Feldman's Motion cites only "half" of Rule 13b2-2 (Opp. at 13), and that the section applicable to Mr. Feldman is subsection (b), which states, in pertinent part, that a corporate officer may not "directly or indirectly take any action to coerce, manipulate, mislead or fraudulently influence any independent public or certified public accountant engaged in the performance of an audit or review of the financial statements of that issuer that are required to be filed with the [SEC]." The SEC fails to note that

this subsection (b) was only added to Rule 13b2-2 by the SEC in May 2003, following passage of the Sarbanes-Oxley Act in June 2002.  See 17 C.F.R. § 240.13b2-2; 68 Fed. Reg. 31830; Improper Influence on Conduct of Audits, SEC Release No. 47890, 80 S.E.C. Docket 770, 2003 WL 21148349 (May 20, 2003).  This provision thus did not exist, and was not the law, at the time that Mr. Feldman allegedly engaged in the conduct at issue in 2001 and early 2002.  The SEC may not retroactively seek to apply a regulation that did not exist at the time of the challenged actions, and its claim must be dismissed for this reason alone.  See, e.g., Johnson v. Aljian, 394 F. Supp. 2d 1184 (C.D. Cal. 2004) (Sarbanes-Oxley Act cannot be applied retroactively), citing Landgraf v. USI Film Prods., 511 U.S. 244, 270 (1994)(retroactive application of laws can result in "unfairness of imposing new burdens on persons after the fact).

In any event, the SEC has not pled a single allegation suggesting that Mr. Feldman ever communicated with Riverstone's auditors, directly or indirectly, at any point in time.  There are no allegations that Riverstone's auditors ever asked Mr. Feldman for information, or that Mr. Feldman ever provided (or refused to provide) the auditors with information.  The SEC further does not allege that the "literally accurate" documents associated with the transactions negotiated by Mr. Feldman were ever provided to (or withheld from) Riverstone's auditors, much less that Mr. Feldman had any role in deciding what information should be given to the auditors.  See SEC v. Todd, 2006 WL 5412986 (E.D. Mich. 2006) (dismissing Rule 13b2-2 claims against officers where SEC failed to allege that officer had misrepresented the terms of a transaction in a meeting with auditor, and that officer submitted allegedly false order form to company auditors).[2]

---

[2] Notably, the SEC fails in its Opposition to cite a single authority in support of its Rule 13b2-2 claim against Mr. Feldman.  Indeed, it is clear from the case law that the appropriate circumstances to bring such a claim involve conduct where an officer had some role in, or responsibility for, communicating with company auditors.  See, e.g., McConville v. SEC, 465 F.3d 780, 789 (7th Cir. 2006) (finding that company chief financial officer violated Rule 13b2-2 by lying in management representation letters to auditors); SEC v. Gallagher, 1989 WL 95252, *7 (E.D. Pa. 1989) (finding company controller liable for supplying auditors with fake documentation and failing to tell them it was false).

1         Because the portion of Rule 13b2-2 relied upon by the SEC does not apply to Mr. Feldman, and because the SEC has not pled <u>any</u> facts, much less with the requisite particularity, sufficient to state a claim that Mr. Feldman deceived Riverstone's auditors in violation of Rule 13b2-2, the SEC's Sixth Claim for Relief should be dismissed.

### III.    CONCLUSION

For all of the foregoing reasons, and those contained in Mr. Feldman's Motion, the Court should grant Mr. Feldman's Motion to Dismiss all claims against Mr. Feldman. Further, because the defects in the SEC's Complaint are fundamental and cannot be remedied by amendment, this dismissal should be with prejudice.

Dated: February 6, 2007
      Los Angeles, California

Respectfully submitted,

LATHAM & WATKINS LLP

     s/David J. Schindler
David J. Schindler, Esq.
Robert W. Perrin, Esq.
Terri L. Lilley Esq.
LATHAM & WATKINS
633 West Fifth, Suite 4000
Los Angeles, CA 90071-2007
Telephone: (213) 485-1234
Fax: (213) 891-8763

Attorneys for Andrew Feldman

12