**TAB 1**


Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 538210 (W.D.Wash.), Fed. Sec. L. Rep. P 93,728
(Cite as: 2006 WL 538210 (W.D.Wash.))

Page 1

H

**Motions, Pleadings and Filings**

United States District Court,
W.D. Washington.
SECURITIES AND EXCHANGE COMMISSION,
Plaintiff,
v.
C. Paul SANDIFUR, Jr., Thomas G. Turner, Robert A. Ness, Thomas R. Masters, Dan W. Sandy, David R. Syre, and Trillium Corporation,
Defendants.
No. C05-1631C.

March 2, 2006.
Helane L. Morrison, Kristin A. Snyder, Robert Lee Mitchell, San Francisco, CA, for Plaintiff.

Robert S. Mahler, Bullivant Houser Bailey, Laurence B. Finegold, Stephen M. Rummage, Charles S. Wright, Davis Wright Tremaine LLP, Jeffrey B. Coopersmith, Kit W. Roth, Piper Rudnick Gray Cary, Barry M. Kaplan, Douglas W. Greene, Wilson Sonsini Goodrich & Rosati, James L. Magee, Graham & Dunn, Spencer Hall, Jr., Hall Zanzig Zulauf Claflin McEachern, Brendyn P. Ryan, David F. Taylor, Ronald L. Berenstain, Perkins Coie, Seattle, WA, Thomas L. Hutchinson, Bullivant Houser Bailey, Portland, OR, Nicolas Morgan, Piper Rudnick Gray Cary, Los Angeles, CA, Mark Edmund Vovos, Spokane, WA, for Defendants.

ORDER

COUGHENOUR, J.

I. INTRODUCTION

*1 This matter has come before the Court on the following motions: (1) Defendant Ness's motion to dismiss, or for a more definite statement and to strike request for disgorgement (Dkt. No. 23); (2) Defendant Masters's joinder in Defendant Ness's motion (Dkt. No. 34); (3) Defendant Sandy's motion to dismiss (Dkt. No. 27); and (4) Defendants Trillium Corporation and David Syres's motion to dismiss (Dkt. No. 26). Having carefully considered the papers filed by the parties in support of and in opposition to the motions, the Court has determined that no oral argument shall be necessary. For the reasons that follow, Defendant Ness's motion to dismiss is DENIED in part and GRANTED in part, Defendant Masters's motion to dismiss is DENIED, and Defendants Trillium, Syre, and Sandy's motions to dismiss are GRANTED in part and DENIED in part.

II. BACKGROUND

Plaintiff, the Securities & Exchange Commission ("SEC"), filed a complaint alleging that Defendants, several former executives and business associates of Metropolitan Mortgage & Securities Co. ("Metropolitan"), participated in a fraudulent scheme to mislead investors about the company's financial performance. (Compl.¶ 1.)

In February 2004, Metropolitan, a real estate sales and finance company with $2 billion in assets, went into bankruptcy. (Compl.¶ 1.) The complaint alleges that the bankruptcy caused about 10,000 investors in the Pacific Northwest holding approximately $450 million in Metropolitan securities to lose all, or a substantial portion, of their investments. (Id.)

The complaint alleges that prior to the bankruptcy, Metropolitan and the defendants in this action schemed to improperly boost the company's revenues through four real estate transactions conducted in the third and fourth quarters of Metropolitan's fiscal year 2002. (Id. ¶ 3.) The transactions are alleged to be improper in that Metropolitan recognized an immediate gain in each of the transactions despite having financed the entire purchase price itself through a variety of mechanisms. (Id. ¶ 2.) Under Generally Accepted Accounting Principles ("GAAP"), "a seller may not recognize an immediate gain on the sale of undeveloped real estate unless the buyer makes an independent initial investment of at least 20% of the purchase price." (Id.)

The complaint asserts the following claims against Defendant Ness:
(1) violations of Section 17(a) of the Securities Act;
(2) violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder;
(3) aiding and abetting Metropolitan's violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder;
(4) aiding and abetting Metropolitan's filing of

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 538210 (W.D.Wash.), Fed. Sec. L. Rep. P 93,728
(Cite as: 2006 WL 538210 (W.D.Wash.))

Page 2

false annual reports in violation of Section 13(a) of the Exchange Act and Rules 12b-20 and 13a-1 thereunder;
(5) aiding and abetting Metropolitan's filing of false quarterly reports in violation of Section 13(a) of the Exchange Act and Rules 12b-20 and 13a-13 thereunder;
*2 (6) circumventing internal accounting controls in violation of Section 13(b)(5) of the Exchange Act and Rule 13b2-1 thereunder;
(7) aiding and abetting Metropolitan's failure to keep accurate books and records in violation of Section 13(b)(2)(A) of the Exchange Act;
(8) aiding and abetting Metropolitan in failing to maintain adequate internal accounting controls in violation of Section 13(b)(2)(B) of the Exchange Act;
(9) making or causing to be made false statements and omissions to accountants in violation of Rule 13b2-2 under the Exchange Act; and
(10) making false Sarbanes-Oxley certifications in violation of Rule 13a-14 under the Exchange Act.

Claims (1), (2), (3), (4), (6), (7), and (8) are also asserted against Defendant Masters. Claims (3) and (4), alleging aiding and abetting violations of Sections 10(b) and 13(a) of the Exchange Act, are asserted also against Defendants Sandy, Syre and Trillium. Each of the pending motions to dismiss seeks to dismiss all of the claims against its respective defendant.

III. ANALYSIS

*A. Applicable standard*

Fed. R. Civ. P. 12(b)(6) provides that an action will be dismissed for failure to state a claim upon which relief may be granted. A court will grant dismissal only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45--46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). While a court must accept all material allegations in the complaint as true and construe them in the light most favorable to the nonmoving party, conclusory allegations of law or unwarranted inferences of fact urged by the nonmoving party are insufficient to defeat a motion to dismiss. Ove v. Gwinn, 264 F.3d 817, 821 (9th Cir.2001). In addition, a court's obligation to construe allegations in the light most favorable to the nonmoving party does not mean that those allegations must be construed in a light favorable to the nonmoving party, if such a construction cannot reasonably be made.

*B. Defendant Ness's motion to dismiss*

Defendant Ness moves to dismiss the claims against him on the grounds that they do not comply with the particularity requirements of Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) requires that "[i]n all averments of fraud ..., the circumstances constituting fraud ... shall be stated with particularity." Fed. R. Civ. P. 9(b). The Ninth Circuit has held that "allegations of fraud [must be] specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir.1985). The parties agree that the requirements of Rule 9(b) are satisfied if the complaint provides the who, what, where, when and how of the alleged fraud. (*See* SEC Opp'n 3 (citing *SEC v. Buntrock*, 2004 WL 1179423 at *3 (N.D.Ill. May 25, 2004)); Ness Mot. 2 (citing *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir.1994)).) Failure to satisfy Rule 9(b) will result in dismissal of the claims. *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir.1989).

*3 Rule 9(b) applies not only to claims in which fraud is an essential element, but also to claims grounded in allegations of fraudulent conduct. *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1103--1104 (9th Cir.2003). In the case at bar, the SEC's first and second claims allege violations of Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act, and Rule 10b-5 thereunder. Fraud is an essential element of both of these claims. Therefore, these claims are subject to the requirements of Rule 9(b). The SEC's sixth, ninth and tenth claims are based on the same course of allegedly fraudulent conduct as the first and second claims, and are therefore, pursuant to the Ninth Circuit's holding in *Vess*, also subject to the requirements of Rule 9(b). 317 F.3d at 1103--1104 (explaining that where a plaintiff alleges "a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim ... the claim is said to be 'grounded in fraud' or to 'sound in fraud' and the pleading of that claim as a whole must satisfy ... Rule 9(b)").

*1. First and second claims*

The SEC's first and second claims allege that Defendant Ness violated Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act, and Rule 10b-5 thereunder by making false

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 538210 (W.D.Wash.), Fed. Sec. L. Rep. P 93,728
(Cite as: 2006 WL 538210 (W.D.Wash.))

Page 3

statements or omissions in connection with the offer or sale of Metropolitan securities. These are the antifraud provisions of the Securities Acts. *SEC v. Rubera,* 350 F.3d 1084, 1094 (9th Cir.2003) (citing *SEC v. Dain Rauscher, Inc.,* 254 F.3d 852, 856 (9th Cir.2001)). These antifraud provisions prohibit the making of material misstatements or omissions. *Dain Rauscher,* 254 F.3d at 856. In addition to alleging the falsity and materiality of a statement, the SEC must adequately allege scienter. "A showing of scienter is an element of an enforcement action pursuant to the antifraud provisions of the Securities Acts." *Rubera,* 350 F.2d at 1094 (citing *Aaron v. SEC,* 446 U.S. 680, 701--02, 100 S.Ct. 1945, 64 L.Ed.2d 611 (1980)). "Scienter is 'a mental state embracing intent to deceive, manipulate, or defraud." ' *Id.* (citing *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 194 n. 12, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976)).

For the reasons that follow, the Court DENIES Defendant Ness's motion as to all but the alleged misstatements in the Form S-2.

*a. Fraud and misstatements*

*i. Misstatements*

Paragraphs 24, 25, 58, 59 and 60 of the complaint collectively allege that Defendant Ness made material misstatements in two public documents, the Form 10-Q for the third quarter of fiscal 2002 and the Form 10-K for fiscal 2002. The alleged material false statements were about Metropolitan's pre-tax net income. According to the complaint, Metropolitan (and Defendant Ness) improperly recognized gains on four real estate transactions, referred to as the Trillium/Jeff Properties, Grand Hills, Neighborhood I and Neighborhood II transactions, allowing Metropolitan to report pre-tax net income in the millions of dollars for the third quarter of fiscal 2002 and for fiscal 2002, rather than a loss. (Compl.¶¶ 24, 25, 58, 59.) Both the 10-Q and the 10-K containing the alleged false reports of pre-tax net income are alleged to have been, and were in fact, signed by Defendant Ness. Defendant Ness's signature on these documents is sufficient to expose him to potential liability as a primary violator under § 10(b). *Howard v. Everex Sys., Inc.,* 228 F.3d 1057, 1061 (9 th Cir.2000). Because the complaint specifically alleges that the 10-Q and the 10-K misstated Metropolitan's pre-tax net income, the Court finds that the complaint identifies with sufficient particularity the alleged misstatements made by Defendant Ness in these documents.

*4 In addition to the 10-Q and the 10-K, the complaint identifies a third public filing, a Form S-2 filed in March 2003, which contained the allegedly false financial results for fiscal 2002. Unlike its allegations regarding the 10-Q and the 10-K, however, the complaint neglects to connect Defendant Ness to the alleged misstatements in the Form S-2. Therefore, to the extent that the SEC's complaint seeks to state a claim against Defendant Ness holding him accountable for the alleged misstatements in the Form S-2, this portion of the complaint is dismissed without prejudice.

*ii. Fraud*

The complaint alleges that Defendant Ness acted fraudulently in the Trillium/Jeff Properties, Neighborhood I, and Neighborhood II transactions.

Trillium/Jeff Properties

Paragraph 27 of the complaint alleges:
> Given the size of the [sale of the property to Trillium], Metropolitan asked its outside auditors, Ernst & Young, LLP ("E & Y"), whether Metropolitan would be able to recognize an immediate gain on the sale. However, E & Y rejected gain treatment, and advised Turner and Ness that it would violate GAAP to record a gain on a real estate sale where Metropolitan and a company related to it supplied 100% of the financing.

(Compl.¶ 27.) This paragraph thus alleges that Ness was informed of the pertinent GAAP rule and its prohibition on the recognition of gains on sales where Metropolitan and companies related to it supplied 100% of the financing.

Paragraphs 28 through 31 explain how Defendants Sandifur, Turner, and Sandy worked to restructure the deal, allegedly finally deciding on the following:
> [T]he parties decided to use a new shell company, to be formed by Sandy, to make the purchase. The shell company would get 80% financing from Metropolitan. Meanwhile, Old Standard would make a loan to Trillium, which would be funneled to the shell company so that the shell could make a 20% down payment....Sandy would later transfer the property to Trillium.

(Compl.¶ 30.) Although the complaint does not allege that Ness was involved in the engineering of the deal, it does allege that "Sandifur, Turner and Ness discussed the restructured deal and they each knew that Sandy would establish a shell company, which would hide the fact that Trillium was the real

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 538210 (W.D.Wash.), Fed. Sec. L. Rep. P 93,728
(Cite as: 2006 WL 538210 (W.D.Wash.))

Page 4

purchaser of the property, and that Metropolitan and a related company were providing 100% financing for Trillium's acquisition." (*Id.* ¶ 32.) These two paragraphs thus allege that Ness knew that in the restructured deal, (1) Trillium was allegedly still the "real" purchaser; and (2) Metropolitan and a related company were providing 100% financing for the transaction.

When Defendant Ness later communicated with Ernst & Young about the restructured deal, though he did inform them that "Sandy, through the shell company, would purchase the properties," he failed to inform them that "Metropolitan and a company related to it were providing 100% financing for Sandy's purchase." (*Id.* ¶ 33.) In addition to this omission, the complaint alleges that Defendant Ness "falsely stated that Sandy was unrelated to Trillium and was purchasing the properties independently for his own development purposes." (*Id.*) Thus, these assertions together with ¶ 27 allege that Defendant Ness, despite knowing that Ernst & Young had previously expressly rejected Metropolitan's attempt to recognize a gain on a sale to Trillium in which Metropolitan and a related entity provided 100% of the financing, knowingly concealed from Ernst & Young that in the restructured deal, Trillium was still the purchaser and that Metropolitan and/or a related company were still providing 100% financing for the transaction.

*5 According to these allegations, the conduct constituting the alleged fraud is not that Defendant Ness's misstatements violated a GAAP rule, nor that Defendant Ness was associated with a transaction involving a shell company, but that Defendant Ness allegedly knowingly concealed information he knew was critical to Ernst & Young's approval of the deal. For these reasons, the Court finds that the SEC's allegations are sufficient to state the fraud element of the securities fraud claim against Defendant Ness with respect to his alleged involvement in the Trillium/Jeff Properties transaction.

Neighborhood I

The Neighborhood I transaction was completed by the end of June 2002 and reported in Metropolitan's financial results for the third quarter of 2002. (Compl.¶ 54.) Similar to the Trillium/Jeff Properties transaction, 100% of the financing for Neighborhood I was alleged to have been provided by Metropolitan and its related companies. (*Id.* ¶ 55.)

GAAP violations (including overstatement of revenues) may provide the underpinning for a securities fraud claim. *In re Daou Sys., Inc.,* 411 F.3d 1006, 1016 (9th Cir.2005). However, "the plaintiff must show with particularity how the adjustments affected the company's financial statements and whether they were material in light of the company's overall financial position." *Id.* at 1018. This showing may be made by alleging "(1) such basic details as the approximate amount by which revenues and earnings were overstated; (2) the products involved in the contingent transaction; (3) the dates of any of the transactions; or (4) the identities of any of the customers or company employees involved in the transactions." *Id.* at 1016 (quotations and citations omitted). In the present case, all of the suggested allegations have been made as follows: (1) revenues of $2 million and an improperly recognized gain of $930,000 [FN1] (Compl.¶ 54); (2) an undeveloped property (*id.*); (3) third quarter of 2002 (*id.*); and (4) Defendants Turner, Ness and Sandifur structured the deal (*id* ¶ 56) and the buyer was a developer called Neighborhood (*id.* ¶ 54). The $2 million in revenues represents over 30% of the real estate sales revenues in the quarter, and 5.7% of total revenues for the quarter.

> FN1. Defendant Ness's argument regarding the absence of any express mention of GAAP in ¶¶ 54 through 57, discussing Neighborhood I, is irrelevant. Paragraph 2 of the complaint sets forth the allegedly applicable GAAP rule. Paragraph 55's description of Neighborhood I clearly demonstrates that Neighborhood I falls into the ambit of the GAAP rule identified in ¶ 12.

In light of the above, and because Defendant Ness did not contest the materiality of the alleged overstatement, the Court finds that the SEC's allegations are sufficient to state the fraud element of a claim for securities fraud against Defendant Ness with respect to Neighborhood I. [FN2]

> FN2. Though Defendant Ness argues that his individual and specific role in the alleged fraud was not alleged with sufficient specificity, none of the cases he cites support his argument in the context of the present case. *Riley v. Brazeau* involved a complaint alleging facts on information and belief. 612 F.Supp. 674, 677 (D.Or.1985). Unlike in *Hokama v. E.F. Hutton Co.,* where the complaint was found to be deficient because it conclusorily alleged

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 538210 (W.D.Wash.), Fed. Sec. L. Rep. P 93,728
(Cite as: 2006 WL 538210 (W.D.Wash.))

Page 5

"participation" and "substantial assistance," 566 F.Supp. 636, 646 (C.D.Cal.1983) the present complaint alleges "[t]he transaction was structured by Sandifur, Turner, Ness and Masters" (Compl.¶ 56). In other words, rather than merely alleging participation in some unspecified manner, the complaint alleges that Defendant Ness, together with others, structured the deal (a specific act). Finally, unlike the complaint in *Newman v. Comprehensive Care Corp.*, which referred generically to "defendants", 794 F.Supp. 1513, 1527 (D.Or.1992), the present complaint specifically names Defendant Ness.

Neighborhood II

Neighborhood II allegedly transpired on or about September 30, 2002. (Compl.¶ 48.) The structure of the deal was substantially similar to the Neighborhood I and Trillium/Jeff Properties deals in that it was allegedly 100% financed by Metropolitan and its related companies. (*Id.* ¶ 49, 50.) Defendant Ness, along with Defendant Sandifur, Turner, and Masters, allegedly structured the deal. (*Id.* ¶ 50.) The transaction yielded $3.5 million in revenues and a reported gain of $1.4 million. Because the SEC's allegations regarding Neighborhood II contain all of the information suggested by *Daou* as sufficient, the Court finds that the SEC's allegations are sufficient to state the fraud element of a claim for securities fraud against Defendant Ness with respect to Neighborhood II.

*b. Materiality*

*6 In the context of a Rule 10b-5 claim, "a misrepresentation or omission is material if there is a substantial likelihood that a reasonable investor would have acted differently if the misrepresentation had not been made or the truth had been disclosed." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 947 (9th Cir.2005). "[T]o fulfill the materiality requirement[,] there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available." *Basic Inc. v. Levinson*, 485 U.S. 224, 231–32, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). *Basic* emphasized that the inquiry to be undertaken is a fact-specific one. *Id.* at 240. The Ninth Circuit has held that materiality is only appropriately determined as a matter of law if it is "so obvious that reasonable minds could not differ." *Fecht v. Price Co.*, 70 F.3d 1078, 1081 (9th Cir.1995).

In the present case, Defendant Ness challenges the materiality of the alleged misstatement relating to the Neighborhood II transaction. According to the complaint, Metropolitan improperly recognized a gain of $1.4 million in the fourth quarter of fiscal 2002 on the Neighborhood II transaction. (Compl.¶ 48.) In their attempts to demonstrate the materiality of the transaction, the parties calculate the gain and/or revenue as a percentage of various aggregate results, including total pre-tax net income for fiscal 2002 of $6.1 million (Opp'n 12:7 (yielding 22.9%)), total allegedly fraudulent gain reported in fiscal 2002 (Reply 7: 11 (yielding 10%)), and total revenue for fiscal 2002 (*id.* 7:18 (yielding 2%)). While the Court is inclined to agree that calculating the $1.4 million as a percentage of pre-tax net income (thereby arriving at the significant-seeming 22.9%) is a rather arbitrary and meaningless exercise, the Court is also wary of drawing a bright-line rule regarding what percent is to be considered material as a matter of law. Although Defendant Ness cites many cases involving numbers, the Court is mindful that the materiality inquiry is a fact-specific one. *Basic Inc.*, 485 U.S. at 240. Moreover, one of the cases cited by Defendant Ness found that 2% of quarterly revenue was not material as a matter of law. *Shuster v. Symmetricon, Inc.*, 1997 WL 269490, at *8 (N.D.Cal. Feb.25, 1997). Here, the $3.5 million in revenue associated with the Neighborhood II transaction, though only 2% of *annual* revenue, could have represented roughly 8% of *quarterly* revenue. [FN3] Thus, even the *Shuster* Court might have hesitated to make a similar pronouncement in the present case. For the foregoing reasons, and because the dispute between the parties amply demonstrates the ease with which reasonable minds could differ as to the materiality of the Neighborhood II transaction, the Court declines to find that the Neighborhood II transaction is immaterial as a matter of law.

> FN3. In the absence of actual data in the record, the Court calculated the 8% figure by dividing Metropolitan's annual revenue into 4 equal quarterly amounts. The Court recognizes that Metropolitan's fourth quarter revenues might actually have been more or less than one-fourth of its total annual revenues.

*c. Scienter*

*7 Scienter is a necessary element of alleged

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 538210 (W.D.Wash.), Fed. Sec. L. Rep. P 93,728
(Cite as: 2006 WL 538210 (W.D.Wash.))

Page 6

violations of Section 17(a), Section 10(b) and Rule 10b-5. *Aaron v. SEC,* 446 U.S. at 701--02. This element may be satisfied by recklessness. *Dain Rauscher,* 254 F.3d at 856.

> Reckless conduct is conduct that consists of a highly unreasonable act, or omission, that is an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.

*Id.* (quotes omitted). The SEC is correct that the more stringent pleading requirements set forth in the Private Securities Litigation Reform Act of 1995 ("PSLRA") do not apply to enforcement actions brought by the Commission. Thus, to satisfy Fed.R.Civ.P. 9(b), the SEC need only state that scienter existed. *Fecht,* 70 F.3d at 1082 (citing *In re GlenFed, Inc. Sec. Litig.,* 42 F.3d 1541, 1547 (9th Cir.1994)).

The allegations recited in the Court's discussion of the Trillium/Jeff Properties transaction allege scienter with the necessary degree of particularity (Defendant Ness allegedly knowingly concealed information he knew was critical to Ernst & Young's approval of the deal). In addition to those allegations already discussed, the complaint also states "Ness knew, or [was] reckless in not knowing, that it was improper for Metropolitan to recognize" the gain on the Trillium/Jeff Properties transaction. (Compl.¶ 36.) Since an allegation of recklessness is enough to allege the scienter element, *Dain Rauscher,* 254 F.3d at 856, the Court finds that the SEC's complaint successfully alleges scienter with respect to the Trillium/Jeff Properties transaction.

Unlike in the Trillium/Jeff Properties transaction, which did not take place until the fourth quarter of 2002, there are no allegations that Defendant Ness had been *told* that the transaction would violate GAAP. Instead, the complaint relies on allegations regarding Defendant Ness's training and position in the company (Compl.¶ 12) to support its allegation that he "knew or was reckless in not knowing" that it was improper for Metropolitan to recognize revenue on the Neighborhood I transaction (*id.* ¶ 56) and that it was improper to recognize the gain in Metropolitan's 10-Q for that quarter (*id.* ¶ 57). Nevertheless, this specific aspect of the complaint removes it from that class of dismissible complaints seeking to infer scienter from the alleged GAAP violations. *See Daou,* 411 F.3d at 1016 (discussing how violations of GAAP may provide "powerful indirect evidence of scienter"). In other words, rather than arguing that scienter may be inferred from an alleged GAAP violation, the present complaint directly alleges that Defendant Ness either knew or was reckless in not knowing that it was improper to recognize a gain on Neighborhood I.

Defendant Ness argues that the Neighborhood 1 scienter allegations are deficient because they do not mention GAAP by name. However, the complaint alleges that Defendant Ness knew or was reckless in not knowing the principle of the rule. Whether or not Defendant Ness knew the name of the rule is not important if he knew or was reckless in not knowing that what he was doing was wrong, and yet persisted in doing it.

*8 For these reasons, the Court finds that the SEC's complaint successfully alleges scienter with respect to the Neighborhood I transaction. For the same reasons, the SEC's complaint successfully alleges scienter with respect to the Neighborhood II transaction.

*2. Sixth, ninth and tenth claims*

The sixth, ninth and tenth claims allege that Defendant Ness violated three provisions of Section 13 of the Exchange Act and rules promulgated under that section by the Commission. As already stated above, because these three claims rest on the same allegations of fraudulent conduct as the first and second claims, they are subject to the pleading standards of Fed. R. Civ. P. 9(b). Also as already stated above, the parties agree that the requirements of Rule 9(b) are satisfied if the complaint provides the who, what, where, when and how of the alleged fraud. (*See* SEC Opp'n 3 (citing *SEC v. Buntrock,* 2004 WL 1179423 at *3 (N.D.Ill. May 25, 2004)); Ness Mot. 2 (citing *In re GlenFed, Inc. Sec. Litig.,* 42 F.3d 1541, 1548 (9th Cir.1994)).)

As Defendant Ness himself points out, the sixth and the tenth claims contain no factual allegations in addition to the conduct alleged to be securities fraud. Similar to the Court's findings with respect to the first and second claims, the Court finds that the sixth claim is pled with sufficient particularity as to the 10-Q and the 10-K, but not as to the Form S-2. Defendant Ness's motion as to this claim is DENIED. The tenth claim alleges that Defendant Ness signed a false Sarbanes-Oxley certification that was included in Metropolitan's 2002 10-K. (Compl.¶ 94.) In addition to this specific allegation, the claim also relies on and incorporates the complaint's other preceding allegations. Like in the first, second and

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 538210 (W.D.Wash.), Fed. Sec. L. Rep. P 93,728
(Cite as: 2006 WL 538210 (W.D.Wash.))

Page 7

sixth claims, the Court finds that the allegations adding up to the tenth claim provide the who (Defendant Ness), what (false certification), when (filed December 31, 2002), where (in the 2002 10-K), and how (by signing it) necessary to allow Defendant Ness to prepare his defense. Therefore, the tenth claim is pled with sufficient particularity and Defendant Ness's motion as to this claim is DENIED.

The ninth claim alleges that Defendant Ness violated Rule 13b2-2 by making false statements and omissions to outside auditors. The Court discussed Defendant Ness's alleged misstatements and omissions above in its analysis of the Trillium/Jeff Properties transaction. In that analysis, the Court concluded that the SEC had pled with sufficient particularity that Defendant Ness (who) had knowingly concealed information he knew was critical to Ernst & Young's approval of the deal (what). In addition to these core details, the complaint specifies that the communications occurred in September 2002. The Court finds that these allegations provide sufficient detail and information for Defendant Ness to prepare his defense with respect to his September 2002 communications with E & Y about the Trillium/Jeff Properties transaction.

*9 The complaint also alleges that two other false statements were made by Defendant Ness to E & Y: (1) a written statement provided to E & Y in or about December 2002 representing that Jeff Properties had a successful history in commercial property development and that Jeff Properties intended to develop the properties and pay off the loan to Metropolitan (Compl.¶ 38); and (2) a letter to E & Y dated December 27, 2002, representing that "Metropolitan's consolidated financial statements for fiscal 2002 were presented in conformity with GAAP, and that [he] was not aware of fraudulent conduct by any officer or employee with a significant role in the company's system of internal controls" (id. ¶ 39).

Defendant Ness contends that his alleged representation that Jeff Properties had a successful history in commercial property development is not fraudulent because Jeff Properties was controlled by Defendant Sandy (a detail allegedly disclosed to E & Y (Compl.¶ 33)) and because Defendant Sandy "was experienced with commercial real estate ventures" (Def. Ness's Mot. 18 (citing to Compl. ¶ 16)). However, ¶ 16 does not support the latter assertion-- rather, ¶ 16 says only that Defendant Sandy "owns ... some real estate ventures." Paragraph 16 makes no assertions as to the type of real estate ventures owned or what Defendant Sandy's involvement in them entailed. In addition, even if Defendant Sandy had been alleged to have experience in commercial real estate ventures, this is not the same as *Jeff Properties* having that experience, and certainly not the same as *Jeff Properties* having a *successful history* in property development. Indeed, the complaint alleges that Jeff Properties was formed for the purpose of taking part in the Trillium/Jeff Properties deal (Compl.¶ ¶ 33, 34), necessarily meaning that Jeff Properties had *no* history of commercial property development. For these reasons, the Court does not find that the complaint contains internal inconsistencies regarding Jeff Properties. In addition, the Court finds that the SEC's allegations regarding Defendant Ness's (who) provision of the December 2002 (when) written statement (what) to E & Y (who) provide the necessary detail to enable Defendant Ness to prepare his defense.

Finally, Defendant Ness's objections to the December 27, 2002 letter are covalent with his objections to the underlying allegations regarding fraudulent conduct and false financial statements. (Mot.18.) Since the Court found that the SEC has pled the underlying conduct and false financial statements with the requisite degree of particularity, the Court also finds that the ninth claim is adequately pled as to the December 27, 2002 letter.

Though Defendant Ness argues that the allegations "lump" him together with Defendant Turner in such a manner that he cannot be expected to know what allegations pertain to him, the Court has already addressed and rejected this argument. *See* n. 2. In conclusion, the Court finds that the ninth claim is pled with sufficient particularity as to all three alleged misstatements and omissions to allow Defendant Ness to prepare his defense. Accordingly, Defendant Ness's motion as to this claim is DENIED.

*3. Third, fourth, fifth, seventh and eight claims*

*10 The third, fourth, fifth, seventh and eighth claims assert that Defendant Ness aided and abetted violations of the securities laws. Defendant Ness's objections to these claims are covalent with his objections to the SEC's first and second claims regarding primary violations. For the same reasons as stated above in its discussion of the first and second claims, the Court finds that the aiding and abetting claims are alleged with sufficient particularity. Therefore, Defendant Ness's motion as to these claims is DENIED. [FN4]

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 538210 (W.D.Wash.), Fed. Sec. L. Rep. P 93,728
(Cite as: 2006 WL 538210 (W.D.Wash.))

Page 8

FN4. Defendant Ness's argument that allegations naming defendants other than and in addition to Defendant Ness and stating that they "reviewed," "commented on," or "signed" documents are insufficiently particular is not supported by the case he cites. The complaint in *Morgan v. Prudential Group, Inc.* alleged that a defendant "participated in drafting, preparation and review". 81 F.R.D. 418, 425 (S.D.N.Y.1978). Here, the allegation is not that Defendant Ness took some unspecified participatory action related to these action verbs, but that he *actually* "reviewed," "commented on," and "signed" documents.

*4. Disgorgement claim*

Defendant Ness moves to strike the SEC's disgorgement claim pursuant to Fed. R. Civ. P. 12(f), which provides that a court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Disgorgement is a remedy. *See, e.g., SEC v. Rind,* 991 F.2d 1486, 1490 (9th Cir.1993). "The theory behind the remedy is deterrence." *Id.*

In the present case, where the Court has found that the SEC's complaint presents sufficiently detailed allegations of fraudulent conduct against Defendant Ness, it would appear that the remedy is available, *see SEC v. First Pac. Bancorp,* 142 F.3d 1186, 1191 (9th Cir.1998), and would be appropriate if the SEC prevails. One line of cases cited to by Defendant Ness refers to situations in which the requested remedy is simply unavailable as a matter of law. The other line of cases cited involved situations in which courts found that the SEC had failed to *establish* that disgorgement was warranted. Thus, none of these cases supports the argument that the SEC's disgorgement claim should be stricken at the pleading stage, when all that is necessary at that stage is that the Court find that disgorgement would be appropriate if the SEC prevails in its case-in-chief. Accordingly, Defendant Ness's motion as to the disgorgement claim is DENIED.

*C. Defendant Masters's joinder in Defendant Ness's motion to dismiss*

Defendant Masters filed his answer to the complaint on December 1, 2005. On December 9, 2005, he filed a notice of joinder in Defendant Ness's motion to dismiss. The SEC opposes the motion as untimely. It is true that according to the provisions of Rule 12(b)(6), a motion to dismiss on a 12(b) basis is untimely if it is made after an answer has been filed. Fed. R. Civ. P. 12(b) ("A motion making any of these defenses shall be made before pleading."). However, 12(h) and 12(c) together preserve a party's ability to make the 12(b)(6) defense at any time. These sections provide that "a defense of failure to state a claim upon which relief can be granted ... may be made ... by motion for judgment on the pleadings", Fed. R. Civ. P. 12(h), and that "after the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings," Fed. R. Civ. P.12(c). *See also* 5C Wright & Miller, Federal Practice and Procedure: Civil 3d § 1361 at 95 (2004). Therefore, though Defendant Masters would be precluded from filing a motion called a 12(b)(6) motion to dismiss, he was not precluded from filing a motion to dismiss for failure to state a claim. For these reasons, the Court will allow Defendant Masters to join in Defendant Ness's 12(b)(6) motion.

*11 The complaint's allegations regarding Defendant Masters are quite limited in comparison to the allegations regarding Defendant Ness. Regarding Defendant Masters, the complaint alleges in pertinent part: (1) he "was Metropolitan's Vice President for property sales and development from March 2002 through February 2003 and reported directly to Sandifur" (Compl.¶ 13); (2) he knew or was reckless in not knowing the applicable GAAP rule (*id.* ¶ 23); (3) together with Defendants Sandifur, Turner and Ness, he structured the Neighborhood II transaction (*id.* ¶ 50); (4) he knew or was reckless in not knowing that the Neighborhood II sale was to be 100% financed by Metropolitan and a related company (*id.* ¶ 51); and (5) he knew or was reckless in not knowing that Western United's cost basis in the Neighborhood II land was materially higher than reported (*id.* ¶ 53).

As with Defendant Ness, the Court finds that with respect to Defendant Masters, the complaint states with sufficient particularity the who, what, when, where, and how of the alleged fraudulent conduct. Most of these required details have already been addressed by the Court in its discussion of Defendant Ness's motion. *See supra* at 9. As for Defendant Masters's specific participation, the complaint alleges that he "structured" the Neighborhood II deal, an allegation that satisfies the requirements of Rule 9(b). *See supra* note 2.

Similarly, the complaint alleges the scienter element with sufficient particularity as to Defendant Masters.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 538210 (W.D.Wash.), Fed. Sec. L. Rep. P 93,728
(Cite as: 2006 WL 538210 (W.D.Wash.))

Page 9

*See supra* at 11--12.

For these reasons, and the reasons already set forth in the Court's discussion of Defendant Ness's motion, Defendant Masters's motion to dismiss for failure to state a claim is hereby DENIED.

*D. Defendants Trillium/Syre and Sandy's motions to dismiss*

Claims (3) and (4), alleging aiding and abetting violations of Sections 10(b) and 13(a) of the Exchange Act, are asserted against Defendants Trillium, Syre and Sandy. All three of these defendants were alleged to be involved in the transaction referred to as the Trillium/Jeff Properties transaction. Since the allegations regarding these three defendants are substantially similar in all important respects, the Court will treat their motions to dismiss together.

The parties agree that in order to state a claim for aiding and abetting, the SEC must allege that a defendant "knowingly provide[d] substantial assistance to another person in violation" of the federal securities laws. 15 U.S.C. § 78t(e). However, the parties disagree as to whether "recklessness" may satisfy this requirement of "knowing" assistance. The Ninth Circuit, in *SEC v. Fehn,* commented that the PLSRA revived the SEC's ability to bring injunctive actions for aiding and abetting violations and "restore[d] the pre-*Central Bank* status quo with respect to SEC injunctive actions." 97 F.3d 1276, 1288 (9th Cir.1996) (referring to *Central Bank of Denver of Denver v. First Interstate Bank of Denver,* 511 U.S. 164, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994) (abrogating aiding and abetting liability under the securities laws)). However, the *Fehn* Court recognized in a footnote that the PSLRA differed from the pre-*Central Bank* jurisprudence in one significant way--expressly requiring "knowledge" as an element of aiding and abetting, rather than permitting reckless disregard to support an aiding and abetting claim. *Id.* n. 11. *See also United States v. Tarallo,* 380 F.3d 1174, 1184 (9th Cir.2004) (recognizing that to prove liability on an aiding and abetting theory, the government had to show that the defendant "intentionally aided" his co-workers "in committing their own frauds"). Accordingly, the Court must determine whether the SEC has sufficiently alleged that Defendants Trillium, Syre, and Sandy had actual knowledge that they were providing substantial assistance to Metropolitan in executing the alleged fraud.

*12 Although the parties make some show of disputing what the pertinent alleged fraud is, it is fairly clear that the alleged fraud in question is Metropolitan's recognition and reporting of the gain on the Trillium/Jeff Properties transaction. (*See, e.g.,* Defs. Trillium/Syre's Reply 2--3 (recognizing that the alleged fraud related to incorrect accounting treatment and/or defrauding or investors).) Thus, in order to have stated a claim against these defendants for aiding and abetting violations, the complaint must allege that they had actual knowledge that the Trillium/Jeff Properties transaction was structured in such a way as to permit the improper reporting of the gain from the transaction. The complaint does not do so. Defendants Trillium and Syre's reply succinctly and accurately describes the complaint's allegations thus:

(i) Trillium and Metropolitan reached a tentative agreement for Trillium to borrow money from Metropolitan and to buy two properties from Metropolitan; (ii) Ernst & Young identified some "accounting snags" with the proposed transaction, and Metropolitan sought to restructure the transaction in order to address Ernst & Young's concerns; (iii) the parties agreed to restructure the transaction so that the properties would be sold to a company formed by Sandy; (iv) all the material facts about the transaction were disclosed to Metropolitan; (v) Ernst & Young found that the restructured transaction remedied the problems and approved Metropolitan's plan to recognize income from the restructured sale; and (vi) the parties closed the transaction.

(Defs. Trillium/Syre's Reply 2.) Though the SEC's opposition characterizes the Trillium/Jeff Properties transaction as "highly atypical," the actual allegations of the complaint neither expressly make this statement, nor are they sufficient to support such a conclusion. Moreover, even if Defendants Trillium, Syre, and Sandy knew that the transaction was "highly atypical," atypicality does not, by itself, establish that a transaction is fraudulent or improper. *See, e.g., Neilson v. Union Bank of Cal.,* 290 F.Supp.2d 1101, 1120--21 (C.D.Cal.2003) (allowing circumstantial allegations *including* atypicality to suffice in alleging the knowledge element).

Most important, however, is the total lack of any alleged connection between these defendants' involvement in structuring the transaction and their knowledge that it was being done for allegedly illegal purposes. Of these three defendants, only Defendant Syre is alleged to have had any knowledge about why the deal had to be restructured. However, even his alleged knowledge that the deal had to be

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 538210 (W.D.Wash.), Fed. Sec. L. Rep. P 93,728
(Cite as: 2006 WL 538210 (W.D.Wash.))

Page 10

restructured because of "accounting snags" (Compl. ¶ 28) does not lead to an inference that he knew that the restructured deal was improper or fraudulent. If Defendant Sandifur used only the term "accounting snags" to explain the situation to Defendant Syre, without additional allegations asserting that Defendant Syre knew what the snags were and why they were a problem for Metropolitan, the Court cannot impute to Defendant Syre any knowledge regarding Metropolitan's intended improper or fraudulent conduct. As to the other two defendants, Trillium and Sandy, the complaint contains *no* allegations that would support an inference that they knew the allegedly improper or fraudulent purpose of the restructured deal. (*See, e.g.,* Compl. ¶ 29, 30, 31 (alleging only that Defendant Turner negotiated with a Trillium Vice President and Defendant Sandy, and not referring to any communications regarding the reason for the continued negotiations).) Similarly, the facts that Defendant Sandy set up a shell company and that Jeff Sandy was allegedly given a motorcycle in exchange for his participation as the sole shareholder of the shell company, while perhaps unusual, are not necessarily indicative of improper or fraudulent behavior.

*13 For these reasons, the Court finds that the SEC's complaint fails to allege the necessary knowledge element of an aiding and abetting claim. Accordingly, the SEC's aiding and abetting claims against Defendants Trillium, Syre, and Sandy must be DISMISSED.

Defendants Trillium, Syre, and Sandy urge that the dismissal of the claims against them be a dismissal with prejudice. Fed. R. Civ. P. 15(a) provides that leave to amend a complaint or pleading "shall be freely given when justice so requires." The Ninth Circuit has directed district courts to consider the presence of bad faith, undue delay, prejudice to the opposing party, and futility, "with all inferences in favor of granting the motion [to amend]." *Griggs v. Pace Am. Group, Inc.,* 170 F.3d 877, 880 (9th Cir.1999); *Howey v. United States,* 481 F.2d 1187, 1190 (9th Cir.1973).

Although Defendants emphasize that the SEC has had ample opportunity to conduct discovery and to compose better allegations, Defendants do not contend that the insufficiency of the complaint is due to bad faith. More importantly, Defendants have not shown that prejudice will result from amendment, *see, e.g., DCD Programs, Ltd. v. Leighton,* 833 F.2d 183, 187 (9th Cir.1987) (requiring that the party opposing amendment bear the burden of demonstrating prejudice), only reiterating their unsupported assertion that the SEC, as "no ordinary litigant," ought not to receive the benefit of Rule 15(a).

Dismissal without leave to amend is not appropriate where it appears that plaintiffs have "a reasonable chance of successfully stating a claim if given another opportunity." *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1053 (9th Cir.2003) (remanding a case in which "plaintiffs' allegations were not frivolous, plaintiffs were endeavoring in good faith to meet the heightened pleading requirements and to comply with court guidance ... and, most importantly, [where] it appears that plaintiffs had a reasonable chance of successfully stating a claim"). Here, although the deficiencies in Plaintiffs' complaint were not mere technicalities, they are not of an incurable nature. Therefore, amendment may not be futile.

Finally, the Court does not find that delay is a factor in this case.

For these reasons, the Court's dismissal of the third and fourth claims against Defendant Trillium, Syre, and Sandy is without prejudice.

IV. CONCLUSION

In accordance with the foregoing, Defendant Ness's motion to dismiss is DENIED in part and GRANTED in part, Defendant Masters's motion to dismiss is DENIED, and Defendants Trillium, Syre, and Sandy's motions to dismiss are GRANTED in part and DENIED in part. Claims (3) and (4) against Defendants Trillium, Syre, and Sandy are DISMISSED without prejudice. The SEC is directed to file an amended complaint within 45 days of the date of this order.

Not Reported in F.Supp.2d, 2006 WL 538210 (W.D.Wash.), Fed. Sec. L. Rep. P 93,728

**Motions, Pleadings and Filings (Back to top)**

• 2006 WL 1857623 (Trial Motion, Memorandum and Affidavit) Plaintiff Securities and Exchange Commission's Opposition to Defendant C. Paul Sandifur's Motion for Limited Stay (May 31, 2006)Original Image of this Document (PDF)

• 2006 WL 1857621 (Trial Pleading) Thomas R. Masters' Answer to Amended Complaint and Affirmative Defenses (May 19, 2006)Original Image

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 538210 (W.D.Wash.), Fed. Sec. L. Rep. P 93,728
(Cite as: 2006 WL 538210 (W.D.Wash.))

Page 11
Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 538210 (W.D.Wash.), Fed. Sec. L. Rep. P 93,728
(Cite as: 2006 WL 538210 (W.D.Wash.))
Page 11

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 538210 (W.D.Wash.), Fed. Sec. L. Rep. P 93,728
(Cite as: 2006 WL 538210 (W.D.Wash.))

Page 11
Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 538210 (W.D.Wash.), Fed. Sec. L. Rep. P 93,728
(Cite as: 2006 WL 538210 (W.D.Wash.))                                                                                                   Page 11

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 538210 (W.D.Wash.), Fed. Sec. L. Rep. P 93,728
**(Cite as: 2006 WL 538210 (W.D.Wash.))**

Page 11

of this Document (PDF)

- 2006 WL 1857622 (Trial Motion, Memorandum and Affidavit) Defendant Dan W. Sandy's Motion to Dismiss Amended Complaint (May 19, 2006)Original Image of this Document (PDF)

- 2006 WL 1499914 (Trial Pleading) Amended Complaint (Apr. 17, 2006)Original Image of this Document (PDF)

- 2006 WL 500705 (Trial Motion, Memorandum and Affidavit) Defendant Robert A. Ness's Reply in Support of Motion for Revised Case Scheduling Order (Jan. 27, 2006)Original Image of this Document (PDF)

- 2005 WL 2889582 (Trial Pleading) Complaint (Sep. 22, 2005)Original Image of this Document (PDF)

- 2005 WL 3818563 (Trial Motion, Memorandum and Affidavit) Plaintiff Securities and Exchange Commission's Opposition to Defendant Robert A. Ness's Motion for Revised Case Scheudling Order (Jan. 23, 2005)Original Image of this Document (PDF)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.