

**TAB 3**



# H

*1 17 CFR Part 240

S.E.C. Release No.

Securities Exchange Act of 1934
Investment Company Act of 1940
Financial Reporting

IMPROPER INFLUENCE ON CONDUCT OF AUDITS
File No. S7-39-02
RIN 3235-AI67
May 20, 2003

AGENCY: Securities and Exchange Commission.

ACTION: Final rule.

SUMMARY: As directed by section 303 of the Sarbanes-Oxley Act of 2002, we are
adopting rules to prohibit officers and directors of an issuer, and persons acting
under the direction of an officer or director, from taking any action to coerce,
manipulate, mislead, or fraudulently influence the auditor of the issuer's
financial statements if that person knew or should have known that such action, if
successful, could result in rendering the financial statements materially
misleading.

EFFECTIVE DATE: [Insert 30 days after publication in the Federal Register]

FOR FURTHER INFORMATION CONTACT: Michael J. Kigin, Associate Chief Accountant, or
Robert E. Burns, Chief Counsel, at (202) 942-4400, Office of the Chief Accountant,
or David M. Estabrook, Associate Chief Accountant, at (202) 942-4510, Division of
Enforcement, U.S. Securities and Exchange Commission, 450 Fifth Street, NW,
Washington, DC 20549.

SUPPLEMENTARY INFORMATION: We are redesignating rule 13b2-2 of Regulation 13B-2
[FN1] as rule 13b2-2(a) and adding new rules 13b2-2(b) and (c).

I. EXECUTIVE SUMMARY

On July 30, 2002, the Sarbanes-Oxley Act of 2002 (the "Act") [FN2] was enacted.
Section 303(a) of the Act states:
It shall be unlawful, in contravention of such rules or regulations as the
Commission shall prescribe as necessary or appropriate in the public interest and
for the protection of investors, for any officer or director of an issuer, or any
other person acting under the direction thereof, to take any action to fraudulently
influence, coerce, manipulate, or mislead any independent public or certified
accountant engaged in the performance of an audit of the financial statements of
that issuer for the purpose of rendering such financial statements materially
misleading.

As mandated by the Act, the Commission is adopting rules to implement section
303(a). [FN3] The rules, in combination with the existing rules under Regulation

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

13B-2, are designed to ensure that management makes open and full disclosures to, and has honest discussions with, the auditor of the issuer's financial statements. These rules prohibit officers or directors of an issuer, or persons acting under their direction, from subverting the auditor's responsibilities to investors to conduct a diligent audit of the financial statements and to provide a true report of the auditor's findings.

## II. DISCUSSION OF FINAL RULES

### A. Introduction

   The new rules supplement the rules currently in Regulation 13B-2, which address the falsification of books, records and accounts [FN4] and false or misleading statements, or omissions to make certain statements, to accountants. [FN5] New rule 13b2-2(b)(1) specifically prohibits officers and directors, and persons acting under their direction, from coercing, manipulating, misleading, or fraudulently influencing (collectively referred to herein as "improperly influencing") the auditor of the issuer's financial statements when the officer, director or other person knew or should have known that the action, if successful, could result in rendering the issuer's financial statements materially misleading. [FN6] New rule 13b2-2(b)(2) provides examples of actions that improperly influence an auditor that could result in "rendering the issuer's financial statements materially misleading." This paragraph also clarifies that such actions should not occur at any time that the auditor is called upon to exercise professional judgment related to the issuer's financial statements. New rule 13b2-2(c) applies similar provisions to audits of investment companies' financial statements.

### B. Discussion

   *2 Definition of "issuer." In the proposing release, we noted that the definition of the term "issuer" in section 3 of the Securities Exchange Act of 1934 ("Exchange Act") would apply to the term as used in the rule. This definition includes, with certain exceptions, any person who issues or proposes to issue securities. [FN7] One commenter noted that this definition would include all private issuers of securities and suggested that we use the definition of "issuer" in the Sarbanes-Oxley Act. [FN8] The definition in that Act generally would limit application of the rule to issuers whose securities are registered with the Commission under section 12 of the Exchange Act, that are required to file reports with the Commission under section 15(d) of the Exchange Act, or that have filed registration statements with the Commission that have not yet become effective and have not been withdrawn. [FN9] We continue to believe that the definition of the term "issuer" in section 3 of the Exchange Act applies to the use of the term in the new rules. [FN10] The term "issuer," as defined in the Exchange Act, has been used in Rule 13b2-2 since it was adopted in 1979, [FN11] and we believe that the amendments do not require a change in the meaning of the term. In addition, because the new rule specifically applies to improperly influencing auditors of issuers' financial statements "that are required to be filed with the Commission," the commenter's concern that this definition would extend the scope of the rule to all private issuers of securities has been addressed. Accordingly, the term "issuer" in the new rule should be defined as stated in section 3 of the Exchange Act.

   Definition of "officer." New rule 13b2-2(b)(1) addresses activities by an officer or director of an issuer, or any other person acting under the direction of an officer or director. [FN12] The Commission has defined the term "officer" to include the company's "president, vice president, secretary, treasurer or principal financial officer, comptroller or principal accounting officer, and any person

routinely performing corresponding functions with respect to any organization whether incorporated or unincorporated." [FN13] The term "executive officer" includes an issuer's chief executive officer and other officers who perform policy-making functions for the issuer. [FN14]

Some commenters suggested that the term "officer" should include all those responsible for corporate governance matters [FN15] or who influence the preparation of an issuer's financial statements. [FN16] Commenters also suggested that the definition include an issuer's general counsel or chief legal officer. [FN17] We do not believe at this time that it is necessary to amend the existing definition of "officer" or "executive officer," or to write a new definition specifically for Regulation 13B-2. The existing definitions cover, among others, those who set corporate governance policies and legal policies for an issuer. Should we note that members of management not encompassed by the existing definitions of "officer" and "executive officer" are engaging in the conduct addressed in the rule, we may revisit this issue.

*3 Definition of "under the direction." As noted above, new rule 13b2- 2(b)(1) covers the activities of not only officers and directors of the issuer who engage in an attempt to misstate financial statements but also "any other person acting under the direction thereof." Activities by such "other persons" currently may constitute violations of the anti-fraud or other provisions of the securities laws [FN18] or aiding or abetting [FN19] or causing [FN20] an issuer's violations of the securities laws. Section 303(a) and the new rule provide the Commission [FN21] with an additional means of addressing efforts by persons acting under the direction of an officer or director to improperly influence the audit process and the accuracy of the issuer's financial statements.

As noted in the proposing release, we interpret Congress' use of the term "direction" to encompass a broader category of behavior than "supervision." [FN22] In other words, someone may be "acting under the direction" of an officer or director even if they are not under the supervision or control of that officer or director. Such persons might include not only the issuer's employees but also, for example, customers, vendors or creditors who, under the direction of an officer or director, provide false or misleading confirmations or other false or misleading information to auditors, or who enter into "side agreements" that enable the issuer to mislead the auditor. [FN23] In appropriate circumstances, persons acting under the direction of officers and directors also may include not only lower level employees of the issuer [FN24] but also other partners or employees of the accounting firm (such as consultants or forensic accounting specialists retained by counsel for the issuer) and attorneys, securities professionals, or other advisers who, for example, pressure an auditor to limit the scope of the audit, to issue an unqualified report on the financial statements when such a report would be unwarranted, [FN25] to not object to an inappropriate accounting treatment, or not to withdraw an issued audit report on the issuer's financial statements. In the case of a registered investment company, persons acting under the direction of officers and directors of the investment company may include, among others, officers, directors, and employees of the investment company's investment adviser, sponsor, depositor, administrator, principal underwriter, custodian, transfer agent, or other service providers. [FN26]

Commenters on this discussion in the proposing release were divided. Some believe that some form of specific instruction or direction from an officer or director should be required before the rule should apply to "other persons." [FN27] Others expressed the opposite view that no specific direction should be required, [FN28] that the conduct should be considered illegal whether or not the person was acting

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

under the direction of an officer or directory, [FN29] and that the rule should
apply to anyone who, lies to or misleads the auditor [FN30] and to all those who
have responsibilities or activities relevant to the financial statements. [FN31]
Still others suggested that we neither define the term "under the direction" nor
provide examples. [FN32] As noted above, we continue to believe that "direction"
encompasses a broader category of behavior than supervision, and may include the
activities of third parties who participate in an effort to improperly influence
the auditor when those third parties knew or should have known that the effect of
their conduct would be to render an issuer's financial statements materially
misleading.

   *4 Some commenters were concerned that including customers, vendors and creditors
in the discussion of those persons who, in appropriate circumstances, might be
considered to be acting under the direction of an officer or director would have a
chilling effect on communications between those persons and the auditors. [FN33]
Other commenters noted that this chilling effect would be enhanced by the
Commission's position in the proposing release that negligently misleading the
auditor was sufficient conduct to trigger application of the rule. [FN34] In
particular, some commenters noted that a misleading legal analysis should violate
the rule only if accompanied by fraudulent or "bad" intent on the part of the
attorney providing the analysis. [FN35] These comments would appear to be based on
the premise that in the past the Commission has not addressed the negligent
communication of misleading information to auditors and that the new rule,
therefore, would chill communications during the audit process and thereby lower
the quality of the audit process. To the contrary, for many years we have initiated
enforcement actions against those who, by negligently providing misleading
confirmations to auditors, cause [FN36] an issuer to violate the financial
reporting or books and records provisions of the Securities Exchange Act of 1934.
[FN37] The new rule, by providing an additional means of addressing such conduct,
should provide more credibility and integrity to the audit process. We believe that
third parties providing information or analyses to an auditor should exercise
reasonable attention and care in those communications. [FN38] A primary purpose for
enactment of the Sarbanes-Oxley Act is the restoration of investor confidence in
the integrity of financial reports, which will require the cooperation of all
parties involved in the audit process. We do not intend to hold any party
accountable for honest and reasonable mistakes or to sanction those who actively
debate accounting or auditing issues. We do believe, however, that those third
parties who, under the direction of an issuer's officers or directors, mislead or
otherwise improperly influence auditors when they know or should know that their
conduct could result in investors being provided with misleading financial
statements or a misleading audit report, should be subject to sanction by the
Commission. [FN39]

   "Fraudulently influence." New rules 13b2-2(b)(1) and (c)(2) address certain
actions "to coerce, manipulate, mislead, or fraudulently influence" the auditor of
the issuer's financial statements. Much of the conduct addressed by the rules,
particularly efforts to "manipulate or mislead" the auditor, generally would be
subject to other provisions of the securities laws and the Commission's
regulations, including the existing rules in Regulation 13B-2. [FN40] The new
rules, however, would provide an additional means to address conduct to coerce,
manipulate, mislead, or fraudulently influence an auditor during his or her
examination or review of the issuer's financial statements, including conduct that
did not succeed in affecting the audit or review. [FN41]

   *5 In the proposing release, we noted that in the rule the word "fraudulently"
modifies influence but not coerce, manipulate or mislead. Several commenters

          ©  2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

suggested that the Commission should amend this interpretation and state that "fraudulently" modifies all four types of conduct. [FN42] Some commenters indicated that intent to materially mislead the auditor should be required [FN43] and others stated any attempt to purposely skew the issuer's disclosure should violate the rule. [FN44] One commenter noted that fraudulent intent should not be required for officers, directors or employees, but should be required for third parties such as vendors and customers. [FN45]

We have decided not to amend our view that the word "fraudulently" modifies only "influence." To emphasize this point, we have reordered the words to place "fraudulently influence" at the end of the list instead of at the beginning. [FN46] The new rule, therefore, reads that no officer or director or person acting under his or her direction "shall directly or indirectly take any action to coerce, manipulate, mislead, or fraudulently influence" any accountant engaged in the performance of an audit or review of an issuer's financial statements.

In the context of the new rule, the words "coerce" and "manipulate" imply compelling the auditor to act in a certain way through pressure, threats, trickery, intimidation or some other form of purposeful action, [FN47] and further modifiers are not necessary. Regarding the term "mislead," pre-existing rule 13b2-2 for many years has prohibited officers and directors from directly or indirectly making or causing to be made materially misleading statements to auditors. Causing [FN48] misleading statements to be made to auditors has included, and will continue to include, an officer or director entering into an arrangement with a third party to send a misleading continuation or to provide other misleading information or data to the auditor of the issuer's financial statements. [FN49] The new rule does not alter this approach. As noted above, a primary purpose for enactment of the Sarbanes-Oxley Act is the restoration of investor confidence in the integrity of financial reports. Such a purpose would not be served by imposing what would amount to a new scienter requirement on the pre-existing provision prohibiting officers and directors from causing misleading statements or omissions to be made to auditors.

Types of Conduct. As stated in the proposing release, types of conduct that the Commission believes could constitute improper influence (if the person engaged in that conduct knows or should know that the conduct, if successful, could result in rendering the issuer's financial statements materially misleading) include, but are not limited to, directly or indirectly:
• Offering or paying bribes or other financial incentives, including offering future employment or contracts for non-audit services,
*6 • Providing an auditor with an inaccurate or misleading legal analysis,
• Threatening to cancel or canceling existing non-audit or audit engagements if the auditor objects to the issuer's accounting,
• Seeking to have a partner removed from the audit engagement because the partner objects to the issuer's accounting,
• Blackmailing, and
• Making physical threats.
The facts and circumstances of each case would be relevant to determining whether the conduct would violate the new rule.

Commenters had varied reactions to the illustrative list of the types of conduct that could be covered by the rule. Some commenters suggested that providing inaccurate or misleading information to internal auditors, as well as to independent auditors, should be deemed a violation of the rule. [FN50] While we believe that an officer or director, or person acting under the direction of an officer or director, providing misleading information to an internal auditor would

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

be relevant to the status of the issuer's internal accounting controls or
disclosure controls, it would not appear to be related to the purpose of section
303 of the Act and the new rule, which is to protect and enhance the independent
audit function. [FN51]

   Other commenters suggested that, due to other safeguards in the Act, we should
delete from the illustrative list the actions of offering future employment with
the issuer [FN52] and threatening to cancel audit or non-audit contracts for
services. [FN53] These commenters indicated that section 206 of the Act, which
requires a one-year "cooling off" period from the time certain officers of the
issuer last participated as a partner or employee of the accounting firm in an
audit of the issuer's financial statements to the commencement of the audit, [FN54]
provides sufficient protection against offering employment as a means of improperly
influencing the auditor. Similarly, commenters indicated that the provisions in
sections 201 and 202 requiring audit committee pre-approval of audit and non-audit
services should be an adequate safeguard against the use of such services to
improperly influence auditors. [FN55] Sections 201, 202 and 206, as well as the
remainder of Title II of the Act, are designed to enhance the independence of
auditors. We believe, however, services and employment opportunities that would not
impair an auditor's independence nonetheless could provide financial incentives
used to improperly influence or otherwise deter auditors from performing an
appropriate audit. Accordingly, such actions continue to be possible mechanisms,
assuming the other criteria in the rule are met, for violating the new rule.

   Some commenters suggested qualifying other examples in the list. For example,
commenters indicated that canceling or threatening to cancel an audit or non-audit
engagement should be within the purview of the rule only if the action was taken
because the auditor objects to the issuer's accounting. [FN56] One commenter
expressed this notion in terms of a clear quid pro quo linking the offering of a
contract for non-audit services with the intent to fraudulently influence the
audit. [FN57] We acknowledge that there may be many legitimate reasons to replace
individuals on an audit or review engagement, or to award or cancel audit or non-
audit services. Such actions alone do not violate the new rule. When such actions,
however, become the consideration used by an officer or director, or person acting
under the direction of an officer or director, to improperly influence the auditor,
and that person knew or should have known that the result of his or her conduct
could be materially misleading financial statements, then the actions fall within
the scope of the rule.

   *7 Still other commenters suggested adding to the list activities such as:
knowingly providing to the auditor inadequate or misleading information that is key
to the audit, [FN58] transferring managers or principals from the audit engagement,
[FN59] and when predicated by an intent to defraud, verbal abuse, creating undue
time pressure on the auditors, not providing information to auditors on a timely
basis, and not being available to discuss matters with auditors on a timely basis.
[FN60] In the appropriate circumstances and upon satisfaction of the criteria in
the rule, each of these actions could result in improper influence on the auditor.

   Finally, most commenters addressing the issue stated that the Commission should
not place in the rule any examples of the types of conduct that might violate the
rule, [FN61] and we have not done so.

   Definition of "independent public or certified public accountant." The new rule
addresses the improper influence of "any independent public or certified public
accountant" engaged in the performance of an audit or review of an issuer's
financial statements. [FN62] Prior to the adoption of the Act, similar phrases

©  2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

commonly were used in the securities laws and the Commission's regulations to refer to the accountant providing audit and review services to a Commission registrant. Although the Act, in anticipation of accounting firms registering with the Public Company Accounting Oversight Board (the "Board"), [FN63] changed several of these references, [FN64] such terms continue to appear in certain sections of the securities laws [FN65] and related schedules. [FN66] We believe that section 303 of the Act includes all accountants [FN67] engaged in auditing or reviewing an issuer's financial statements or issuing attestation reports [FN68] to be filed with the Commission. Once firms are registered with the Board, the term "independent public or certified public accountant," as used in the new rule, would include registered public accounting firms [FN69] and persons associated with such a public accounting firm, [FN70] as defined in the Act. While some commenters expressed concern with the use of different definitions to describe the independent auditor, [FN71] they generally did not object to the use of the term in the new rule. [FN72]

"Engaged in the performance of an audit." New rules 13b2-2(b)(1) and (c)(2) track the language in section 303(a) of the Act regarding the improper influence of an accountant "engaged in the performance of an audit" of the issuer's financial statements. Both the Commission [FN73] and the accounting profession [FN74] have recognized that the need for an auditor to maintain an independent and unbiased attitude begins when the accountant is selected to perform audit or review services and continues until there is a formal or informal public notification that the professional relationship has ended. [FN75] To effectuate the intent of Congress, we believe the phrase "engaged in the performance of an audit" should be given a broad reading. We believe Congress intended that the phrase encompass the professional engagement period and any other time the auditor is called upon to make decisions or judgments regarding the issuer's financial statements, including during negotiations for retention of the auditor and subsequent to the professional engagement period when the auditor is considering whether to issue a consent on the use of prior years' audit reports. The new rules, therefore, would apply throughout the professional engagement and after the professional engagement has ended when the auditor is considering whether to consent to the use of, reissue, or withdraw prior audit reports. In limited circumstances, the new rules also may apply before the professional engagement period begins. For example, the new rules would apply if an officer, director, or person acting under the direction of an officer or director, offers to engage an accounting firm subject to a condition that could result in rendering the financial statements materially misleading, such as a condition that the firm issue an unqualified audit report on financial statements that do not conform with generally accepted accounting principles, or a condition that the firm limit the scope or performance of audit or review procedures in violation of generally accepted auditing standards.

*8 Commenters generally agreed with this approach. [FN76] Some suggested that we define in the rule the phrase "engaged in the performance of the audit." [FN77] We believe, however, that the longer discussion in this release provides a better context to understand the meaning of the phrase.

"Rendering financial statements materially misleading." One of the criteria that must be met in order for the improper influence on the auditor by officers, directors, or persons acting under their direction to be actionable under the new rule is that the improper influence, if successful, could result in "rendering [the issuer's] financial statements materially misleading." [FN78] Because the financial statements are prepared by management and the auditor conducts an audit or review of those financial statements, the auditor would not directly "render [the] financial statements materially misleading." Rather, the auditor might be

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

improperly influenced to, among other things, issue an unwarranted report on the financial statements, [FN79] including suggesting or acquiescing in the use of inappropriate accounting treatments [FN80] or not proposing adjustments required for the financial statements to conform with generally accepted accounting principles. [FN81] An auditor also might be coerced, manipulated, misled, or fraudulently influenced not to perform audit or review procedures that, if performed, might divulge material misstatements in the financial statements. Other examples of activities that would fall within the rule would be for an officer, director, or person acting under an officer or director's direction, to improperly influence an auditor either not to withdraw a previously issued audit report when required by generally accepted auditing standards, [FN82] or not to communicate appropriate matters to the audit committee. [FN83] New rule 13b2-2(b)(2) makes it clear that subparagraph (b)(1) would apply in such circumstances. As noted, the rule is not limited to the audit of the annual financial statements, but would include, among other things, improperly influencing an auditor during a review of interim financial statements [FN84] or in connection with the issuance of a consent to the use of an auditor's report. [FN85] Conducting reviews of interim financial statements and issuing consents to use past audit reports are sufficiently connected to the audit process, and improper influences during those processes are sufficiently connected to the harms that the Act seeks to prevent, that they should be within the scope of the rule. The list of examples in the rule is only illustrative; other actions also could result in rendering the financial statements materially misleading.

Many commenters indicated that the examples in paragraph (b)(2) were appropriate and should be retained. [FN86] Some commenters suggested that the list of examples be expanded to include improperly influencing the auditor to permit the inconsistent use of generally accepted accounting principles ("GAAP") or the use of "non-preferable" GAAP in the issuer's financial statements. [FN87] Others suggested including improperly influencing an auditor in connection with the auditor's report on an issuer's assertions about its internal controls. [FN88] Another commenter suggested that the examples be replaced with a statement that actions that could result in "rendering the financial statements materially misleading" include improperly influencing an auditor during the performance of any procedures by the auditor. [FN89] We believe that the list of examples in paragraph (b)(2) is sufficiently broad to include the majority of instances, including under appropriate circumstances those addressed by commenters, where improperly influencing an auditor could result in the issuer publishing misleading financial statements. As noted above, the list of examples is not all-inclusive. Other actions, in appropriate circumstances, could result in rendering the issuer's financial statements materially misleading.

*9 "Knew or should have known." Section 303(a) states that conduct by an officer, director, or person acting under the direction of the officer or director designed to improperly influence an issuer's auditor is actionable if undertaken "for the purpose of rendering [the issuer's] financial statements materially misleading." We proposed, however, the rule state that an officer, director, or person acting under the direction of the officer, who engaged in conduct to improperly influence an auditor would be culpable if he or she "knew or was unreasonable in not knowing" that the improper influence, if successful, could result in rendering financial statements materially misleading. In the proposing release we noted that we would consider changing this wording to another phrase to convey that proving a particular purpose or intent is not required. We are adopting in the final rule the phrase "knew or should have known," which historically has indicated the existence of a negligence standard. [FN90] As noted elsewhere in this release, this standard is consistent with the Commission's enforcement actions in this area. [FN91]

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

   Several commenters suggested that the rule should contain the statutory language,
which they believe requires a fraudulent intent, instead of the proposed language,
which they believe reflected a negligence standard. [FN92] Other commenters,
however, indicated that the proposed language should be adopted [FN93] or that, at
a minimum, a reasonableness standard is appropriate when evaluating the actions of
officers and directors. [FN94]

   We believe that the adopted language, particularly in the absence of any private
right of action under the rule, [FN95] best achieves the purpose of restoring
investor confidence in the audit process. [FN96] For example, if an officer of an
issuer coerces an auditor not to conduct certain audit procedures required by
generally accepted auditing standards ("GAAS") because the officer wants to conceal
his embezzlement of funds from the issuer, then it is possible that his actions
might not be found to be for the "purpose of rendering the financial statements
misleading." If that officer, however, knew or should have known that not
performing the procedures could result in the auditor not detecting and seeking
correction of material errors in the financial statements, then we believe the
officer's conduct should be subject to the rule. Excusing this conduct from the
scope of the rule would be inconsistent with the restoration of investor confidence
in financial statements and in the integrity of the audit process.

   Response to Other Significant Comments. In the proposing release, we asked if we
should replace the statement in paragraphs (b)(1) and (c) of the rule that no
person acting "under the direction" of an officer or director shall improperly
influence the auditors of the issuer's financial statements, with a statement that
no person acting "at the behest of" or "on behalf of" an officer or director shall
improperly influence the auditors. Although some commenters supported use of the
phrase "on behalf of," [FN97] in general commenters opposed changing this aspect of
the proposed rule. [FN98] We agree that there may be circumstances where a person
acting on behalf of an officer or director would be considered to be acting under
the direction of that officer or director as contemplated by the rule. We believe,
however, that the rule, as proposed and adopted, is sufficiently clear. Replacing
"under the direction of" with "on behalf of" might be construed as narrowing the
scope of the rule, and having both phrases in the rule might create confusion in
the interpretation of the rule. Accordingly, we have adopted the rule as proposed.

   *10 We also asked in the proposing release if we should replace the word
"fraudulently" in paragraphs (b)(1) and (c)(2) of the rule with the word
"improperly" or some other word to convey a mental state short of scienter.
Although some commenters noted that there is a need for the Commission to adopt
rules intended to enhance investor confidence in issuers' financial statements,
[FN99] commenters generally opposed this change as exceeding the purpose and scope
of section 303 of the Act. [FN100] The new rule retains the statutory language of
"fraudulently influence" because we are concerned about a lack of specificity
associated with the word "improperly" in the context of the rule. As discussed
above, "fraudulently" modifies only influence and not "coerce, manipulate or
mislead."

   Finally, commenters questioned whether an auditor would have an obligation to
report violations of the new rule as "illegal acts" under section 10A(b) of the
Exchange Act. [FN101] Section 10A defines an "illegal act" to be an act or omission
that violates any law or any rule or regulation having the force of law. [FN102]
Accordingly, violations of the new rule are illegal acts within section 10A and
should be dealt with as required by that section. [FN103]

©  2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

C. Issues Related to Investment Companies

In the case of registered investment companies and business development companies, [FN104] the prohibition on improper influence on the conduct of audits covers not only officers and directors of the investment company itself, but also officers and directors of the investment company's investment adviser, sponsor, depositor, trustee, and administrator. [FN105] These service providers perform virtually all of the management, administrative, and other services necessary to the investment company's operations, including preparation of the financial statements. We are also amending existing rule 13b2-2 to cover officers and directors of these entities. [FN106]

One commenter suggested expanding the scope of the persons covered by the prohibition, to include accounting personnel working for an investment company's service providers. [FN107] Consistent with the language of section 303(a) and the scope of the rule for operating companies, we have not expressly included these persons, although we note that they would be covered by the rule if they are acting under the direction of an officer or director of the investment company or its investment adviser, sponsor, depositor, trustee, or administrator. By contrast, another commenter argued that the prohibition should extend to officers and directors of an investment company's investment adviser, because the investment adviser acts, in effect, in an executive capacity with a fund, but should not extend to other service providers. [FN108] We have determined not to narrow the service providers covered by the new rule in this manner, because any of the investment adviser, sponsor, depositor, trustee, or administrator may have responsibility for preparation of an investment company's financial statements, and therefore its officers and directors may be in a position to exercise improper influence over the investment company's audit.

III. PAPERWORK REDUCTION ACT

*11 The Paperwork Reduction Act is not applicable to the rules because they do not impose any collection of information requirements.

IV. COSTS AND BENEFITS

The new rules implement a Congressional mandate. We recognize that any implementation of the Act likely will result in costs and benefits and have an effect on the economy. We are sensitive to the costs and benefits imposed by our rules and, in the proposing release, we identified certain costs and benefits of the proposed rule.

The new rules prohibit officers and directors of an issuer, and persons acting under the direction of an officer or director, from taking any action to coerce, manipulate mislead, or fraudulently influence the auditor of the issuer's financial statements if that person knew or should have known that such action, if successful, could result in rendering the financial statements materially misleading.

Some commenters were concerned that the rules could have a chilling effect on communications between the auditor and third parties, [FN109] or dampen the debate on accounting issues between auditors and issuers. [FN110] Such a chilling effect on communications between third parties and auditors, or between auditors and the issuer, could result in an added cost associated with the rule. We believe, however, that the conduct addressed by the new rules generally was prohibited under provisions of the securities laws that existed before enactment of the Sarbanes-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Oxley Act. [FN111] Because the new rule is consistent with previous law, rules, and cases. [FN112] we do not anticipate that the new rules will increase significantly costs for issuers or accounting firms.

Nonetheless, the Act and new rules might prompt some issuers to adopt procedures or guidelines that would assure additional care is used by an issuer's officers and directors, and others acting under their direction, in communicating with auditors of the issuer's financial statements. For example, some issuers might require that more discussions include members of senior management or the issuer's legal counsel. Because no particular procedures related to such communications are required, and the nature and scope of those procedures are likely to vary among issuers, it is difficult to provide an accurate cost estimate.

As noted above, in some circumstances the new rules might apply before the professional engagement period begins. For example, the rules would apply if an officer, director, or person acting under the direction of an officer or director, offers to engage an accounting firm on the condition that the firm either issue an unqualified audit report on financial statements that do not conform with generally accepted accounting principles, or limit the scope or performance of audit or review procedures in violation of generally accepted auditing standards. We believe, however, that such conduct would not be permitted under existing laws and regulations and, accordingly, the rules should not result in a significant increase in costs for issuers.

*12 Potential benefits of the rules include increased investor confidence in the integrity of the audit process and, in turn, in the reliability of reported financial information. One of the most important factors in the successful operation of our securities markets is the trust that investors have in the reliability of the information used to make voting and investment decisions. [FN113]

Section 303(a) and the new rules are designed to provide added assurance that the full-disclosure purposes of the securities laws are fulfilled, [FN114] and to help restore the faith of America's investors in the integrity of the audit process and in the reliability of reported financial information. If section 303 of the Act and the new rules lead to increased investor confidence in financial reporting, they also might facilitate capital formation. An increased willingness of investors to participate in the securities markets could result in issuers being able to lower their cost of capital.

Commenters generally agreed that the costs associated with the new rules are not significant. [FN115] One commenter, however, indicated that increased costs might be associated with more litigation and increased liability exposure for accounting firms. [FN116] Because there is no private right action under section 303 or the new rule, [FN117] we expect that such costs will not be significant.

V. FINAL REGULATORY FLEXIBILITY ANALYSIS

This Final Regulatory Flexibility Act Analysis has been prepared in accordance with 5 U.S.C. 604. It relates to revised rule 13b2-2 of Regulation 13B-2, which implements the statutory prohibition on officers and directors of an issuer, and persons acting under their direction, improperly influencing the conduct of an audit or review of the issuer's financial statements.

A. Reasons for, and Objectives of, the Rules

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

The purpose of the new rules is to implement section 303(a) of the Act. The rules
prohibit officers and directors of issuers, including "small businesses," and
persons acting under their direction, from improperly influencing an accounting
firm's audit or review of the issuer's financial statements. Regardless of the
application of section 303(a) and the new rules, such conduct would violate the
anti-fraud or other provisions of the securities laws or aid and abet or cause the
issuer's violations of those sections. The new rules, and section 303(a) of the
Act, provide the Commission with an additional means to address such conduct and
are intended to enhance the credibility of financial statements.

B. Significant Issues Raised by Public Comments

   Some commenters indicated that the cost of compliance with the rules is not
significant and that there should be no differences in the rules for small
companies. [FN118] Another commenter stated that special rules are not necessary
for small entities if the definitions of officer and director are sufficiently
broad to include persons who normally have the responsibility for governance of an
entity. [FN119] As noted above, under the securities laws and the Commission's
regulations, the definition of "officer" includes not only those with certain
corporate titles but also those performing corresponding functions with respect to
any organization, [FN120] and the definition of "director" includes not only
directors of corporations but also those performing similar functions with respect
to any organization. [FN112] Such definitions are sufficiently broad to include
persons responsible for governance of an entity.

   *13 One comment letter, responding to the Commission's rule proposals related to
sections 404, 406 and 407 of the Act, as well as section 303, encouraged the
Commission to exempt small companies from the "onerous and sometimes impossible
rules for board membership." [FN122] These comments, however, would appear to
address the requirements related to the disclosure of an "audit committee financial
expert" under section 407 and not improperly influencing auditors under section
303. This commenter also suggested that we "nurture and encourage business
formation and finance" and not impose "insurmountable difficulties for the smaller
companies." [FN123] We believe that enhanced investor confidence in the audit
process will encourage capital formation by all companies and that the new rule,
which addresses conduct that generally was unlawful prior to the enactment of the
Act, does not place "insurmountable difficulties" on small companies.

   Another commenter stated that the Commission should be mindful of difficulties
some smaller institutions face "in seeking auditing firm alternatives and complying
with other new regulatory requirements due to limited staff resources." [FN124]
Although the rule might encourage some companies to exercise additional care in
communicating with auditors, the rule does not impose any specific requirements on
companies and should not result in the use of additional staff resources.
Accordingly, we do not believe that it imposes significant costs on small entities.

C. Small Entities Subject to the Rules

   The rules affect small registrants that are small entities. Exchange Act Rule 0-
10(a) [FN125] and 1933 Act Rule 157 [FN126] define a company to be a "small
business" or "small organization" if it had total assets of $5 million or less on
the last day of its most recent fiscal year. We estimate that approximately 2,500
companies are small entities, other than investment companies.

   For purposes of the Regulatory Flexibility Act, an investment company is a small
entity if it, together with other investment companies in the same group of related

investment companies, has net assets of $50 million or less as of the end of its
most recent fiscal year. [FN127] We estimate that approximately 225 investment
companies meet this definition.

D. Reporting, Recordkeeping and Other Compliance Requirements

   The enactment of section 303(a) of the Act and the adoption of the rules might
result in some issuers adopting more detailed procedures for communications between
the company and the accounting firm that audits the company's financial statements.
These procedures might result in an insignificant increase in costs associated with
compliance with the securities laws.

   We received no comments or data indicating the extent of burden that might be
imposed on small entities. As noted above, we assume the burden would be minor for
most issuers.

E. Agency Action to Minimize Effects on Small Entities

   *14 The Regulatory Flexibility Act directs us to consider significant
alternatives that would accomplish the stated objective, while minimizing any
significant adverse impact on small entities. In connection with the amendments, we
considered the following alternatives:
      1. The establishment of differing compliance or reporting requirements or
timetables that take into account the resources of small entities;
      2. The clarification, consolidation, or simplification of compliance and
reporting requirements under the rules for small entities;
      3. The use of performance rather than design standards; and
      4. An exemption from coverage of the amendments, or any part thereof, for small
entities.

   Section 303(a) of the Act does not provide an exemption for small businesses. The
section does provide, however, that the rules adopted by the Commission should be
"as necessary and appropriate in the public interest and for the protection of
investors."

   We considered not applying the rules to small business issuers. We believe,
however, that investors in small companies, just as investors in large companies,
would want and benefit from the added confidence in reported financial information
that comes from knowing that efforts to improperly influence the performance of the
audit have been prohibited.

   We are using a performance standard rather than a design standard. In addition,
Congress has dictated the timetable for this rulemaking.

VI. CONSIDERATION OF IMPACT ON THE ECONOMY, BURDEN ON COMPETITION, AND PROMOTION OF
EFFICIENCY, COMPETITION AND CAPITAL FORMATION

   Section 23(a)(2) of the Exchange Act [FN128] requires us, when adopting rules
under the Exchange Act, to consider the impact on competition of any rule we adopt.
Section 2(b) of the 1933 Act, [FN129] section 3(f) of the Exchange Act, [FN130] and
section 2(c) of the Investment Company Act of 1940, [FN131] require us, when
engaging in rulemaking where we are required to consider or determine whether the
action is necessary or appropriate in the public interest, to consider, in addition
to the protection of investors, whether the action will promote efficiency,
competition and capital formation.

©   2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

The new rules prohibit improper influences on auditors in connection with their
reviews and audits of financial statements filed with the Commission. The
proposals, therefore, should enhance investor confidence in the audit process and
in the quality of information available to them, and lead to a more efficient
market.

Because of the nature of the new rules, we do not believe that they would impose
any burden on competition. They prohibit equally all officers and directors of
public companies (and persons acting under their direction) from improperly
influencing the auditor.

As noted in the cost-benefit section, if section 303 of the Act and the new rules
lead to increased investor confidence in financial reporting, they also may
facilitate capital formation. An increased willingness of investors to participate
in the securities markets might result in issuers being able to lower their cost of
capital.

*15 We received no comments indicating that the rule would impact competition,
efficiency or capital formation.

VII. STATUTORY AUTHORITY

We are adopting the new rules under the authority set forth in sections 3(a) and
303 of the Act; Schedule A and sections 5, 6, 7, 8, 10 and 19 of the 1933 Act;
Sections 3, 10A, 12, 13, 14, 15, 17 and 23 of the Exchange Act; and Sections 6, 8,
20, 30, 31 and 38 of the Investment Company Act of 1940.

TEXT OF RULES AND AMENDMENTS

List of Subjects in 17 CFR Part 240

Securities

In accordance with the foregoing, Title 17, Chapter II, of the Code of Federal
Regulations is amended as follows:

PART 240 -- GENERAL RULES AND REGULATIONS, SECURITIES EXCHANGE ACT OF 1934

1. The authority citation for Part 240 continues to read, in part, as follows:

Authority: 15 U.S.C. 77c, 77d, 77g, 77j, 77s, 77z-2, 77z-3, 77eee, 77ggg, 77nnn,
77sss, 77ttt, 78c, 78d, 78e, 78f, 78g, 78i, 78j, 78j-1, 78k, 78k-1, 78l, 78m, 78n,
78o, 78p, 78q, 78s, 78u-5, 78w, 78x, 78 ll, 78mm, 79q, 79t, 80a-20, 80a-23, 80a-29,
80a-37, 80b-3, 80b-4 and 80b-11, unless otherwise noted.

*16 *****
2. Section 240.13b2-2 is revised to read as follows:

§ 240.13b2-2 Representations and conduct in connection with the preparation of
required reports and documents.

(a) No director or officer of an issuer shall, directly or indirectly:

(1) Make or cause to be made a materially false or misleading statement to an
accountant in connection with; or

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(2) Omit to state, or cause another person to omit to state, any material fact
necessary in order to make statements made, in light of the circumstances under
which such statements were made, not misleading, to an accountant in connection
with:

(i) Any audit, review or examination of the financial statements of the issuer
required to be made pursuant to this subpart; or

(ii) The preparation or filing of any document or report required to be filed
with the Commission pursuant to this subpart or otherwise.

(b)(1) No officer or director of an issuer, or any other person acting under the
direction thereof, shall directly or indirectly take any action to coerce,
manipulate, mislead, or fraudulently influence any independent public or certified
public accountant engaged in the performance of an audit or review of the financial
statements of that issuer that are required to be filed with the Commission
pursuant to this subpart or otherwise if that person knew or should have known that
such action, if successful, could result in rendering the issuer's financial
statements materially misleading.

(2) For purposes of paragraphs (b)(1) and (c)(2) of this section, actions that,
"if successful, could result in rendering the issuer's financial statements
materially misleading" include, but are not limited to, actions taken at any time
with respect to the professional engagement period to coerce, manipulate, mislead,
or fraudulently influence an auditor:

(i) To issue or reissue a report on an issuer's financial statements that is not
warranted in the circumstances (due to material violations of generally accepted
accounting principles, generally accepted auditing standards, or other professional
or regulatory standards);

(ii) Not to perform audit, review or other procedures required by generally
accepted auditing standards or other professional standards;

(iii) Not to withdraw an issued report; or

(iv) Not to communicate matters to an issuer's audit committee.

(c) In addition, in the case of an investment company registered under section 8
of the Investment Company Act of 1940 (15 U.S.C. 80a-8), or a business development
company as defined in section 2(a)(48) of the Investment Company Act of 1940 (15
U.S.C. 80a-2(a)(48)), no officer or director of the company's investment adviser,
sponsor, depositor, trustee, or administrator (or, in the case of paragraph (c)(2)
of this section, any other person acting under the direction thereof) shall,
directly or indirectly:

*17 (1)(i) Make or cause to be made a materially false or misleading statement to
an accountant in connection with; or

(ii) Omit to state, or cause another person to omit to state, any material fact
necessary in order to make statements made, in light of the circumstances under
which such statements were made, not misleading to an accountant in connection
with:

(A) Any audit, review, or examination of the financial statements of the
investment company required to be made pursuant to this subpart; or

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(B) The preparation or filing of any document or report required to be filed with the Commission pursuant to this subpart or otherwise; or

(2) Take any action to coerce, manipulate, mislead, or fraudulently influence any independent public or certified public accountant engaged in the performance of an audit or review of the financial statements of that investment company that are required to be filed with the Commission pursuant to this subpart or otherwise if that person knew or should have known that such action, if successful, could result in rendering the investment company's financial statements materially misleading.

By the Commission.

Margaret H. McFarland

Deputy Secretary

FN1. 17 CFR 240.13b2-1 et seq.

FN2. Pub. L. 107-204, 116 Stat. 745 (2002).

FN3. Section 303 of the Act states:
    (a) RULES TO PROHIBIT. -- It shall be unlawful, in contravention of such rules or regulations as the Commission shall prescribe as necessary or appropriate in the public interest and for the protection of investors, for any officer or director of an issuer, or any other person acting under the direction thereof, to take any action to fraudulently influence, coerce, manipulate, or mislead any independent public or certified accountant engaged in the performance of an audit of the financial statements of that issuer for the purpose of rendering such financial statements materially misleading.
    (b) ENFORCEMENT. -- In any civil proceeding, the Commission shall have exclusive authority to enforce this section and any rule or regulation issued under this section.
    (c) NO PREEMPTION OF OTHER LAW. -- The provisions of subsection (a) shall be in addition to, and shall not supersede or preempt, any other provision of law or any rule or regulation issued thereunder.
    (d) DEADLINE FOR RULEMAKING. -- The Commission shall --
        (1) propose the rules or regulations required by this section, not later than 90 days after the date of enactment of this Act; and
        (2) issue final rules or regulations required by this section, not later than 270 days after that date of enactment.

FN4. 17 CFR 240.13b2-1 states that no person shall, directly or indirectly, falsify or cause to be falsified, any book, record or account subject to section 13(b)(2)(A) of the Securities Exchange Act of 1934 ("Exchange Act"). Section 13(b)(2) of the Exchange Act states:
    Every issuer which has a class of securities registered pursuant to section 12 of this title and every issuer which is required to file reports pursuant to section 15(d) of this title shall (A) make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the issuer....

FN5. 17 CFR 240.13b2-2 states that no director or officer of an issuer, in connection with an audit or examination of the issuer's financial statements or the preparation of any document or report to be filed with the Commission, directly or indirectly shall (a) make or cause to be made a materially false or misleading

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

statement to an accountant or (b) omit to state, or cause another person to omit to state, any material fact necessary to make statements made, in light of the circumstances under which such statements were made, not misleading to an accountant. In redesignating Rule 13b2-2 as Rule 13b2-2(a), technical changes have been made to clarify that the rule addresses false or misleading statements made "to an accountant in connection with" an audit, review or preparation of any document or report required to be filed with the Commission.

FN6. The rules were proposed in Release Nos. 34-46685; IC-25773; File No. S7-39-02 (October 18, 2002) [67 FR 65325] ("proposing release").

FN7. The new rules are included in Regulation 13B-2 under the Securities Exchange Act of 1934 ("Exchange Act"). Section 3(a)(8) of the Exchange Act, 15 U.S.C. 78c(a)(8), defines "issuer" as follows:
    The term "issuer" means any person who issues or proposes to issue any security; except that with respect to certificates of deposit for securities, voting trust certificates, or collateral-trust certificates, or with respect to certificates of interest or shares in an unincorporated investment trust not having a board of directors or of the fixed, restricted management, or unit type, the term "issuer" means the person or persons performing the acts and assuming the duties of depositor or manager pursuant to the provisions of the trust or other agreement or instrument under which such securities are issued; and except with respect to equipment-trust certificates or like securities, the term "issuer" means the person by whom the equipment or property is, or is to be, used.

FN8. Letter from Paul B. Uhlenhop, dated November 8, 2002.

FN9. Section 2(a)(7) of the Act, which states:
    The term "issuer" means an issuer (as defined in section 3 of the Securities Exchange Act of 1934 (15 U.S.C. 78c), the securities of which are registered under section 12 of that Act (15 U.S.C. 78l), or that is required to file reports under section 15(d) (15 U.S.C. 78o(d)), or that files or has filed a registration statement that has not yet become effective under the Securities Act of 1933 (15 U.S.C. 77a et seq.), and that it has not withdrawn.

FN10. The Commission has broad rulemaking authority to prescribe illegal acts that contribute to the falsification of financial statements or the issuance of false or misleading audit reports. See, e.g., sections 10, 10A and 23(a) of the Exchange Act, 15 U.S.C. 78j, 78j-1 and 78s(a). See also section 3(a) of the Sarbanes-Oxley Act of 2002, which states, "The Commission shall promulgate such rules and regulations, as may be necessary or appropriate in the public interest or for the protection of investors, and in furtherance of this Act."

FN11. Exchange Act Release No. 15570 (February 15, 1979) [44 FR 10970].

FN12. The rule applies to foreign private issuers as well as domestic issuers. In applying the rule to foreign private issuers, the terms "officer" and "director" would indicate those performing equivalent functions under the local laws and corporate governance practices where the issuer is domiciled.

FN13. Rule 3b-2 under the Exchange Act, 17 CFR 240.3b-2. A person may be an "officer" for purposes of Rule 3b-2 regardless of the person's title or the legal entity with which he or she is associated. For example, officers of wholly owned subsidiaries of public companies and promoters may be "officers" of public companies.
    The definition of "director" under the Exchange Act has a similar functional and

©  2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

flexible nature. See section 3(a)(7) of the Exchange Act, 15 U.S.C. 78c(a)(7),
which states, "The term 'director' means any director of a corporation or any
person performing similar functions with respect to any organization, whether
incorporated or unincorporated."

FN14. Rule 3b-7 under the Exchange Act, 17 CFR 240.3b-7, states, "The term
'executive officer,' when used with reference to a registrant, means its president,
vice president of the registrant in charge of a principal business unit, division
or function (such as sales, administration, or finance), any other officer who
performs a policy making function or any other person who performs similar policy
making functions for the registrant. Executive officers of subsidiaries may be
deemed executive officers of the registrant if they perform such policy making
functions for the registrant."

FN15. Letter from the National Association of State Boards of Accountancy
("NASBA") dated November 25, 2002.

FN16. Letter from Transparency International -- USA, dated November 8, 2002.

FN17. Letters from PricewaterhouseCoopers LLP ("PwC") dated November 25, 2002 and
Transparency International -- USA, dated November 8, 2002.

FN18. See, e.g., Section 10(b) of the Exchange Act, 15 U.S.C. 78j, and Rule 10b-5
thereunder, 17 CFR 240.10b-5.

FN19. See, e.g., section 20(e) of the Exchange Act, 15 U.S.C. 78t(e).

FN20. See, e.g., section 21C of the Exchange Act, 15 U.S.C. 78u-3.

FN21. Section 303(b) of the Act states, "The Commission shall have exclusive
authority to enforce this section and any rule or regulation issued under this
section."

FN22. See, e.g., Webster's Dictionary (9th edition), which defines "direction" to
include not only guidance or supervision of action or conduct but also explicit
instruction.

FN23. See, e.g., In the Matter of Ronald G. Davies, Accounting and Auditing
Enforcement Release No. ("AAER") 1281 (June 29, 2000), which states, in part,
    In early 1998, Davies learned information that should have alerted him to the
fact that Hybrid's sales personnel had concealed the existence of the side letter
from the Company's management and auditors. When Hybrid and its auditors, as part
of the preparation of the Company's financial statements, sought confirmation that
Ikon had received no right of return, Davies provided a misleading oral response
to the Company .... Davies actions described above allowed Hybrid personnel to
circumvent internal controls and make false statements to the Company's auditors,
and caused Hybrid to make material misrepresentations and file inaccurate reports
with the Commission .... Based on the foregoing, Davies caused violations of
Sections 10(b), 13(a), 13(b)(5) of the Exchange Act and Rules 10b-5, 12b-20, 13a-
13, 13b2-1, and 13b-22 thereunder.

FN24. See, e.g., In the Matter of John K. Bradley, AAER 1568 (June 5, 2002).

FN25. "An 'unqualified opinion' [or unqualified report] states that the financial
statements present fairly, in all material respects, the financial position,
results of operations, and cash flows of the entity in conformity with generally

accepted accounting principles." AICPA, Statement on Auditing Standards No. ("SAS")
58, "Reports on Audited Financial Statements," ¶ 10; Codification of Statements on
Auditing Standards ("AU") § 508.10.

FN26. Some of these individuals also would be covered under provisions of the rule
tailored to investment companies. See section II.C. of this release, Issues Related
to Investment Companies.

FN27. See, e.g., letters from Sidley Austin Brown & Wood dated December 30, 2002,
BDO Seidman LLP dated November 25, 2002, Plains All American Pipeline L.P. dated
November 25, 2002, Dechert dated November 25, 2002, National Association of Real
Estate Investment Trusts dated November 25, 2002, and Compass Bancshares, Inc.
dated November 25, 2002.

FN28. See, e.g., letter from Transparency International -- USA, dated November 8,
2002.

FN29. See, e.g., letter from America's Community Bankers dated November 25, 2002.

FN30. See, e.g., letter from the American Institute of Certified Public Accountants
dated November 25, 2002.

FN31. See, e.g., letter from PwC dated November 25, 2002.

FN32. See, e.g., letters from the American Bar Association dated December 13, 2002
and The Business Roundtable dated November 29, 2002.

FN33. See, e.g., letters from Wells Fargo dated November 22, 2002, Dorsey & Whitney
dated November 25, 2002, Deloitte & Touche dated November 27, 2002, Sidley Austin
Brown & Wood dated December 30, 2002, America's Community Bankers dated November
25, 2002, and BDO Seidman LLP dated November 25, 2002.

FN34. See, e.g., letter from Ernst & Young LLP dated November 25, 2002.

FN35. See, e.g., letters from Wells Fargo dated November 22, 2002, American Bar
Association dated December 13, 2002, America's Community Bankers dated November 25,
2002, National Association of Real Estate Investment Trusts dated November 25,
2002, Intel Corporation dated November 26, 2002, and Compass Bancshares, Inc. dated
November 25, 2002.

FN36. KPMG LLP v. Securities and Exchange Commission, 289 F. 3d 109, 126 (D.C.
Cir. 2002), which states, "We affirm the Commission's determination that negligence
is an appropriate basis for violations underlying a Section 21C cease-and-desist
order...." See In the Matter of KPMG Peat Marwick LLP, AAER 1360 (January 19,
2001), which states, "We hold today that negligence is sufficient to establish
'causing' liability under Exchange Act section 21C(a), at least in cases in which a
person is alleged to 'cause' a primary violation that does not require scienter.
Therefore, if Peat Marwick acted at least negligently with respect to whether its
conduct would contribute to PORTA's violations, Peat Marwick is liable under
Section 21C(a) as a cause of those violations."

FN37. See, e.g., In the Matter of Donald F. Marcus and In the Matter of Harry P.
Adler, AAER 1715 (February 10, 2003); SEC v. John F. Mortell, et al., AAER 1569
(June 5, 2002); In the Matter of Ronald G. Davies, AAER 1281 (June 29, 2000); and
In the Matter of Terry R. Kuntz and Richard J. Scheer, AAER 720 (September 26,
1995), which states, in part,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Kuntz and Scheer knew or should have known that their conduct contributed to the fraudulent activities of Assix management. The September 13, 1991 letter supplied by Kuntz, coupled with the invoices provided by Scheer, assisted Assix in filing a materially false and misleading Annual Report and Quarterly Report with the Commission....

Accordingly, Kuntz's conduct in providing the September 13, 1991 letter and Scheer's conduct in providing the invoices to the company caused Assix to violate Sections 10(b), 13(a) and 13(b) of the Exchange Act and Rules 10b-5, 12b-20, 13a-1, 13a-13 and 13b2-2 thereunder. By falsifying these documents, Kuntz and Scheer also caused Assix's violation of Rule 13b2-1 and Section 13(b)(2)(A). Further, Kuntz and Scheer also caused Assix's controller to violate 13b2-2 by providing materially false and misleading documents which were used by Assix's auditors....

In this instance, Kuntz and Scheer subverted the audit process by creating false documents which assisted Assix in filing materially false and misleading statements, recording false revenue, and lying to its auditors. The Commission will not tolerate conduct by third party vendors such as that described herein, which poses a very real threat to the integrity of the disclosure process.

FN38. Id.

FN39. See, e.g., In the Matter of Terry R. Kuntz and Richard J. Scheer, AAER 720 (September 26, 1995), which states, in part, "The Commission will not tolerate conduct by third party vendors ..., which poses a very real threat to the integrity of the disclosure process."

FN40. See, e.g., In the Matter of Donald F. Marcus and In the Matter of Harry P. Adler, AAER 1715 (February 10, 2003); SEC v. John F. Mortell, et al., AAER 1569 (June 5, 2002); In the Matter of Ronald G. Davies, AAER 1281 (June 29, 2000); and In the Matter of Terry R. Kuntz and Richard J. Scheer, AAER 720 (September 26, 1995).

FN41. It is the act of coercing, manipulating, misleading, or fraudulently influencing the auditor, for the purpose of rendering misleading financial statements, that is unlawful. There is no requirement in section 303(a) of the Act that the purpose be achieved.

FN42. See, e.g., letters from Wells Fargo dated November 22, 2002, the American Bar Association dated December 13, 2002, Sidley Austin Brown & Wood dated December 20, 2002, BDO Seidman LLP dated November 25, 2002, and Dechert dated November 25, 2002.

FN43. Letter from Dorsey & Whitney LLP dated November 25, 2002.

FN44. Letter from Association for Investment Management and Research dated December 12, 2002.

FN45. Letter from Ernst & Young dated November 25, 2002.

FN46. See letter from Robert Waxman dated November 25, 2002.

FN47. See letter from Dorsey & Whitney LLP dated November 25, 2002.

FN48. KPMG LLP v. Securities and Exchange Commission, 289 F. 3d 109, 126 (D.C. Cir. 2002), which states, "We affirm the Commission's determination that negligence is an appropriate basis for violations underlying a Section 21C cease-and-desist order...." See In the Matter of KPMG Peat Marwick LLP, AAER 1360 (January 19, 2001), which states, "We hold today that negligence is sufficient to establish

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

'causing' liability under Exchange Act section 21C(a), at least in cases in which a
person is alleged to 'cause' a primary violation that does not require scienter.
Therefore, if Peat Marwick acted at least negligently with respect to whether its
conduct would contribute to PORTA's violations, Peat Marwick is liable under
Section 21C(a) as a cause of those violations."

FN49. See, e.g., In the Matter of Donald F. Marcus and In the Matter of Harry P.
Adler, AAER 1715 (February 10, 2003); SEC v. John F. Mortell, et al., AAER 1569
(June 5, 2002); In the Matter of Ronald G. Davies, AAER 1281 (June 29, 2000); and
In the Matter of Terry R. Kuntz and Richard J. Scheer, AAER 720 (September 26,
1995).

FN50. See, e.g., letters from HarborView LLC dated October 29, 2002 and Council of
Institutional Investors dated November 22, 2002.

FN51. To the extent that the work of the internal auditor is used by the
independent auditor in conducting an audit or review of the issuer's financial
statements, however, misleading or inaccurate information provided to the internal
auditor may be deemed to be provided to the independent auditor.

FN52. See, e.g. letter from Deloitte & Touche dated November 27, 2002.

FN53. See, e.g. letters from Deloitte & Touche dated November 27, 2002, European
Commission dated November 25, 2002, and Ernst & Young dated November 25, 2002.

FN54. Section 206 of the Act adds section 10A(1) to the Exchange Act, which states:
    It shall be unlawful for a registered public accounting firm to perform for an
issuer any audit service required by this title, if a chief executive officer,
controller, chief financial officer, chief accounting officer, or any person
serving in an equivalent position for the issuer, was employed by that registered
public accounting firm and participated in any capacity in the audit of that issuer
during the 1-year period preceding the date of the initiation of the audit.

FN55. Section 201 of the Act prohibits the auditor of the issuer's financial
statements from providing certain non-audit services for that issuer and permits
other non-audit services to be performed only if the service is pre-approved by the
issuer's audit committee. Section 202 of the Act describes the pre-approval
process.

FN56. See, e.g., letter from America's Community Bankers dated November 25, 2002.

FN57. Letter from KPMG LLP dated November 25, 2002.

FN58. See, e.g. letter from Deloitte & Touche dated November 27, 2002.

FN59. See, e.g., letter from Robert Waxman dated November 25, 2002.

FN60. Letter from BDO Seidman LLP dated November 25, 2002.

FN61. See, e.g., letters from America's Community Bankers dated November 25, 2002,
Software Finance & Tax Executives Council dated November 25, 2002, New York State
Bar Association dated November 25, 2002, KPMG LLP dated November 25, 2002, and the
American Institute of Certified Public Accountants dated November 25, 2002.

FN62. Section 303(a) uses the phrase "independent public or certified accountant,"
which appears, for example, in items 25, 26 and 27 of Schedule A to the Securities

©  2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Act of 1933. 15 U.S.C. 77aa(25), (26) and (27). Since the passage of the 1933 Act,
however, the general reference to "certified accountant" has been replaced by
"certified public accountant." To avoid any possible confusion, we have used
"certified public accountant" in the new rules.

FN63. See section 102 of the Act, which provides that beginning 180 days after the
Commission determines that the Board, as established by Title I of the Act, is
appropriately organized and has the capacity to carry out and enforce the
requirements of that title, it shall be unlawful for any person that is not a
registered public accounting firm to prepare any audit report with respect to any
issuer.

FN64. See, e.g., sections 205(b) and (c) of the Act.

FN65. See, e.g., section 13(a) of the Exchange Act, 15 U.S.C. 78m(a), and section
8(e) of the Securities Act of 1933 (the "1933 Act"), 15 U.S.C. 77h(e).

FN66. See, e.g., items 25, 26 and 27 of Schedule A of the 1933 Act, 15 U.S.C.
77aa(25), (26) and (27).

FN67. The rule would apply regardless of whether the accountant was a certified
public accountant. For example, some states require accountants to have years of
experience before being deemed to be a CPA. Efforts to mislead such an individual
during his or her performance of audit procedures would fall within the rules. In
addition, the term "independent public or certified public accountant" includes
accountants in foreign countries who engage in auditing or reviewing an issuer's
financial statements or issuing attestation reports to be filed with the
Commission, regardless of the title or designation used in those countries.

FN68. See, e.g., section 404 of the Act, which mandates that the Commission
prescribe rules that require (1) each annual report filed under sections 13(a) and
15(d) of the Exchange Act contain a management statement of responsibilities for,
and assessment of the effectiveness of, the issuer's internal control structure and
procedures for financial reporting, and (2) the auditor to attest to, and report
on, the assessment made by management.

FN69. Section 2(a)(12) of the Act defines "registered public accounting firm" to
mean "a public accounting firm registered with the Board in accordance with this
Act."

FN70. Section 2(a)(9)(A) of the Act defines "person associated with a public
accounting firm" (or with a "registered public accounting firm") to mean "any
individual proprietor, partner, shareholder, principal, accountant, or other
professional employee of a public accounting firm, or any other independent
contractor or entity that, in connection with the preparation or issuance of any
audit report -- (i) shares in the profits of, or receives compensation in any other
form from, that firm, or (ii) participates as agent or otherwise on behalf of such
accounting firm in any activity of that firm." The Board, in section 2(a)(9)(B) of
the Act, is given limited authority to exempt persons performing only ministerial
tasks.

FN71. See, e.g., letters from Independent Community Bankers of America dated
November 25, 2002 and Robert Waxman dated November 25, 2002.

FN72. See, e.g., letter from PwC dated November 25, 2002.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FN73. Rule 2-01(f)(5)(ii) of Regulation S-X, 15 CFR 210.2-01(f)(5)(ii), which
defines the "professional engagement period" to be: "The period of the engagement
to audit or review the audit client's financial statements or to prepare a report
filed with the Commission," and states: "(A) The professional engagement period
begins when the accountant either signs an initial engagement letter (or other
agreement to review or audit a client's financial statements) or begins audit,
review, or attest procedures, whichever is earlier; and (B) The professional
engagement period ends when the audit client or the accountant notifies the
Commission that the client is no longer that accountant's audit client."

FN74. American Institute of Certified Public Accountants ("AICPA") Code of
Professional Conduct, ET § 101.02, which states:
    The period of a professional engagement starts when the [AICPA] member begins
to perform any professional engagement requiring independence for an enterprise,
lasts for the entire duration of the professional relationship, which could cover
many periods, and ends with the formal or informal notification of the termination
of the professional relationship either by the member, by the enterprise, or by the
issuance of a report, whichever is later. Accordingly, the professional engagement
does not end with the issuance of a report and recommence with the signing of the
following year's engagement.

FN75. Changes in the principal auditor of an issuer's financial statements are
reported under item 4 of Form 8-K, 17 CFR 249.308. See also item 304 of Regulation
S-K, 17 CFR 229.304, and item 304 of Regulation S-B, 17 CFR 228.304.

FN76. See, e.g., letters from Deloitte & Touche dated November 27, 2002,
Independent Community Bankers of America dated November 25, 2002, the American
Institute of Certified Public Accountants dated November 25, 2002, and Ernst &
Young LLP dated November 25, 2002.

FN77. See, e.g., letters from America's Community Bankers dated November 25, 2002
and PwC dated November 25, 2002.

FN78. There is no such requirement for Rule 13b2-1 or Rule 13b2-2.

FN79. See Report of the Committee on Banking, Housing, and Urban Affairs, To
Accompany S. 2673, "Public Company Accounting Reform and Investor Protection Act of
2002," 107th Cong., 2d Sess., (S.R. 107-205), at 26 (Comm. Print, July 3, 2002),
which states that section 303 makes it unlawful for any officer or director of an
issuer, or any person acting under the direction of an officer or director, to
fraudulently influence, coerce, manipulate, or mislead the auditor of the issuer's
financial statements "for the purpose of rendering the audit report misleading."
(Emphasis added.)

FN80. For example, an auditor might be fraudulently influenced to allow an issuer
to correct material misstatements over time, or not to restate prior period
financial statements, in violation of generally accepted accounting principles.

FN81. See section 401(a) of the Act, which, among other things, adds section 13(i)
to the Exchange Act, which requires that financial statements prepared in
accordance with (or reconciled to) generally accepted accounting principles and
filed with the Commission reflect all material correcting adjustments identified by
a registered public accounting firm.

FN82. See, e.g., SAS 1, "Subsequent Discovery of Facts Existing at the Date of the
Auditor's Report," AU § 561.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FN83. See, e.g., section 204 of the Act, which adds section 10A(k) to the Exchange Act and requires each registered public accounting firm to report certain matters to the audit committee, and AICPA, SAS 61, "Communication With Audit Committees" (as amended by SAS 89 and SAS 90).

FN84. See Rule 10-01(d) of Regulation S-X, 17 CFR 210.10-01(d).

FN85. See, e.g., section 7(a) of the Securities Act of 1933, 15 U.S.C. 77g, which states in part, "If any accountant ... is named as having prepared or certified any part of the registration statement, the written consent of such person shall be filed with the registration statement"; Rule 436 under the Securities Act of 1933, 17 CFR 230.436.

FN86. See, e.g., letters from National Association of State Boards of Accountancy dated November 25, 2002, Independent Community Bankers of America dated November 25, 2002, Plains All American Pipeline LP dated November 25, 2002, Ernst & Young LLP dated November 25, 2002, and PwC dated November 25, 2002. One commenter, however, suggested that the list of examples be removed. Letter from Intel Corporation dated November 25, 2002.

FN87. Letter from Robert Waxman dated November 25, 2002.

FN88. Letter from Transparency International -- USA dated November 8, 2002.

FN89. Letter from Deloitte & Touche dated November 27, 2002.

FN90. See, e.g., section 21C(a) of the Exchange Act, 15 U.S.C. 78u-3, which authorizes the Commission to order a person to cease and desist from committing or causing violations, or future violations, of the federal securities laws due to actions that the person "knew or should have known" would contribute to the violation, and KPMG LLP v. Securities and Exchange Commission, 289 F. 3d 109, 126 (D.C. Cir. 2002), which states, "We affirm the Commission's determination that negligence is an appropriate basis for violations underlying a Section 21C cease-and-desist order...."

FN91. See, e.g., In the Matter of Donald F. Marcus and In the Matter of Harry P. Adler, AAER 1715 (February 10, 2003); SEC v. John F. Mortell, et al., AAER 1569 (June 5, 2002); In the Matter of Ronald G. Davies, AAER 1281 (June 29, 2000); and In the Matter of Terry R. Kuntz and Richard J. Scheer, AAER 720 (September 26, 1995).

FN92. See, e.g., letters from Wells Fargo dated November 22, 2002, Dorsey and Whitney LLP dated November 25, 2002, Sullivan & Cromwell dated November 25, 2002, The Business Roundtable dated November 29, 2002, America's Community Bankers dated November 25, 2002, Steven Hazen dated November 25, 2002, New York State Bar Association dated November 25, 2002, KPMG LLP dated November 25, 2002, and Plains All American Pipeline LP dated November 25, 2002.

FN93. See, e.g., letters from the American Institute of Certified Public Accountants dated November 25, 2002 and the National Association of State Boards of Accountancy dated November 25, 2002.

FN94. See, e.g., letter from Ernst & Young LLP dated November 25, 2002.

FN95. We believe that the mental state requirements of the rules generally should

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

be construed consistently with the existing rules in Regulation 13B-2. Because
there is no private right of action, among other reasons, the Commission believes
that a lesser standard of liability is appropriate. See Release No. 34-15570
(February 15, 1979); 44 Federal Register 10970. See also, Report of the Committee
on Banking, Housing, and Urban Affairs, To Accompany S. 2673, "Public Company
Accounting Reform and Investor Protection Act of 2002," 107th Cong., 2d Sess.,
(S.R. 107-205), at 26 (Comm. Print, July 3, 2002), which cites as a reason for
enacting section 303 the testimony of witnesses who were concerned with addressing
fraud and other "misconduct in the audit process."

FN96. See In the Matter of Terry R. Kuntz and Richard J. Scheer, AAER 720
(September 26, 1995), which states, in part, "The Commission will not tolerate
conduct by third party vendors ..., which poses a very real threat to the integrity
of the disclosure process."

FN97. See, e.g., letters from Transparency International -- USA dated November 8,
2002, National Association of State Boards of Accountancy dated November 25, 2002,
and Independent Community Bankers of America dated November 25, 2002.

FN98. See, e.g., letters from the American Bar Association dated December 13, 2002,
The Business Roundtable dated November 29, 2002, the New York State Bar Association
dated November 25, 2002, BDO Seidman LLP dated November 25, 2002, Ernst & Young LLP
dated November 25, 2002, and the National Association of Real Estate Investment
Trusts dated November 25, 2002.

FN99. See, e.g., letter from Association for Investment Management and Research
dated December 12, 2002.

FN100. See, e.g., letters from Wells Fargo dated November 22, 2002, Eastman Kodak
Company received on November 25, 2002, Sullivan & Cromwell dated November 25, 2002,
the American Bar Association dated December 13, 2002, The Business Roundtable dated
November 29, 2002, Amercia's Community Bankers dated November 25, 2002, the
Software Finance & Tax Executives Council dated November 25, 2002, New York State
Bar Association dated November 25, 2002, Independent Community Bankers of America
dated November 25, 2002, Plains All American Pipeline LP dated November 25, 2002,
Dechert dated November 25, 2002, Intel Corporation dated November 25, 2002, Compass
Bancshares Inc. dated November 25, 2002, and Robert Waxman dated November 25, 2002.

FN101. Letters from KPMG LLP dated November 25, 2002 and PwC dated November 25,
2002. Section 10A(a) of the Exchange Act, 15 U.S.C. 78j-1(a), requires auditors to
conduct procedures designed to provide, among other things, reasonable assurance of
the detection of illegal acts that would have a direct and material effect on the
determination of financial statement amounts. Section 10A(b) of the Exchange Act,
15 U.S.C. 78j-1(b), states that if the accountant becomes aware of information
indicating that an illegal act has or may have occurred the accountant shall
perform additional procedures to determine whether it is likely an illegal act has
occurred and, if so, its possible effect on the financial statements, and report
the act to management and assure that the issuer's audit committee is informed of
the act. If the accountant concludes that the illegal act has a material effect on
the financial statements, appropriate remedial actions are not taken, and the
failure to take such actions is reasonably expected to warrant a modified audit
report or resignation from the audit engagement, then the auditor must report his
or her conclusions to the issuer's board of directors. If the board does not notify
the Commission that it has received such a report, then the auditor must furnish to
the Commission a copy of its report.

©  2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FN102. Section 10A(f) of the Exchange Act, 15 U.S.C. 78j-1(f).

FN103. One commenter also suggested "technical corrections" to the rule to include
"review" in paragraph (a)(2)(i) and "reissue" in paragraph (b)(2)(i). Letter from
KPMG LLP dated November 25, 2002. We have made these corrections and a conforming
change to paragraph (c)(1)(ii)(A).

FN104. Business development companies are a category of closed-end investment
companies that are not required to register under the Investment Company Act of
1940. See 15 U.S.C. § 80a-2(a)(48) (defining business development companies).

FN105. Rule 13b2-2(c)(2).

FN106. Rule 13b2-2(c)(1).

FN107. Letter from PwC dated November 25, 2002.

FN108. Letter from Dechert dated November 25, 2002.

FN109. See, e.g., letters from Wells Fargo dated November 22, 2002, Dorsey &
Whitney dated November 25, 2002, Deloitte & Touche dated November 27, 2002, Sidley
Austin Brown & Wood dated December 30, 2002, America's Community Bankers dated
November 25, 2002, and BDO Seidman LLP dated November 25, 2002.

FN110. See, e.g., letter from New York County Lawyers' Association dated December
3, 2002.

FN111. See, e.g., In the Matter of Donald F. Marcus and In the Matter of Harry P.
Adler, AAER 1715 (February 10, 2003); SEC v. John F. Mortell, et al., AAER 1569
(June 5, 2002); In the Matter of Ronald G. Davies, AAER 1281 (June 29, 2000); and
In the Matter of Terry R. Kuntz and Richard J. Scheer, AAER 720 (September 26,
1995).

FN112. Id.

FN113. See Accounting Series Release No. 296 (Aug. 20, 1981), which states in part:
    (T)he capital formation process depends in large part on the confidence of
investors in financial reporting. An investor's willingness to commit his capital
to an impersonal market is dependent on the availability of accurate, material and
timely information regarding the corporations in which he has invested or proposes
to invest. The quality of information disseminated in the securities markets and
the continuing conviction of individual investors that such information is reliable
are thus key to the formation and effective allocation of capital. Accordingly, the
audit function must be meaningfully performed and the accountant's independence not
compromised.

FN114. See, e.g., H.R. Rep. No. 1383, 73rd Cong., 2d Sess., 11 (1934), which
states:
    Just as artificial manipulation tends to upset the true function of an open
market, so the hiding and secreting of important information obstructs the
operation of the markets as indices of real value. There cannot be honest markets
without honest publicity. Manipulation and dishonest practices of the market place
thrive upon mystery and secrecy.
This House Report also includes a letter from the Executive Assistant of the
Committee on Stock List for the New York Stock Exchange, which recognizes
management's need for accurate financial information and then states:

                © 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[U]nder the conditions of today, the next object in order of importance has
become to give stockholders, in understandable form, such information in regard to
the business as will avoid misleading them in any respect and as will put them in
possession of all information needed, and which can be supplied in financial
statements, to determine the true value of their investments.... The exchange is
interested in the accounts of companies as a source of reliable information for
those who deal in stocks. It is not sufficient for the stock exchange that the
accounts should be in conformity with law or even that they should be conservative;
the stock exchange desires that they should be fully and fairly informative.
Id. at 12.

FN115. See, e.g., letters from National Association of State Boards of Accountancy
dated November 25, 2002 and PwC dated November 25, 2002.

FN116. Letter from Independent Community Bankers of America dated November 25,
2002.

FN117. Section 303(b) of the Act states, "In any civil proceeding, the Commission
shall have exclusive authority to enforce this section and any rule or regulation
under this section."

FN118. See, e.g. letters from PwC dated November 25, 2002 and Robert Waxman dated
November 25, 2002.

FN119. Letter from National Association of State Boards of Accountancy dated
November 25, 2002.

FN120. See Rules 3b-2 and 3b-7 under the Exchange Act, 17 CFR 240.3b-2 and 240.3b-
7.

FN121. See section 3(a)(7) of the Exchange Act, 15 U.S.C. 78c(a)(7).

FN122. Letter from Nicholas Taylor dated November 8, 2002.

FN123. Id.

FN124. Letter from Independent Community Bankers of America dated November 25,
2002.

FN125. 17 CFR 240.0-10(a).

FN126. 17 CFR 230.157

FN127. 17 CFR 270.0-10.

FN128. 15 U.S.C. 78w(a)(2).

FN129. 15 U.S.C. 77b(b).

FN130. 15 U.S.C. 78c(f).

FN131. 15 U.S.C. 80a-2(c).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 47890, Release No. 34-47890, Release No. IC - 26050, 80 S.E.C.
Docket 770, 2003 WL 21148349 (S.E.C. Release No.)
**(Cite as: 2003 WL 21148349 (S.E.C. Release No.))**

END OF DOCUMENT

©   2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.